# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION
# LONDON

**CRIMINAL NO. 09-16-DCR**

**UNITED STATES OF AMERICA**                                        **PLAINTIFF**

**V.**         **GOVERNMENT'S BRIEF IN SUPPORT OF DETENTION**

**RUSSELL CLETUS MARICLE**                                   **DEFENDANT**

\* \* \* \* \*

The United States provided testimony of Special Agent Briggs and Kenneth Day in combination with the findings of the Pretrial Services Report at the initial detention hearing on March 23, 2009. The Defendant's witnesses at the de novo hearing on April 20, 2009, actually bolstered the case for detention and did nothing to overcome the findings of the Magistrate that no condition or combination of conditions will adequately protect the public and assure the Defendant's presence at trial. Moreover, Special Agent Briggs at that hearing presented damaging information to support that the Defendant has hidden information from this Court by failing to disclose a six figure asset.

## STATEMENT OF FACTS

On March 3, 2009, the Defendant was indicted for violations of 18 U.S.C. §1962(d), conspiracy to commit racketeering acts including mail fraud, extortion and bribery, 18 U.S.C. §1503, obstruction of justice by attempting to influence a federal

witness, 18 U.S.C.§ 371, conspiracy to buy votes, and 18 U.S.C.§ 241, conspiracy to injure voter rights.

**1.  The Defendant has hidden important financial information from the Court.**

The Defendant is a senior Circuit Court Judge of the 41st Judicial Circuit who is 65 years of age.  The Defendant served as the circuit judge in Clay, Leslie and Jackson Counties from September 1990 until June 1, 2007.  The Defendant was interviewed by probation and was required to report all of his assets.  The Defendant set forth monthly income and benefits as a retired judge of $11,393.00.  However, the Defendant showed only a few assets in his name.  For example, the Defendant listed that all of his vehicles and home were in his wife's name and that he has only a few investments of modest value in his name.  (itemized assets i.e. $4,000 certificate of deposit, investment real estate, $8,000 in equity with an estimated net worth of only $48,800.00).  The Defendant listed his expenses at $2,687.00.  Absent from the Defendant's disclosure to the Court is one of the Defendant's most valuable assets, a Norris Craft Yacht,16 feet by 73 feet,insured at $140,000.  Also absent from the Defendant's expenses is the boat slip rental fees of $4,672.  Transcript of 4/20/09 hearing at p.151.

**2.  The Defendant has a history of instability and is presently under extreme emotional stressors.**

The Defendant admitted to probation experimenting with drugs, suffering with boughts of depression, and suicidal thoughts.  The Defendant has recently experienced several recent life events including his retirement, the death of his son, a federal

indictment, and was recently advised according to his attorney, Henry Hughes, that "now there's no doubt in my mind if he gets convicted before Judge Reeves, he's going to do 73 months." Transcript of 3/23/09 hearing p. 98. The Defendant, at 65 years of age, now has the belief that if convicted he will be imprisoned for at least 6 years or until he is 72 years old. The Defendant described to probation that in the past few weeks he had "experienced problems with finding the will to live." The Defendant also advised probation that he considered leaving the profession and "wanting to live with the Indians in New Mexico."

**3. The Defendant's past conduct while under criminal charges.**

The Defendant was charged with murder of another at an election polling place (Transcript 3.23.09 p. 51) on November 4, 1971, which was dismissed on New Year's Day, January 1, 1972. Special Agent Briggs testified that a former employee of the Defendant advised that "virtually for a month after that shooting occurred, he was non-existent and appeared to be hiding out until later when the –when the charges against him were dismissed." Transcript of 3/23/09 hearing p. 37.

**4. The Defendant's aberrant behavior and paranoia exhibited during the investigation.**

Special Agent Briggs testified that the Defendant during the spring of 2007 would frequently "pad (sic) down" his witness in an effort to determine if the individual was wearing a recording device. Transcript of 3/23/09 hearing p. 15. Agent Briggs and TFO Blair related that the Defendant believed 40 agents were outside his residence in the

woods, behind trees and that listening devices were planted at his office. Transcript of 3/23/09 hearing p. 16 and Transcript of 4/20/09 hearing p. 21. Briggs further related that the Defendant made attempts to discover the agents place of residence and vehicles. Transcript of 3/23/09 hearing p. 17. The Defendant made reference to the whereabouts of Agent Briggs on tape at which time a planned ruse was communicated to the Defendant by the witness out of fear. Transcript of 3/23/09 hearing pp. 17, 66. The Defendant also enlisted Ricky Asher, an employee, to help find out the agents' place of residence and vehicles. Transcript of 3/23/09 hearing p. 18 and Transcript of 4/20/09 hearing p. 24.

The Defendant expressed to the cooperating witness that he knew what was said outside the Lexington grand jury based upon conversations with attorney, Stephan Charles. Transcript of 4/20/09 hearing p. 14. The Defendant advised her that he felt the government may be targeting him because he beat them in a prior bank robbery trial in which he successfully defended co-defendant, Charles Wayne Jones. Id. and Transcript of 4/23/09 hearing p. 144.

## 5. The Defendant's prior efforts to subvert justice.

In 1989 the Defendant and convicted drug dealer and former Republican Election Commissioner, Kenneth Day[1], approached a juror to tamper with the outcome of a civil case. The juror was instructed not to return with a verdict less than one million dollars. Transcript of 3/23/09 hearing p. 34, p. 84. The Defendant later established by his evidence that he was a candidate for Circuit Judge and not sitting on the case at the time.

---

1. It is reasonable to assume that the Defendant acted for the benefit of one he believed could help him in his upcoming judicial election, Kenneth Day, Election Commissioner.

4

The Defendant instructed Agent Briggs' witness during the investigation that as a grand jury witness "short of being an eyewitness to murder, don't say anything." Transcript of 3/23/09 hearing p. 62 and Transcript of 4/20/09 hearing p. 36. The Defendant, through his co-Defendant, Stivers, told the witness to lie. Id. at 70. Later, the Defendant suggested that the source be willing to sit and not talk to the grand jury like "Susan McDougal". Transcript of 4/20/09 p. 36-37.

The Defendant, further with the assistance of the source, scripted a family member's testimony during a trial before the Defendant as judge in November 2005. Transcript of 3/23/09 hearing p. 22. The Defendant met with the source on a daily basis to instruct the brother on his testimony. Id. at p. 23. The Defendant relayed to the source that he wanted individuals on trial convicted as they had threatend to implicate his daughter. Id. at p. 24 and Transcript of 3/23/09 hearing p.64. Agent Briggs found the information corroborrated by later recordings in which the Defendant admitted to a promise of leniency for the brother's sentence[2]. Id. When at trial, the brother witness failed to follow through with the scripted testimony, the Defendant refused the plea bargain for probation and sentenced the brother to five years imprisonment. Transcript of 3/23/09 hearing pp. 25-26 and Transcript of hearing 4/20/09 p.51.

The ability of members of the alleged racketeering enterprise to have witnesses intimidated has come to light as recently as the day after the first detention hearing. On

---

2. Agent Briggs later explained that the Defendant, after sentencing the brother to 5 years in prison, promised the witness that he would release the brother if the witness assisted the Defendant in his plan to corrupt the election of 2006. Transcript of 3/23/09 hearing pp. 22, 64.

March 24, 2009, Richard Brian Hubbard sent a threatening message to two of the government witnesses. Transcript of 4/20/09 hearing p. 143. Hubbard admitted to meeting with co-Defendant, Charles Wayne Jones, prior to sending the message and admitted to discussing the case with him including the identity of government witnesses. One of the special conditions included that the co-Defendant "shall have no discussions with or contact with potential witnesses or victims regarding the subject matter of the case, except through counsel." Based upon the past conduct of the Defendant in directing others to coach grand jury witnesses, Agent Briggs expressed a concern that if released such conduct would continue. Transcript of 4/20/09 hearing p. 145.

**6. The Defendant's involvement in election related charges.**

Agent Briggs testified that the overall case involves more than 100 witnesses and over 30 audio recordings, half of which involve the Defendant. Briggs related that the recordings incriminate the Defendant. Statistical abnormalities in absentee vote totals during the time frame charged were also outlined. Admissions by convicted co-conspirators were highlighted, admissions which corroborate the existence of a conspiracy to corruptly influence elections. A search warrant, executed at the time of the Defendant's arrest, uncovered a list of names containing many of the participants in the election fraud scheme.

**7. The Defendant offered no credible evidence to the contrary.**

TFO Edsel Blair: The Defendant called the co-case agent to point out that conversations relating to the Defendant's seeking to know where the agents live and what

they drive were not recorded. Transcript of 4/20/09 hearing p. 7. However, TFO Blair did point out that later recordings did confirm a conversation of this nature as the witness reported to the Defendant prepared false information relating to Agent Briggs. Id at p. 11.

Special Agent Timothy S. Briggs: The Defendant called the case agent to attempt to impeach the statements of Kenneth Day[3]. The Defendant's exhibit 1 actually supports Kenneth Day's statement. The court record confirms that a verdict of $3,000,510.00 was actually returned as described by Day. The court record established that the parties were as described by Day and that the verdict assessed all fault to the defendant. In addition, the date of the verdict was September 20, 1990. Defendant's exhibit 8 reveals that the Defendant was sworn in as circuit judge the following Monday, September 24, 1990. The Defendant only pointed out in his case that witness, Kenneth Day, reported 28 years later that he recalled the Defendant to be the judge at the time. Regardless, the Defendant was candidate for judge, and was undisputedly involved in tampering with a jury in a multi-million dollar case.

The Defendant pointed out through Agent Briggs that the Defendant has made a number of exculpatory statements during the recordings. Such statements were not unexpected given the Defendant's heightened suspicions of the witnesses and knowledge of the ongoing federal investigation. However, Agent Briggs highlighted several recorded criminal admissions including evidence of the Defendant obstructing justice by

---

3. As many of the subjects and defendants were a part of the Clay Circuit Court system, it is understandable that FBI Agents were reluctant to have combed the Clay County Circuit Court records before the return of the indictment.

7

advising a federal grand jury witness "short of being an eyewitness to murder, don't say anything," "you should be willing to sit in jail like Susan McDougal and not talk if you're forced to testify." Transcript of 4/20/09 hearing pp. 35-36.  See also,  *United States v. Cioffi*, 493 F.2d 1111, 1118 and n.2 (2d. Cir.), cert. denied, 419 U.S. 917, 95 S.Ct. 195, 42 L.Ed.2d 155 (1974)(upholding district court's charge: "I charge you that while a witness violates no law by claiming the Fifth Amendment privilege against self-incrimination in a grand jury, one who bribes, threatens or coerces a witness to claim it or **advises with corrupt motive a witness to take it**, can and does obstruct or influence the administration of justice."   Further, it was pointed out by Agent Briggs that the Defendant referred the witness to the co-Defendant who scripted testimony for the grand jury witness.  Transcript of 4/20/09 hearing p. 49.  Agent Briggs also referenced the Defendant's taped admissions regarding outstanding obligations he owed the witness for corrupt acts in the 2006 election.  Transcript of hearing 4/20/09 p. 40.

     Richard Couch- Notwithstanding that Couch was never alleged by anyone to have been a party to the scheme to perjure testimony, the Defendant sought to establish that Couch didn't witness any contact between the Defendant and the witness.  Couch did candidly admit that Gregory ran the trial and that he has no idea what happened outside of the courtroom.  Transcript of 4/20/09 hearing pp. 67, 72.  Couch advised that Gregory exhibited anger that the witness failed to testify as Gregory expected at trial.  Transcript of 4/20/09 hearing p. 63.  Couch admitted that several things were unusual in how the case was handled i.e.witness/defendant plead to an information as opposed to an

8

indictment; Id at p. 68; appearing in court in a hurried fashion without proper attire; and the case detective never sat with the prosecutor at the trial. Id at p. 70, 72.

Gary Gregory- Gregory, as anticipated, made a denial that the witness was encouraged to perjure testimony. Gregory explained that Kennon White brought the defendant/witness forward to Gregory and that he promised him a "sweetheart deal" - probation if he testified truthfully. Transcript of 4/20/09 hearing p. 85, 91. Gregory acknowledged that, despite his problems with the witness' testimony, he argued for probation at sentencing and that the Defendant rejected the plea agreement at sentencing and sentenced the witness to five years imprisonment without explanation. Id. at 100. Gregory also admitted that he could not rule out possible meetings by the Defendant with the witness or his family member during the trial. Id. at p. 108.

Barbara Carnes and Wendy Craig- They were attorneys called by the Defendant to introduce Defendant's exhibit 4, letter to Judge Maricle. The letter purports to have been written by one of the defendants on trial and received after the trial of the matter. The letter appears to have been offered by the Defendant to negate the statement of S.A. Briggs' cooperating source who stated that the Defendant was motivated by a letter implicating the Defendant's daughter written by one of the indicted defendants. While the letter discusses the topic, it was never represented by the government to be the letter in issue. There is no way to establish that this was the letter referenced by the source. Notwithstanding, this letter offers much to corroborate the source's earlier statement. First, it details a plea by the author that he continues to maintain that he is innocent of the

charges. Second, it details that the Defendant's daughter, Linsey Maricle, was present with the subjects the night of the murder of Crystal Hicks, a deceased witness to the Stevie Collins murder.

Bobby Gene Morris-An elected official in Jackson County who is of the opinion that the Defendant would follow conditions of bond based on his observations while the Defendant was judge in his county. Transcript of hearing p. 123.

Marilyn Roberts- Court report since 1967 who has never witnessed the Defendant do or ask her to do anything improper. Id at p. 125. Roberts obviously did not know what the Defendant did outside of the courtroom. Roberts admitted she was the court reporter in the Estate of Loretta Day v. Gary Runion matter and it is uncontested that the Defendant accompanied Kenneth Day to fix the jury. Id. at 126.

Lisa Hubbard and Lisa Frazier- Two schoolteachers who noticed that since the Defendant has become aware of the federal investigation in 2007 he has picked up his grandchild 95% of the time. Id at 130, 131.

Rebecca Shepard Welch- A friend of the family who witnessed the Defendant hug and greet others at the funeral visitation. Welch saw nothing unusual happen while visiting. Id at p.134. Welch did admit she lived in Lexington and was not very knowledgeable of the Defendant's travel habits. Id at p. 136.

Anthony Lovett- Pastor of Defendant who has noticed the Defendant being "more regular in the last couple of years." Id at 138. This testimony again highlights the conduct change since the Defendant became aware he was a FBI target.

## **ARGUMENT**

There are no conditions or combination of conditions that are available which would reasonably assure either the Defendant's appearance in court, nor the safety of any other person. This conclusion is based on the factors set forth in the Bail Reform Act at 18 U.S.C. 3142(g).

*1. Nature and circumstances of offenses charged.*

The Defendant is charged with multiple criminal acts, including RICO, Conspiracy to Interfere with Voting Rights, Conspiracy to Buy Votes, and Obstruction of Justice. Such charges are extremely serious, as they threaten the very foundation of our democracy. The indictment and the testimony to date refer to the Defendant as the head of the conspiratorial enterprise. He allegedly directed the activities of a large group of co-conspirators, a group which have tampered with and/or corruptly influenced an untold number of voters over a multi-year time period. This type of alleged activity is not an isolated wrong, affecting only a few victims, but an organized, concerted scheme to control the power structure in Clay County. This type of alleged conduct affects every citizen's confidence in the process itself, as well as each citizen's constitutional **right** to a fair election. As this Court is also aware, such activity creates a breeding ground for organized crime, specifically related to drug trafficking. When money can buy a county's elections, drug traffickers can use their substantial wealth to influence elections, and then have free reign to operate their drug trafficking enterprises. This factor is arguably present in the instant alleged offense, and certainly a factor to be considered under the

nature and circumstances of the offense. The Defendant is also charged with obstruction of justice, based on activity related to the federal grand jury process. This alleged activity threatens the entire criminal justice system, as the necessity of truthful, uncorrupted witnesses is absolutely essential to the fair administration of justice.

The potential penalty range for the charged crimes raise a substantial incentive for flight. Per the Defendant's own attorney at the initial detention hearing, there is no doubt in the Defendant's mind that he will get at least the top of the recommended guideline range, should he be convicted. The top of the range, per attorney Hughes' estimate, was 73 months. Such a sentence, for a 65 year old man with no experience in jail, creates a compelling motivation for non-appearance.

### 2. Weight of the evidence.

Agent Briggs testified that the case involved over 100 witnesses, and that the Defendant was on approximately half of 30 recordings, which implicate the Defendant in the charged criminal activity. The Defendant also made incriminating statements regarding the obstruction of justice charge on tape, and co-defendant, Stivers, incriminated both himself and the Defendant on tape regarding the obstruction charge. Previous convictions have been referenced which provide substantial evidence in the factual basis of plea agreements which also support the existence of the alleged RICO enterprise. Agent Briggs testified that the Defendant is the head of the organization. Defense offered little evidence at either hearing to challenge the existence or strength of the evidence against the Defendant. Certainly, this factor favors detention.

*3. History and characteristics of the person.*

This factor outlines a broad array of factors to be considered when determining whether release is appropriate. Four factors will be highlighted, the overall impact of which favors detention.

**Defendant's character.**

The Defendant was a sitting circuit court judge from 1990 to 2007. During this period, he is charged with crimes that threaten both the democratic and judicial process. Evidence also exists that as a candidate for Judge, he altered jury decisions to serve his own political ambitions. These issues will be discussed in more detail in the following factor. A person holding a position of public trust who uses that position to further corrupt and to subvert the very process for which he serves, is one who is a danger to the safety of others.

**Mental condition.**

The contents of the pretrial services report as well as the testimony of Agent Briggs calls the Defendant's mental condition in question. The Defendant reported that he has recently struggled with the "will to live". He reported prior bouts of depression. He admitted to thinking about suicide. He even reported one time in his life when he wanted to live with the "Indians in New Mexico". Agents Briggs' and TFO Blair's testimony indicated that the defendant behaved erratically and, to an extent, delusional, by stating that he thought 40 agents were hiding behind trees at his house, and by stating that his court chambers was being recorded. The Defendant has also recently suffered the tragic loss of his son, an event that further could further undermine his mental stability.

13

**Financial resources.**

The pretrial services report contains an exhaustive, detailed accounting of the Defendant's financial condition. The Defendant was capable of accounting for all monthly income and expenses down to telephone bills. He was aware of exact amounts owed on certain properties, and even reported stock and security values. The Defendant was capable of reciting which assets were only in his wife's name. Striking, however, the Defendant made no mention of his houseboat, insured at $140,000. This substantial asset which costs over $4,000 a year in dock fees and the Defendant fails to report its existence. While many defendants are unaware of the extent of their assets, and the pretrial services report reflects this reality, this Defendant was very meticulous in his financial reporting. The failure for him to report a six figure asset, particularly in the backdrop of his mental condition and potential term of imprisonment, is glaring by its absence.

**Past Conduct.**

While remote, the information provided to Agent Briggs about the Defendant's prior conduct while under pending murder charges, is extremely relevant. Agent Briggs testified that a source informed him that, after being charged with murder, the Defendant was absent from his law practice until the case was dismissed and appeared to be hiding out. This was in fact a 1971 charge, but a charge nonetheless. The probability of this Defendant's good faith compliance with release conditions is a central concern. *See United States v. Tortora*, 922 F. 2d 880, 887 (1st Cir. 1990). The last time this Defendant was faced with a felony charge evidence indicates that he was nowhere to be found.

14

Despite the remoteness, there is no better indicator for future conduct than evidence of prior conduct when faced with similar circumstances.

### 4. Nature and seriousness of the danger to any person or the community.

Danger has a broad, expansive meaning under the Bail Reform Act. Judge Wier's Statement of Reason and Findings Related to Detention appropriately references the extent of that meaning. Danger includes the threat that a defendant will seek to subvert justice, through violent or non-violent means. *See United States v. Demmler*, 523 F. Supp. 2d 677, 681 (S.D. Ohio 2007). The Defendant has been charged with obstructing justice in the indictment, by tampering with a federal grand jury witness. Uncontraverted evidence exists that the Defendant tampered with a jury. While the Defendant attempted to argue that he was not a judge at the time of the verdict, he was a candidate for judge who was sworn in a few days later. Agent Briggs also testified to an incident where the Defendant brokered testimony from a witness in a criminal trial for his own benefit. The Defendant then retaliated when the testimony did not go as scripted. Once again, no evidence was presented that directly contradicts the fact that the agreement between the witness and the Defendant existed and that the resulting sentence was the product of the failed agreement. The Defendant is the uncontested leader of the racketeering enterprise charged in the indictment. Based on his prior efforts to subvert justice, there is danger that this behavior would continue if released.[4]

---

4. It is also important to note this behavior could occur and continue if the Defendant were released on home incarceration with GPS monitoring (arguably the most restrictive condition available), as the evidence presented by Agent Briggs referenced behavior occurring at the Defendant's residence or activity directed by the Defendant from his residence.

15

There is also an increased physical danger to potential government witnesses posed by this Defendant. The day after the first detention hearing for this Defendant, a cooperating witness received a threatening message via e-mail. The message contained a visual image of an individual pointing a handgun at the e-mail recipient. The message was sent by Richard Bryan Hubbard, an individual associated with the Defendant's racketeering enterprise. Hubbard admitted to speaking with Maricle's co-Defendant, Charles Wayne Jones, before the threat was sent, and to discussing the case against Maricle and other defendants. A release violation is currently pending against Jones based on this conduct. Notwithstanding that one of the heads of the enterprise was in custody, threats have still occurred. There is an increased physical danger to the witnesses if the Defendant is released, as he would have a greater ability to direct and orchestrate efforts to influence, delay or prevent testimony.

Specific danger to government agents also exists based on the Defendant's prior behavior. Testimony indicated that the Defendant made a concerted effort to learn where case agents lived and what type of vehicles they drove. Evidence exists that the Defendant hired an employee to aid in this effort. There is no proper motive for the subject of an investigation to attempt to learn personal information of a case agent. The only rationale conclusion is that the Defendant intended harm toward the case agents. The threat was deemed severe enough by the FBI, well in advance of this detention hearing, that a ruse was sent through the cooperating source to hinder the attempts to locate the agent's home and vehicle information.

## **CONCLUSION**

The United States has shown by a preponderance of the evidence that the Defendant poses a significant risk of nonappearance. The risk is based upon the potential penalty the Defendant faces, a penalty well recited to the Defendant through his prior counsel. Such a penalty, for a 65 year old man, with prior erratic behavior, current mental stability issues, and evidence of a recent attempt to hide a six figure asset, constitutes a risk of non-appearance that no combination of conditions can address.

The United States has also shown by clear and convincing evidence that the Defendant poses a danger to the community and to individuals within the community. The danger to the community is based on his prior efforts to subvert justice and the nature of the instant offense. Physical danger to others is based on, among others, the Defendant's role as a head of the racketeering enterprise, his prior efforts to influence others, the enterprise's recent threats toward a cooperating source, and the Defendant's attempts to determine personal information of case agents.

For the foregoing reasons, the Court should detain the Defendant pending trial.

Respectfully submitted,

JAMES A. ZERHUSEN
UNITED STATES ATTORNEY

By:   s/Stephen C. Smith
Stephen C. Smith
Jason D. Parman
Assistant United States Attorneys
601 Meyers Baker Road, Suite 200
London, Kentucky 40741
606-864-5523, fax 606-864-3590

## **CERTIFICATE OF SERVICE**

This is to certify that the foregoing was this 4th day of May, 2009, filed using the CM/ECF system which will send notice to counsel of record:

David Hoskins, Esquire

s/Stephen C. Smith
Assistant United States Attorney
