UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

**CASE NO. 09-16-DCR** <u>**ELECTRONICALLY FILED**</u>

**UNITED STATES OF AMERICA,** **PLAINTIFF,**

**VS.    DEFENDANT RUSSELL CLETUS MARICLE'S REPLY TO
        <u>GOVERNMENT'S BRIEF IN SUPPORT OF DETENTION</u>**

**RUSSELL CLETUS MARICLE, ET AL,** **DEFENDANT.**

\*\* \*\* \*\*

Having failed to present evidence justifying detention of the Defendant Russell Cletus Maricle, the government has submitted a brief long on hyperbole but short on substance. The Defendant submits that the evidence presented at the second detention hearing, held April 20, 2009, demolished the government's case presented at the initial detention hearing.

The government is mistaken as to the import of the Defendant's Not Guilty plea and presentation of evidence disproving the government's allegations. In doing so, the Defendant intends to convey to the government that each and every allegation of misconduct by the Defendant is disputed, contested, and controverted. The government's brief in support of detention is replete with such phrases as "undisputedly involved in tampering with a jury", "uncontested that the Defendant accompanied Kenneth Day to fix the jury", "uncontroverted evidence exists that the

Defendant tampered with a jury", "the Defendant is the uncontested leader of the racketeering enterprise", when in reality each of the points is denied by the Defendant.

In a failed effort to bolster meritless arguments, the government drags out as many red herrings as it can dream up: attempting to smear defense witness Marilyn Roberts by saying she "admitted" she was the court reporter in the civil case involving Kenneth Day; mischaracterizing the school teachers' testimony as suggesting they felt that Mr. Maricle's near-daily picking up of his grandson from school was merely a response to the federal investigation; emphasizing that Rebecca Welch didn't know much about Mr. Maricle's travel habits; etc. The government ignores those elements of each witness's testimony which demonstrate Mr. Maricle's suitability for release.

Likewise, the government points to such things as experimenting with drugs (The Pretrial Services Report makes it clear that this was simply the use of marijuana once or twice at least thirty years ago) and a vague suggestions that, when facing a soon-dismissed murder charge nearly forty years ago, Mr. Maricle was in seclusion as justifying detention. It is uncontroverted that Mr. Maricle never failed to appear in connection with that short-lived matter. These points merely highlight the desperation of the government's position.

In much of its brief, the government wants to have things both ways. On the one hand, the internet threat by Richard Brian Hubbard evidences a grave threat to

witnesses, even though the government knows full well that Mr. Maricle, locked away in jail at the time, had nothing whatsoever to do with the threat being made. On the other hand, Richard Brian Hubbard walks free with the government's blessing. Similarly, the government describes Mr. Maricle's mental state as precarious and unstable, yet attributes to him the ability to hatch a scheme involving selling his houseboat and fleeing to Mexico during the stressful hours following his arrest.

## NATURE AND CIRCUMSTANCES OF OFFENSES CHARGED

Each of the eight defendants face RICO and election fraud counts. Others beside Mr. Maricle face perjury and obstruction charges. These are undoubtedly serious allegations. But each defendant has plead not guilty, and only Mr. Maricle faced detention initially, as the government made no detention motion for any other defendant. The inquiry here, then, must be to those factors that differentiate Mr. Maricle from his codefendants. After the April 20, 2009 hearing, no factor can be said to be sufficient to justify detention.

## JURY TAMPERING IN KENNETH DAY CIVIL TRIAL

As the government persists in arguing this point and attempting to justify its failure to make even the slightest effort to corroborate Kenneth Day's story, the Defendant will ask the court to note that Agent Briggs might have followed up on Day's tale without the necessity of entering the Clay County Courthouse, which the government's brief indicates causes Agent Briggs some trepidation. (Although

Agent Briggs testified that he believed he had looked at the circuit clerk's file at some point. Page 30, transcript of hearing of April 20, 2009. If this is true, far more troubling issues are present in this case.) The following testimony was given in the detention hearing before the Magistrate Judge on March 23, 2009:

> Q     And at that time, you indicated in your initial response that there was a communication made directly to a person. Do you know who that person was?
>
> A     Yes, sir.
>
> Q     Can you relate to the court who it was that was approached?
>
> A     Press or Preston Henson.
>
> Q     And who approached this person?
>
> A     It was –- you mean list the names of individuals?
>
> Q     If you recall?
>
> A     Yes. It was Mr. Maricle and others approached Mr. Henson.
>
> Q     Was Mr. Henson on the jury, Agent Briggs?
>
> A     No, sir. His wife was.

Page 34, transcript of hearing of March 23, 2009.

The record is barren of any indication that Mr. Henson or his wife was interviewed by any of the investigators in this case, and Agent Briggs was unable to recall any corroboration attempts by any investigator.

Without venturing into the courthouse to view the file in question, Agent Briggs would, of course, not have been aware of what is surely the final nail in the coffin of this story. The trial at issue occurred in 1990, before it became standard in Kentucky courts to identify jurors only by number. The Judgment in question lists

each and every juror by name.  Defendant's Exhibit 1, hearing of April 20, 2009.  None were named Henson.

## ORCHESTRATION OF PERJURY IN A CRIMINAL TRIAL

The government continues to rely on unsworn, uncross-examined hearsay from questionable sources to make this allegation, and suggests that the letter produced at the April 20, 2009 may not be the letter in issue.  Here, the government seeks to reverse the burden of proof and asks the court to speculate concerning evidence the government is unable to produce.  The Bail Reform Act demands clear and convincing evidence *from the government* to justify detention, and the government has produced none.

## CONCLUSION

The government has failed to prove, even by a preponderance of the evidence, that Mr. Maricle is a flight risk or danger to the community.  The government suggests that Mr. Maricle may attempt to influence witnesses, but neglects to note that the contact between government informants and this Defendant occurred when the informants went looking for the Defendant at his home.  There is no indication that Mr. Maricle ever went to a witness.  The government knows who its witnesses are, and can caution them to stay away from Mr. Maricle's home.   The conditions of release recommended by the United States Probation Office are adequate to address all reasonable concerns.

Respectfully submitted,

/s/ David S. Hoskins
Attorney At Law
107 East First Street
Corbin, Kentucky 40701
TELEPHONE: (606) 526-9009
FAX: (606) 526-1021

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 7th day of May, 2009, the foregoing was filed electronically with the Clerk of Court by using the CM/ECF system which will send the Reply to all Counsel of record.

/s/ David S. Hoskins
Attorney At Law
