## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## SOUTHERN DIVISION
### (at London)

CASE NO. 09-16-S-DCR                                    **ELECTRONICALLY FILED**

UNITED STATES OF AMERICA,                                              PLAINTIFF,

V         **OBJECTION TO MAGISTRATE JUDGE'S
          ORDER DENYING DISQUALIFICATION**

RUSSELL CLETUS MARICLE,                                                DEFENDANT.

\* \* \* \* \*

Comes now the Defendant, Russell Cletus Maricle, by counsel, pursuant to Fed. R. Crim. P. 59(a), and objects to the Magistrate Judge's Order Denying Disqualification of Assistant United States Attorney Stephen Smith in this case(DE 337).

As a preliminary matter, the Defendant notes that he did in fact request an evidentiary hearing in his motion to disqualify AUSA Stephen Smith (DE 296), and the order here objected to is thus erroneous in that regard.  The Defendant submits that adequate consideration of the issues presented in this motion require an evidentiary hearing, and reiterates his earlier request.  In particular, the Defendant suggests that a factual inquiry into the extent of former Clay County Sheriff Ed Jordan's personal relationship with Preston Smith, the father of AUSA Smith, is required to fully consider the issues presented.

The primary reason such inquiry is necessary is that, as Clay County Sheriff, Ed Jordan was a member of the Clay County Board of Elections during the entire time

relevant to the indictment. The Board of Elections is the very entity identified in the indictment as the enterprise for purposes of the RICO count. But Mr. Jordan is unindicted. The recording of Mr. Jordan's conversation filed as an exhibit to the motion to disqualify is replete with evidence that those persons who have been indicted are his political enemies to varying degrees.

The Defendant does not suggest impropriety on the part of AUSA Smith or his father. But actual impropriety is not required to demand disqualification. This case has received a tremendous amount of publicity and news coverage, in both local and state-wide media. Heightened scrutiny by the public calls for a heightened sensitivity to avoiding even the appearance of impropriety.

The July 23, 2009 edition of "The Manchester Enterprise" contains a report of an interview of Mr. Jordan. In the interview, Jordan denies that he talked to Preston Smith, the father of Stephen Smith, but states that he is related to Preston Smith and Stephen Smith, and a friend of Preston Smith. Jordan states "I never went to Preston and I never talked to Preston for leniency," referring to leniency for Mayor Doug White. Jordan goes on to say "Stephen Smith is related to me, but I've never spoken to Stephen Smith in my life. I wouldn't know him if he walked in my front door. His father is a friend of mine. We grew up on Otter Creek together...". Clearly, the relationship of Jordan to the father, Preston Smith, is not only familial, but personal. They are related. They grew up together. Just as he did in his conversation with confidential sources, Jordan, in his interview with "The Manchester Enterprise," referred to Preston Smith on a first name basis.

The tape clearly shows that Mr. Jordan perceived all of the Defendants as political opponents. A summary of the pertinent parts of Jordan's recorded conversations of April 30, 2007 reveals his feelings toward the Defendants:

### **DOUGLAS C. ADAMS**

Jordan states that the three worst enemies that he and Doug White had in Clay County were Doug Abner, Doug Adams, and "the preacher up there at the church." He states that "Doug Adams is who I want and I said that's who they (Federal Prosecutors) want, and I know it."

The first part of the conversation relative to Douglas C. Adams is as follows:

Jordan: Who's lying about Doug Adams? I said never fool with Doug Adams. He'll back stab you in the back.

CW1: And he...and he did.

Jordan: I heard him say...I heard him say, "I'll get even with baby White in Clay County if I live long enough in Clay County." That come out of his own mouth.

CW1: And he did. Didn't he, Ed?

Jordan: And I know what he'd do to you.

CW1: Yeah.

Jordan: And, and be honest with you, what it wasn't over there Jennings White. That ain't...that ain't what Doug, Doug don't like Whites before Jennings White ever come in the picture and I knowed that and how I knowed that, I got in through Roy Morgan and people.

CW1: Well, I wonder why.

| | |
|---|---|
| Jordan: | I don't know. I can't; this is before Jennings White ever come in the picture. First time I run, first time I ran was when, uh... |
| CW1: | That's been twenty years. |
| Jordan: | Well, that was, uh, Charles White was out there and, uh, I asked him, I believe it was Jennings or Pearl Glenn or some of them, I said what does the school board think about it? And he said, "Well, Charles won't go against you...", he said, uh, Doug Adams, I believe he was principal out there then. He said, "He'll be against you 110%" Said, "Any that White's got, he's against." So I went and asked him. He said, "I'm for no White." He said, "If the Whites for you, I'm against you." That's the words he said. |
| CW1: | Told you you couldn't trust him, didn't I? |
| Jordan: | You can't fool with them guys, son. |
| CW1: | Told you that. |
| CW2: | You can see what they've done to me now, buddy. |

In telling CW1 what to tell the Grand Jury, the following dialogue occurred:

| | |
|---|---|
| Jordan: | Tell the truth. Tell them Doug Adams is the man that runs Clay County. |
| CW2: | You're telling the truth. |
| Jordan: | And say he run it before he even become, uh, before he even became superintendent of the schools. Say go back and look at all the election officers that served in the last... |
| CW1: | That's what I'm wondering. What am I going to tell them when they say, "How did you become elections officer?" |
| Jordan: | Here's what to tell them, tell them, and, say, uh, the sheriff and the county court clerk and them, you got Clay M. Bishop is a Republican, uh, Chairman. You've got a Wayne Jones as Democrat. So they picked officers Doug Adams tells them to pick. |

Later, and Jordan says relative to CW1 testifying before the Grand Jury:

Jordan: I'd go over there and tell them one thing, and this would be the first thing I'd tell them, and, and you'd be telling the truth. I'm not asking you to lie. Say, "Here's the way it is in Clay County. You'll do whatever Doug Adams says do, and if you don't, you'll have nothing in Clay County. You'll have no job. Your family will have no jobs, and says that's the, basically it." He, he is just like the sheriff said over there, the former sheriff called him a super man in the paper and said that's what he was talking about whatever he tells 'em is what they'll do.

There are several other uncomplimentary references to Adams by Jordan, including calling him Doug Hussein.

## FREDDY W. THOMPSON

The following discussion occurred with respect to Freddy Thompson:

CW1: Let me tell you another one, I want to tell, I want to tell him this...

CW2: Did you see where they reversed that, uh, one the sheriff's race over there.

Jordan: I'm talking to_____right now and I'm going to sue Freddy Thompson if I have to get down there cause he was in the damn voting machine telling people if you write Ed in, we won't count them.

This is an obvious reference to Jordan's write-in in the November 2006 campaign. Thompson had been told by the state Board of Elections not to count write in votes if the full name was not written in, and Thompson was acting accordingly.

## CHARLES WAYNE JONES

The references to Charles Wayne Jones are few in the body of the conversation among the three participants, two confidential witnesses, and Jordan. However, the

animosity is implicit in what they say.  Jordan makes reference to Wayne Jones as the Democrat election commissioner and states that Doug Adams tells them who to pick.

Further, CW2 complains that CW1 was shut down six times as election officer in the November 2006 general election.  This was the election for mayor wherein one of the candidates was the father of CW2 and the father-in-law of CW1.  Jordan was a write-in candidate for sheriff.

### BART MORRIS AND DEBBIE MORRIS

Bart and Debbie Morris are husband and wife.  CW1 asked Jordan if he thought Bart helped him any.  CW2 blurted in, "No, Bart never helped us."  After further conversation, Jordan said, "I know you're right, you're 100% right."

### PAUL BISHOP

Even though Paul Bishop has entered a plea in this case, it is important to note that Jordan makes several references about his son, Mike Bishop.  No repetition will be made of those statements since Mike Bishop is not a party in this case, even though, in passing, note should be taken of the slanderous nature of the claims.

### STANLEY BOWLING

Several references are made to Stanley Bowling.  This Defendant will not repeat or elaborate on those references since he has only recently been added as a party, other than to note that Jordan states Doug Adams controls the magistrates.  Stanley Bowling has been a magistrate since 2003.

## RUSSELL CLETUS MARICLE

Jordan's belief that Russell Cletus Maricle was opposed to him is found in the following dialogue:

| | |
|---|---|
| Jordan: | ...I took it to Cletus Maricle. Cletus Maricle looked at it. He said, "They've, they've written a law down there and can't interpret their own law." He said, "It plainly tells you you're in the right," and I said, "Well." |
| CW1: | Well, why didn't he do something about it? |
| Jordan: | Well... |
| CW1: | Well, I mean... |
| Jordan: | I have to file a suit before I can do anything, but I wouldn't going to do anything in his Court because he was against me to start with. |
| CW2: | That's right. |
| Jordan: | He, he was doing any way to elect Philip Mobley. |
| CW2: | Right. |
| Jordan: | No matter who. |
| CW1: | No matter. |

In *United States v. Dyess*, 231 F.Supp. 2d 493 (S .D. W. Va. 2001), the court ordered the disqualification of the United States Attorney's Office for the Southern District of West Virginia. The court found that its "paramount concern" was the "potential for the appearance of impropriety." *Id.* at 498. The court held that its "ultimate concern must be public confidence in the administration of justice, and that 'justice must satisfy the appearance of justice.'" *Id.* (citing *United States v. Johnson*, 690

F. 2d 638 (7th Cir. 1982); *General Motors Corp. v. City of New York*, 501 F.2d 639,649 (2d Cir. 1974).

The perception in this case will be that Mr. Jordan has escaped prosecution while his enemies face serious criminal charges. His boasts and brags have received substantial publicity, especially locally. He claims a close connection to the father of AUSA Smith, the extent of which is unknown absent a hearing. To insure that no appearance of impropriety exists in this high-profile case, the motion to disqualify AUSA Stephen Smith should be sustained.

Respectfully submitted,

/s/David S. Hoskins
Attorney At Law
107 East First Street
Corbin, KY 40701
Telephone: (606) 526-9009
Facsimile: (606) 526-1021
Email: davidhoskins@bellsouth.net
ATTORNEY FOR DEFENDANT
RUSSELL CLETUS MARICLE

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 17th day of August, 2009, the foregoing was filed electronically with the Clerk of the Court by using CM/ECF System which will send notice of filing to all counsel of record.

/s/David S. Hoskins