```
                                                                   1


 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF KENTUCKY
 2                    SOUTHERN DIVISION at LONDON
                                - - -
 3
     UNITED STATES OF AMERICA,       :   Docket No. CR 09-16-S
 4                                   :
                     Plaintiff,      :   Frankfort, Kentucky
 5                                   :Wednesday, February 3, 2010
          versus                     :   9:00 a.m.
 6                                   :
     RUSSELL CLETUS MARICLE,         :
 7   DOUGLAS C. ADAMS                :
     CHARLES WAYNE JONES             :
 8   WILLIAM R. STIVERS              :
     FREDDY W. THOMPSON              :   Trial Day 2
 9   WILLIAM B. MORRIS               :
     DEBRA L. MORRIS                 :   EXCERPTED TRANSCRIPT
10   STANLEY BOWLING,                :
                                     :   Opening Statement by
11                   Defendants.     :     T. Scott White

12

13                              - - -
                          TRANSCRIPT OF TRIAL
14                    BEFORE DANNY C. REEVES
              UNITED STATES DISTRICT COURT JUDGE and a jury
15                              - - -

16   APPEARANCES:

17   For the United States:     STEPHEN C. SMITH
                                JASON D. PARMAN, ESQ.
18                              Assistant U.S. Attorney
                                601 Meyers Baker Road
19                              Suite 200
                                London, KY 40741
20
     For the Defendant          MARTIN S. PINALES, ESQ.
21   Russell Cletus Maricle:    CANDACE C. CROUSE, ESQ.
                                Strauss & Troy
22                              105 E. Fourth Street
                                Fourth Floor
23                              Cincinnati,OH  45202

24                              DAVID S. HOSKINS, ESQ.
                                107 E. First Street
25                              Corbin, KY  40701
```

```
 1   For the Defendant              R. KENT WESTBERRY, ESQ.
     Douglas C. Adams:              KRISTIN N. LOGAN, ESQ.
 2                                  Landrum & Shouse, LLP
                                    220 West Main Street
 3                                  Suite 1900
                                    Louisville, KY 40202
 4
                                    BENNETT E. BAYER, ESQ.
 5                                  Landrum & Shouse, LLP
                                    106 West Vine Street
 6                                  Suite 800
                                    Lexington, KY  40507
 7

 8   For the Defendant              T. SCOTT WHITE, ESQ.
     Charles Wayne Jones:           Morgan & Pottinger, P.S.C.
 9                                  133 West Short Street
                                    Lexington, KY  40507
10

11   For the Defendant              ROBERT L. ABELL, ESQ.
     William R. Stivers:            120 North Upper Street
12                                  Lexington, KY  40507

13
     For the Defendant              RUSSELL JAMES BALDANI, ESQ.
14   Freddy W. Thompson:            R. TUCKER RICHARDSON, ESQ.
                                    Baldani, Rowland & Richardson
15                                  300 West Short Street
                                    Lexington, KY  40507
16

17   For the Defendant              JERRY W. GILBERT, ESQ.
     William B. Morris:             Coy, Gilbert & Gilbert
18                                  212 North Second Street
                                    Richmond, KY 40475
19

20   For the Defendant              ELIZABETH SNOW HUGHES, ESQ.
     Debra L. Morris:               Gess, Mattingly & Atchison, PSC
21                                  201 West Short Street
                                    Lexington,KY40507
22

23   For the Defendant              DANIEL A. SIMONS, ESQ.
     Stanley Bowling:               Thompson, Simons, Dunlop & Fore
24                                  116 West Main Street
                                    Suite 2A
25                                  Richmond, KY 40476
```

1  Court Reporter:            LISA REED WIESMAN, RDR-CRR
                              Official Court Reporter
2                             35 W. Fifth Street
                              P.O. Box 1073
3                             Covington, KY   41012
                              (859) 291-4410
4

5      Proceedings recorded by mechanical stenography,
   transcript produced with computer.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                         * * *

2          MR. WHITE: Your Honor, Mr. Smith, Mr. Parman,
3   colleagues. Good afternoon. I finally get to say something
4   to you. First thing I want to say to you is, though, my name
5   is Scott White. I'm not from Clay County. I'm not the mayor
6   of Manchester. All my people are from Pike County. I grew up
7   in Lexington.
8          I want to be brief because you've heard a lot of
9   lawyers talk. I want to highlight a few things that are
10  important to my client.
11         Before I do that, I was in a trial about a month or
12  so ago, and I heard a prosecutor say, an assistant U.S.
13  attorney say something that I never really heard in a court
14  before and it made a lot of sense. That was that the
15  government, the federal government can kind of make you do two
16  things. They can draft you, send you to war, or they can
17  draft you, make you sit on a jury and decide a case. And in a
18  lot of respects, that's kind of funny. But in a lot of
19  respects, it's the same kind of thing. I mean, lives aren't
20  at risk, but you are here as a protecter of freedoms of our
21  constitution.
22         The government, as you heard yesterday, as Judge
23  Reeves read to you a very lengthy indictment, charging these
24  folks with very, very serious crimes, that we have 12 folks
25  that will decide the facts and the evidence and then make

1    their decision. And so on behalf of Wayne Jones, I want to
2    thank you. I've been doing this a long time, and we do
3    understand what you're going through. We appreciate it. It's
4    going to be a long trial.
5            Speaking of Wayne, like everybody else, I'm going to
6    ask him to stand up for you. Wayne. Thank you, sir. And his
7    wife is all the way in the back. Jen, would you mind standing
8    so they can see you? She won't be a witness. Wayne, like
9    Judge Maricle, was born and raised in Manchester. Born in the
10   hospital there in Manchester in 1939.
11           After 32 years working for the state down there, he
12   retired. He was a social worker and at the end of his career,
13   he ran what's basically called the Clay County Welfare office
14   was doing that when he retired. His wife, as I've already
15   pointed out, is Judy. They have three adult children. His
16   oldest daughter is Lisa. Lisa is the proud wife of Freddy
17   Thompson, who is the Clay County clerk. And I will let Mr.
18   Richardson tell you all about that family. Freddy 's a good
19   man. He sure married up, I can tell you that.
20           His other, next child is Christopher. Christopher
21   lives down there in Manchester as well. He works for the
22   transportation cabinet. And his daughter, who I think is
23   probably the apple of his eye, like my daughter is mine,
24   she -- I'm a little surprised she's not here; they seem to be
25   joined at the hip, is Martha Anne. She is a Center College

1   graduate, and unlike a lot of Center College graduates who
2   join the Center Mafia and go off to make their fortune, she
3   went back home to Manchester as well.  And she is the director
4   of housing for a public housing nonprofit down there.
5         And like a lot of Kentuckians, like most Kentuckians
6   I know, at least all the Kentuckians in my family, anyway,
7   they're dead interested in politics.  And from a little boy,
8   Wayne has been involved in politics.  He's a Democrat.  Unlike
9   most Clay Countians, Wayne is a Democrat, not a Republican.
10  Clay County is as Republican as they come.
11        He got involved in politics and like all people
12  involved in politics, he tried to elect Democrats.  Now, let
13  me kind of transition real quickly to this notion of a Board
14  of Elections, and I was looking to see if the United States
15  left their exhibit up here.  Remember the exhibit that they
16  showed?  It showed the Clay County Board of Elections.  And
17  Mr. Smith is right, in all 120 counties, they operate the
18  exact same way, and there's no mystery to it.
19        It's all set out by statute or by regulation, by the
20  State Board of Elections.  And what I want to do is just walk
21  you through that a little bit.  It's kind of tech -- it's not
22  technical, I think it will help just a tad.  You've got four
23  members.  You've heard you've got whoever's the elected county
24  clerk is automatically on the Board of Elections.  Automatic.
25  The county sheriff, by statute, is automatic is on the county

1    board.  Then the other two, the two major parties of that
2    county, in Clay, as in every other county in Kentucky is the
3    Democrats and the Republicans.  They each have a
4    representative on the Clay County Board of Elections, and the
5    reason why I think our legislature wanted that is because
6    political parties run an election, so it makes sense to have
7    the opposing political parties be on the Board of Elections.
8         Now, so you got the two by statute, the sheriff and
9    the county clerk.  How does the Democrat and Republican get on
10   there?  Well, those two members are chosen by the county
11   executive committee of that county's party.  In other words,
12   here in Franklin County, the Franklin County Republican party
13   and the Franklin County Democrat party essentially send up
14   names to the State Board of Elections, and the State Board of
15   Elections picks one.  And that person gets a commission from
16   the Secretary of State, who then sits on that county as that
17   party's commissioner.
18        So when you hear Wayne Jones referred to as
19   Commissioner Jones, he wasn't elected.  He was appointed, if
20   you will.
21        Now, in 2002, the Board of Elections was comprised
22   of, as you already heard, Jennings White, a Republican, who is
23   the county clerk.  That's who Freddy Thompson was running
24   against.  Edd Jordan, who was the Republican sheriff.  Hugh
25   Bishop, who was chosen as the Republican commissioner, and

1    then my client, Wayne Jones, was the Democrat commissioner.
2    Those were the folks in 2002 that comprised the Board of
3    Elections, okay?
4         Now, as you heard in the opening statement of Mr.
5    Smith, that is the entity that they claim is this enterprise.
6    And at the beginning, before we even got started, Judge
7    Reeves -- in fact, I think it may have been the first thing
8    that happened after y'all got sworn in, Judge Reeves read you
9    that long indictment.  I'm not going to read it to you again,
10   don't worry, but I want to tease out a couple quick things.
11        Here's what we're defending against.  The United
12   States presents facts to or allegations to a grand jury.  The
13   grand jury then meets and issues what's known as an
14   indictment, and this is the indictment that then we're called
15   upon to defend against.
16        And here's what they say the enterprise is.  At all
17   times material to this indictment, the Clay County Board of
18   Elections was an enterprise and all these folks, all these
19   defendants participated in the operation and management of the
20   enterprise.  At all times material to this indictment, which
21   would be from March, 2002 until -- well, let's see.  March,
22   2002 until sometime at the end of 2006, that's the period.
23        Well, in March of 2002, the only person of all these
24   folks who have been accused of a crime that were involved in
25   the operation and management of the Clay County Board of

1  Elections is Wayne Jones, my client.  And Wayne Jones had
2  three people against him, three Republicans who controlled --
3  in fact, Mr. Smith in his opening statement, remember he told
4  you whoever's got the county clerk's got the Board of
5  Elections.  The Republicans had the Board of Elections in
6  2002.  And if there were a tie, say a 2-2 vote, the county
7  clerk gets to cast the deciding vote.  That means when they
8  walk into that meeting, Wayne Jones is outvoted 4-1.  I submit
9  he had no ability to participate, operate and manage the Board
10 of Elections, the Clay County Board of Elections in 2002.  It
11 just doesn't make sense.
12         And you know what, when you get into that jury box,
13 the one thing you don't need us to tell you or be instructed
14 on is common sense.  Y'all got plenty of common sense.
15         Now, the thing that I learned for the first time
16 today was that Jennings White was given a title, and that
17 title was an unindicted co-conspirator in the RICO enterprise.
18 That is the racketeering activity and the operation of the
19 enterprise.
20         What they have said in their opening statement as an
21 unindicted co-conspirator is Jennings White agreed with all
22 these folks on running the Board of Elections.  I will fall
23 out of my chair, which I've been known to do, if anybody gets
24 up here and testifies that Wayne Jones would agree with
25 Jennings White to do anything in 2002.  They were dead set

1 against each other. My client was trying to help his
2 son-in-law, Freddy Thompson, become elected. It's probably
3 the only Republican he supported in his life, because he was
4 married to his daughter.
5 But the United States is trying to tell you that they
6 conspired together. Common sense. That's what I'm asking you
7 to apply in this case when you listen.
8 Now, as you've heard, much of the United States' case
9 depends on convincing you that the election officers were also
10 corrupt and that they were selected by these people. I think
11 they said that Judge Maricle and Superintendent Adams may have
12 told them who to pick. I was fuzzy on my notes on that.
13 Again, bear with me a moment. I want to unpack that process
14 too.
15 It's not like the Clay County Board of Elections
16 comes into session and they all get around a conference table
17 there in the Clay County municipal building and they say, oh,
18 let's get Scott White, let's get Kristin Logan, let's get
19 Robert Abell to be our election officers down in Manchester
20 precinct. That's not how it works. It works the same way in
21 all 120 of our counties.
22 Let me tell you how it works. It's kind of
23 interesting. And if you're a -- I guess a government history
24 buff like me, you really find it interesting. If you're not,
25 I'm about to bore the dickens out of you. I apologize. Here

1  are how they're picked. We have the Kentucky Republican
2  party. We have the Kentucky Democrat party. And those
3  parties have bylaws, and they tell how they operate. This is
4  how we're going to elect our State Board. Here's how we're
5  going to have our officers. Here's how we're going to have
6  our primaries. But it all starts at the grass roots; that is,
7  at the county level.
8  Here's what happens. It's tied to when we elect our
9  governor. Every four years, the county party has its own
10 convention; that is, the Clay County Democratic party and the
11 Clay County Republican party get together and they have a
12 convention. Well, who goes to this convention? Well, Clay
13 County is divided up not into 21, but into 20 precincts.
14 Every one of those precincts holds an election, and they elect
15 anybody that's a registered Democrat. I'm just going to talk
16 about the Democrats. It's the same for the Republicans.
17 All the registered Democrats in that Manchester city
18 precinct, what they do is they'll go down to like a school or
19 wherever the precinct, wherever you vote, they'll get together
20 and they elect a captain, a co-captain, a youth member; that
21 is, somebody 35 or under, and they elect a woman. And so you
22 have those four people are then the party officials for that
23 precinct. Those four people then go to the county convention.
24 Are you with me? Gets kind of weird. I probably should have
25 done audio visual.

1        At any rate, those four people from that precinct
2    join with the four people from the other 19 precincts.  They
3    then have the Clay County Democrat convention, okay?  They
4    then elect the Clay County executive committee for the
5    Democratic party.  Same for the Republicans.  It's real
6    simple.
7        That then group essentially manages the Clay County
8    Democratic party.  Here's what they do.  The first thing they
9    do is they select the county chair.  They elect the county
10   chair.  From 2002 to 2006, the Democratic county chair was Don
11   Nolan, okay?  The Republican, I believe, was Clay Bishop.  It
12   kind of changed a couple times.  Mr. Bishop is the county
13   attorney for Clay County.  I think he'll come in and testify,
14   talk to y'all about some things.  I'm not sure yet.  But at
15   any rate, Clay was the Republican chair.
16       Now, that gives you that backdrop, okay?  And it's
17   the executive committee, the Democratic executive committee
18   that takes its five nominees and mails those to the State
19   Board of Elections in Frankfort, and the State Board of
20   Elections picks one of those to be the county commissioner for
21   that party for the County Board of Elections.  I know I lost
22   you five minutes ago, but that's basically the deal, okay?
23       In other words, it's not a bunch of guys sitting
24   around chewing tobacco and drinking L-8s trying to figure out
25   who we gonna put, da, da, da.  That's how that works.  Here's

1    how the election officers are picked.  In every precinct, by
2    statute, you have four election officers.  You have two
3    judges.  They're not judges like Judge Reeves or Judge Maricle
4    or, you know, a law judge.  They're just called judges.  You
5    have two.
6         You also have a sheriff, but they don't carry a gun
7    and a badge.  They have certain duties they have to do in
8    terms of just monitoring the line so that when 6:00 hits,
9    whoever is last in line, that's the last person who votes.
10   And then you also have a clerk, and they have certain duties.
11   Our statutes, Kentucky statutes define and explain what those
12   duties are.
13        What happens is in all 120 counties, the county, the
14   county chairperson -- I'm just going to talk about Democrats
15   again.  The Democratic county chair gets 20 forms, one for
16   each Clay County precinct.  That form is then given by the
17   county chairperson to each of the captains who have been
18   elected in those precincts.  You with me?  And then they go
19   out and they get four people that are willing to be Democrat
20   officers in that precinct.  They get two judges.  They get one
21   clerk and they get -- well, they actually get four names.
22   They have to sign their name on this form themselves.
23        That then is given to the county clerk, and then when
24   the Board of Elections meets as a group, the County Board of
25   Elections, they then put together, they then select the county

1	or the precinct officers that go out on election day.

2	Here's what's interesting. The Board of Elections
3	can't just go out and pick their own folks. They've got to
4	select from the people that are given to them by the two
5	parties, the Democrats and the Republicans.

6	For instance, the Manchester precinct that Mr. Smith
7	wanted to talk about, great example. You've got four
8	Democrats that are nominated, you got four Republicans who are
9	nominated to be the four pre-election officers in that
10	precinct. One judge has to be a Republican. One judge has to
11	be a Democrat. So you got those two right off the bat. One
12	has -- you need a clerk and you need a sheriff. One's got to
13	be a Republican, one's got to be a Democrat. The County Board
14	of Elections, which is again county clerk, county sheriff,
15	Democrat commissioner, Republican commissioner, they then
16	select that group. Then they go do it.

17	Now, you've got some extra names, those are the
18	alternates, and I think there will be testimony as to why you
19	have alternates. It can be hard to get election officers.
20	Sometimes they don't show up. Or sometimes they show up, but
21	they weren't picked, and they just want to do it. So you need
22	alternates to cover that contingency.

23	And our again Kentucky statutes talk about how all
24	that works. You know, in other words, these are the four
25	people that the county has selected to do it, the County Board

1   selected to do it.  Scott White doesn't show up.  What do you
2   do next?  The statute tells you.  The expert on that is the
3   county clerk, in conjunction with the county attorney, in
4   conjunction with the County Board of Elections.  They advise
5   these folks during the day, as necessary.  They may have to
6   call up to the State Board here in Frankfort on election day
7   if it gets confusing.
8              So that's how that's picked.  There's nothing
9   mysterious about it.  There is nothing sinister about it.
10  That's how it works.  These meetings, they're open meetings.
11  They're subject to Kentucky Open Meetings Act.  Minutes are
12  kept.  You're going to see all the minutes.  I think you got
13  to see some at the very beginning of Mr. Smith's opening.
14  There are no secrets here.  This is how it's done.  It's how
15  it's done in Franklin County, Anderson County.  It's the same
16  way here as it is down in Clay County.
17             Now, I want to touch on two more quick things.  And I
18  know I'm being repetitive, but it bears repeating.  By the
19  time the United States finished its opening, I got the feeling
20  that every person who lived in Clay County was a drug addict
21  or corrupt or in federal or state prison, and that is not the
22  case.  But I suspect just about everybody -- well, that's too
23  broad of a statement.  Some of the United States' key
24  witnesses are the worst kind of drug traffickers.  They are
25  corrupt.  They are admittedly corrupt, and they're trying to

1    save their own skin where they're sitting in federal prison or
2    state prison, and they're hoping that you'll convict these
3    folks so they'll get a reduction in their own sentence.
4             So part of the facts of the case are you have to
5    judge why, and the motives behind people as to why they're
6    testifying.
7             Kennon White, who is one of their star witnesses,
8    basically couldn't get a job.  His daddy, who was the mayor,
9    the reason they call him Doug White is because he doesn't like
10   being called Daugh, because he thinks it's kind of fancy,
11   spelled D-a-u-g-h.  Doug White, his daddy, who was the mayor,
12   basically made him a job.  You know what Kennon turned around
13   and did?  He immediately started this kickback scheme where if
14   you wanted a contract with the city, you had to give me not a
15   hundred bucks.  A couple thousand bucks.  That's the kind of
16   people you're going to hear from.  That's the kind of people
17   they're bringing in to talk to y'all.  I want y'all to bear
18   that.
19            Second, you're going to hear testimony about a 2002
20   meeting that Mr. Smith mentioned in his opening statement
21   where a bunch of folks got together over at Mr. Stivers' for a
22   fish fry and a meeting in which they were having this last
23   meeting to figure out going into the 2002 primary who we're
24   going to vote for.  And I think they said it was Roy Morgan,
25   fella that was running for sheriff who I can't remember -- I'm

1 sorry; I'm getting lost in the names -- and Freddy Thompson.
2 We're going to pool all our money and that's going to be our
3 money to go out and buy votes with.
4 Buying votes and hauling votes are different. We're
5 going to talk about that during the trial. But they're going
6 to go buy votes, and I think he said the going price was 10,
7 25 dollars. But the source of this money were hundreds of
8 thousand of dollars. Again, common sense. They are
9 suggesting through the testimony of Paul Bishop, who has pled
10 guilty to a RICO conspiracy, has not been sentenced yet --
11 they haven't given him a sentence yet. They still got the
12 hammer over his head. Hundreds of thousands of dollars so
13 they can win the Clay County county clerk's race, the Clay
14 County sheriff's race. Hundreds of thousands of dollars.
15 Paul Bishop has got a son, Mike Bishop. He worked
16 for the city police. Sworn police officer. He's supposed to
17 be fighting -- the one thing that we can almost all agree on
18 is we got a major drug problem in eastern and southeastern
19 Kentucky. If you're from there, if you got people down there,
20 you know that. That's not a secret in our state.
21 Mike Bishop, policeman, was trained with our tax
22 dollars to go out and protect our kids. Part of the deal they
23 gave him, he's not going to be prosecuted. Because Paul
24 Bishop, his daddy, his daddy's jumping in front of a train for
25 him.

1       At the end of this case, I get to come back and talk
2  to you again.  Mr. Smith made a couple of great points, but
3  I'd like to reiterate, because I think Judge Reeves said
4  something very similar.  This is going to be a long trial.
5  Judge Reeves has already told you eight weeks.  We all hope it
6  won't last that long.  You know what's going to last a long
7  time?  You're going to get tired.  I'm already tired.  You're
8  going to get testy and annoyed.  I'm certain I'm going to do
9  something that you're going to say God, I wish that guy would
10 just shut up.  Hang in there.  Be patient.  You are, in fact,
11 the people that are going to decide this case.  This is a
12 very, very, very serious case.
13      When I come back, I'm going to ask you to acquit my
14 client on every count.  I'll go into detail on each one of
15 those counts.  The United States will not prove their case.  I
16 believe that in my heart, and I'm going to argue it to you
17 then.  And until then, I don't get to talk to you.  I'll talk
18 to you then.  Thank you.  Thank you, Your Honor.
19                           * * *
20                      C E R T I F I C A T E
21      I, LISA REED WIESMAN RDR-CRR, certify that the
   foregoing is a correct transcript from the record of
22 proceedings in the above-entitled case.
23
24  \s\ Lisa Reed Wiesman                    February 13, 2010
    LISA REED WIESMAN, RDR-CRR               Date of Certification
25  Official Court Reporter