1

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF KENTUCKY
 2                     SOUTHERN DIVISION at LONDON
                                 - - -
 3
      UNITED STATES OF AMERICA,       :  Docket No. CR 09-16-S
 4                                    :
                       Plaintiff,     :  **Frankfort, Kentucky**
 5                                    :  Wednesday, March 10, 2010
          versus                      :  4:30 p.m.
 6                                    :
      RUSSELL CLETUS MARICLE,         :
 7    DOUGLAS C. ADAMS                :
      CHARLES WAYNE JONES             :
 8    WILLIAM R. STIVERS              :  **EXCERPTED TRANSCRIPT**
      FREDDY W. THOMPSON              :
 9    WILLIAM B. MORRIS               :
      DEBRA L. MORRIS                 :
10    STANLEY BOWLING,                :
                                      :
11                     Defendants.    :

12

13                               - - -
                           TRANSCRIPT OF HEARING
14                       BEFORE DANNY C. REEVES
                    UNITED STATES DISTRICT COURT JUDGE
15                               - - -

16    APPEARANCES:

17    For the United States:      STEPHEN C. SMITH, ESQ.
                                  JASON D. PARMAN, ESQ.
18                                Assistant U.S. Attorney
                                  601 Meyers Baker Road
19                                Suite 200
                                  London, KY 40741
20
      For the Defendant           MARTIN S. PINALES, ESQ.
21    Russell Cletus Maricle:     Strauss & Troy
                                  150 E. Fourth Street
22                                Fourth Floor
                                  Cincinnati, OH  45202
23
                                  DAVID S. HOSKINS, ESQ.
24                                107 E. First Street
                                  Corbin, KY  40701
25
```

```
 1    For the Defendant              R. KENT WESTBERRY, ESQ.
      Douglas C. Adams:              KRISTIN N. LOGAN, ESQ.
 2                                   Landrum & Shouse, LLP
                                     220 West Main Street
 3                                   Suite 1900
                                     Louisville, KY 40202
 4

 5
      For the Defendant              T. SCOTT WHITE, ESQ.
 6    Charles Wayne Jones:           Morgan & Pottinger, P.S.C.
                                     133 West Short Street
 7                                   Lexington, KY  40507

 8
      For the Defendant              ROBERT L. ABELL, ESQ.
 9    William R. Stivers:            120 North Upper Street
                                     Lexington, KY  40507
10

11    For the Defendant              RUSSELL JAMES BALDANI, ESQ.
      Freddy W. Thompson:            R. TUCKER RICHARDSON, ESQ.
12                                   Baldani, Rowland & Richardson
                                     300 West Short Street
13                                   Lexington, KY  40507

14
      For the Defendant              JERRY W. GILBERT, ESQ.
15    William B. Morris:             Coy, Gilbert & Gilbert
                                     212 North Second Street
16                                   Richmond, KY 40475

17
      For the Defendant              ELIZABETH SNOW HUGHES, ESQ.
18    Debra L. Morris:               Gess, Mattingly & Atchison, PSC
                                     201 West Short Street
19                                   Lexington, KY 40507

20
      For the Defendant              DANIEL A. SIMONS, ESQ.
21    Stanley Bowling:               Thompson, Simons, Dunlop & Fore
                                     116 West Main Street
22                                   Suite 2A
                                     Richmond, KY 40476
23

24

25
```

```
 1   Court Reporter:           LISA REED WIESMAN, RDR-CRR
                               Official Court Reporter
 2                             35 W. Fifth Street
                               P.O. Box 1073
 3                             Covington, KY   41012
                               (859) 291-4410
 4

 5       Proceedings recorded by mechanical stenography,
     transcript produced with computer.
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                              * * *

2           THE COURT:  Mr. Hoskins, I'd like for you to tell me
3  again the specific date, calendar date that you contacted the
4  witness and a specific calendar date that he contacted you or
5  your office or one of your colleagues.
6           MR. HOSKINS:  Your Honor, I'd have to probably refer
7  to an actual calendar to do that.  What I can tell the Court
8  is this.  We had a name, I believe, a Jane Underwood who had
9  been suggested as a local person who had testified over many
10 years.  We finally contacted Ms. Underwood and learned that
11 she was gravely ill.
12          THE COURT:  She was gravely ill?
13          MR. HOSKINS:  Ill, yes, suffering from cancer.  I did
14 not speak with her personally.  As the Court's aware, I've
15 been here every day all day when the Court's been in session,
16 and that conversation was through my secretary.  I gave her
17 the name and phone number for Miss Underwood.
18          I think we -- in any event, she contacted Ms.
19 Underwood.  Miss Underwood referred us to Mr. Slyter.  We are
20 tied up here.  My office is open from 8:00 to 4:30 every day.
21 I'm generally here during those hours, don't have time to
22 communicate with the office.  It was a day or two after that
23 before I was able to confirm with my secretary to go ahead and
24 try to engage Mr. Slyter.
25          They would have had conversations Thursday.  We

1   were -- Friday that we were out of court, whatever day that
2   was, the 5th, I believe --
3           THE COURT:  It's the 5th.  I'm trying to determine if
4   the contact occurred on the 4th or thereabouts.  Thursday is
5   the 4th of March.
6           MR. HOSKINS:  I'd say that's when it took place,
7   Judge.
8           THE COURT:  Would you say that's when it took place,
9   or was it a week earlier?
10          MR. HOSKINS:  It was not a week earlier.
11          THE COURT:  All right.  I believe Wanda White
12  completed her testimony about the 25th of February, which
13  would have been one week prior to the 4th, if I'm not
14  mistaken.
15          MR. HOSKINS:  I think that's correct, Judge.  As I
16  said, Mr. Slyter was not the first person we tried to contact.
17          THE COURT:  So you would have contacted his office on
18  the 4th.  When were these exemplars given?
19          MR. HOSKINS:  The next day.
20          THE COURT:  On the 5th.  That's the day we were not
21  in session.
22          MR. HOSKINS:  That's correct.
23          THE COURT:  And then at some point, your office
24  received a telephone call about the results of the
25  examination.  What day did that occur?

1        MR. HOSKINS:  I believe he called the office on
2   Saturday.
3        THE COURT:  All right.  That was Saturday.  We were
4   in session again on Monday of this week.
5        MR. HOSKINS:  That's correct.
6        THE COURT:  And when did you advise Mr. Smith that
7   you intended to call an expert witness on this issue -- that
8   you intended to call Mr. Slyter on this issue?
9        MR. HOSKINS:  I believe that was yesterday, Judge.
10       THE COURT:  That was on Tuesday.  And you had other
11  witnesses that you had the Court recognize yesterday.
12       MR. HOSKINS:  Yes.
13       THE COURT:  It was at the end of the day, we had
14  these four witnesses come in.  You said these would be your
15  first four witnesses, or at least that's the impression you
16  gave me.  I had two of those witnesses stay here.  At no point
17  did you tell me you had an expert witness that you had to call
18  that was leaving town on Thursday of this week, correct?
19       MR. HOSKINS:  That's correct, Judge.  Not until --
20       THE COURT:  Today at 3:15 is the first time you've
21  given me notice that you intended to call a witness, and
22  you're telling me that the first notice that you gave the
23  United States that it would be required under Rule 16 was
24  yesterday.  What time did you notify Mr. Smith yesterday that
25  you intended to call this witness?

1       MR. HOSKINS: I gave him -- all I had at that point
2  was a CV, Judge, that I gave Mr. Smith yesterday morning.
3       THE COURT: So yesterday morning, Mr. Smith didn't
4  know the substance of the testimony that would be offered?
5       MR. HOSKINS: He had my oral representation, which
6  was consistent with the testimony.
7       THE COURT: At what time?
8       MR. HOSKINS: Yesterday morning.
9       THE COURT: Yesterday morning.
10      MR. HOSKINS: I can't tell you exactly what time,
11 Judge, but it was yesterday morning.
12      THE COURT: All right. Anything else with respect to
13 notice or lack of notice given to the United States on this
14 issue?
15      MR. HOSKINS: Your Honor, I would say that I got that
16 report at lunch time yesterday, which was the first time that
17 I actually spoke with Mr. Slyter, and I immediately gave the
18 report to Mr. Smith at lunch time yesterday.
19      THE COURT: And this was before the time that you
20 represented to the Court that you had these four other
21 witnesses that you would be calling in the case first?
22      MR. HOSKINS: It was --
23      THE COURT: That occurred late in the afternoon
24 yesterday.
25      MR. HOSKINS: Your Honor, that was in part based on

1   the United States' representation that they would be closing
2   earlier, but I did certainly not intend to communicate to the
3   Court the precise order in which I was going to call
4   witnesses. It became much more dire as this day drug on to
5   get Mr. Slyter on today, knowing that he was --
6              THE COURT: What would you have done had one of the
7   attorneys for the defendants continued to examine Special
8   Agent Briggs for another hour and a half? What would your
9   position have been, stop the defendants and put on your expert
10  witness because you hadn't notified the Court of that?
11             MR. HOSKINS: Fortunately, Judge, we didn't get to
12  that point. I didn't have to do anything like that.
13             THE COURT: So you hadn't thought through that at
14  that point?
15             MR. HOSKINS: Judge, no, I wouldn't try to stop the
16  examination of a witness. But in the normal course of what we
17  were doing, I think reasonably, I assumed based on
18  representations by the government that we could get this
19  witness on today, didn't think it was going to be urgent until
20  it got towards the end of the day and the day drug on.
21             THE COURT: Well, you're aware of the notice
22  requirements of Rule 16, and I assume that you would have
23  known that would have been an issue that you would have needed
24  to take up with the Court before presenting your first
25  witness.

1           MR. HOSKINS: Judge, I really didn't think that would
2    be an issue in this case, because I knew this expert had
3    testified for the government, for the United States attorney's
4    office. That had been explained to me before. I didn't think
5    it would be an issue.
6           I think that the problem that this brings to light is
7    what a criminal defendant has in a massive case when they're
8    given hundreds and hundreds of pages of discovery materials
9    within weeks before trial when there are other issues that
10   have to be addressed, such as the times we had to set aside
11   for hearings on the recordings, times we had to set aside for
12   the 404(b) background information and just a very difficult
13   amount of material to get through.
14          We didn't know until Wanda White testified that this
15   document supposedly came from Cletus Maricle or Judy Maricle.
16   The government didn't give us that information. They gave us
17   lots and lots of documents with very little explanation.
18          THE COURT: As I recall Miss White's testimony, it
19   was that the document came from Mr. Maricle. Not that he
20   prepared it, but that it came from Mr. Maricle. That's what I
21   recall the testimony being.
22          MR. HOSKINS: That's correct, Judge.
23          THE COURT: All right. Mr. Smith, I do want to hear
24   from you on this point. I'm concerned about rebuttal, how you
25   would need to rebut this testimony, and the Court certainly

1  recognizes that one of the tactics that Mr. Hoskins has used
2  in this case when he commits an error or when he does
3  something that's improper is to attempt to attack someone
4  else.  That's his M.O. in the case.
5      Putting that aside for a moment, how can the Court
6  remedy this particular situation?  I don't want to prejudice
7  the defendant by not allowing the testimony to be presented,
8  but I also wanted to give the United States sufficient time to
9  be able to respond to it.
10      MR. SMITH:  Well, Your Honor, I would suggest that,
11  obviously, I don't know this -- did he say he was going to be
12  gone three weeks?
13      THE COURT:  He's not released.  I'm not releasing
14  him.
15      MR. SMITH:  I think the issue that we have,
16  obviously, and I think the reason Rule 16, I think, applies to
17  both sides is that it can unduly prejudice one side or the
18  other.  Had the government attempted to do this, obviously, no
19  one would stand up to support my argument here that I'd given
20  sufficient notice for the defense to get a proper examiner,
21  bring them in to court to rebut this kind of testimony.
22      I am amazed to hear from this examiner that he spent
23  an hour and fifteen minutes with these two people.  I've had
24  experience with handwriting exemplars, and I find that very
25  unusual, in my experience.  Of course, I'm not speaking about

1  his qualifications, and Mr. Hoskins is going to try to make, I
2  assume, the United States attorney's office, because they've
3  used him before, we wouldn't have an issue.

4  That's not the issue. The issue is he has brought in
5  an expert witness without giving us notice and an opportunity
6  to get our own expert. And I'm not saying that that's not
7  something that -- here's the problem. The problem is that
8  without the opportunity to consult a government expert, I have
9  one arm tied behind me to try to cross-examine this
10 individual.

11 There are some things that came out here this
12 afternoon that disturb me. I'd like to talk to an expert of
13 my own choice. And I don't want to be tied by whoever Ken
14 Taylor picks or whoever the Western District of Kentucky picks
15 and say, well, because they picked him two years ago, he must
16 be an expert; and therefore, I've got to accept his testimony
17 here. I don't. I choose not to. I want to go get my own
18 expert, and I'd like to have an opportunity to do that.

19 He wants to call the witness, I ask that he be called
20 later. Cut his trip short. He's a paid expert. He's in the
21 business of testifying in front of a Court. I'm sure it's not
22 the first time he or a lawyer before a Court has had to cancel
23 a vacation. I've had to cancel many. I know that's part of
24 the business I'm in. I don't complain about it. I don't
25 think that's unfair. We'll have an opportunity to get our own

1    expert in here, and I have a fair shot at cross-examining.
2    They won't be prejudiced. They can still get their evidence
3    in, and we'll all have a fair trial, and I'll feel like
4    that -- you know, again, it's not an issue of whether or not
5    he can testify.
6         I'm not attacking his qualifications. I'm
7    attacking -- I'm objecting because of the lack of notice and
8    the handicap which it puts the government in that we've not
9    had an opportunity to -- I just saw his opinion yesterday,
10   late afternoon, in a written form for the first time. So I
11   would just, you know, if the Court is looking for a solution,
12   the only solution I can offer is to delay his testimony.
13        THE COURT: All right. Well, this is what I'm going
14   to do in this case. I am going to allow the witness to
15   testify tomorrow. I am going to give the United States time,
16   if requested -- if you need additional time to locate another
17   witness and if we have to take a recess to do that, I'll give
18   you the time to do that. I will allow your expert witness to
19   review any materials that this particular witness has looked
20   at as well as review his testimony, the testimony here and the
21   testimony that he may give tomorrow.
22        I'm not going to release him tomorrow after he
23   testifies. I will find out tomorrow how long his trip is
24   planned and may take -- that may require that he not attend
25   his trip. But we'll proceed with his testimony tomorrow.

1       Of course, this concerns me.  Many things that have
2  happened in this case concern me on behalf of the defendants'
3  attorneys.  Mr. Hoskins, I don't find that this was in good
4  faith in any way, your actions.  I do think that you're
5  attempting to hide the ball in this case, and I think that
6  your actions in attempting to challenge or attack someone else
7  or complain about the proceedings, when you're given discovery
8  and other things, are not well taken.
9       But in order to avoid any prejudice to the defendant,
10  I am going to allow this particular witness to testify
11  tomorrow.
12       Again, Mr. Smith, if you need additional time to
13  locate witnesses, if we have issues of handwriting exemplars
14  that need to be given, I need to know about that first thing
15  in the morning.  But he will not be released at this time, Mr.
16  Smith.  You will have access to his materials tonight, this
17  afternoon.  You'll be given access to the materials that he
18  reviewed.  You'll be given access to this Rolodex that he
19  referred to, as well as the exemplars that were given and any
20  other materials that he consulted in reaching any opinions.
21       We will be recessed until 8:45 tomorrow morning.  The
22  jury will be here at 9:00, and I'll take up any additional
23  issues at that time.
24                            * * *
25

14

1        <u>C E R T I F I C A T E</u>

2        I, LISA REED WIESMAN RDR-CRR, certify that the
foregoing is a correct transcript from the record of
3   proceedings in the above-entitled case.

4

5    \s\ Lisa Reed Wiesman                    March 10, 2010
     LISA REED WIESMAN, RDR-CRR              Date of Certification
6    Official Court Reporter