UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Criminal Action No. 6: 09-16-S-DCR |
| | ) | |
| RUSSELL CLETUS MARICLE, | ) | |
| DOUGLAS C. ADAMS, | ) | |
| CHARLES WAYNE JONES, | ) | |
| WILLIAM E. STIVERS, a.k.a. AL MAN, | ) | |
| FREDDY W. THOMPSON, | ) | **MEMORANDUM OPINION** |
| WILLIAM B. MORRIS, a.k.a. BART, | ) | **AND ORDER** |
| DEBRA L. MORRIS, a.k.a. DEBBIE, | ) | |
| and | ) | |
| STANLEY BOWLING, | ) | |
| | ) | |
| Defendants. | ) | |

*** *** ***

Defendants Russell Cletus Maricle [Record No. 1024], Douglas C. Adams [Record No. 1046], Charles Wayne Jones [Record No. 984], William E. ("Al Man") Stivers [Record No. 1031], Freddy W. Thompson [Record No. 973], William B. ("Bart") and Debra Morris [Record No. 1047], and Stanley Bowling [Record No. 1023] have moved the Court to extend the time for filing motions for judgment of acquittal or a new trial pursuant to Federal Rules of Criminal Procedure 29 and 33. For the reasons discussed below, the motions of Defendants Maricle, Adams, Jones, Stivers, and the Morrises will be granted. Defendant Bowling's motion will be granted in part and denied in part.

**I.**

The defendants were charged in a thirteen-count Superseding Indictment with various crimes related to corrupt elections in Clay County, Kentucky. [Record No. 272] Counts 1 and 2 alleged RICO and money-laundering conspiracies by all eight defendants. [*Id.*, p. 7-8] The indictment listed four predicate acts for the RICO conspiracy: honest-services mail fraud, extortion, obstruction of justice, and state-law bribery. [*Id.*, p. 7] In addition to the conspiracies charged in the first two counts, the United States alleged honest-services mail fraud by Defendants Jones and Thompson (Counts 3, 5, 6, and 7); attempted extortion by Jones and Stivers (Count 4); obstruction of justice by Maricle, Stivers, and Thompson (Counts 8 and 9); conspiracy to deprive voters of their civil rights by Maricle, Jones, Stivers, and Thompson (Count 10); and conspiracy to buy votes by Maricle, Jones, Stivers, Thompson, and the Morrises (Count 11). [*Id.*, p. 9-21] In the final two counts, the United States sought forfeiture of $3,472,847.38 and $1,513,512.36 upon conviction of the conspiracies charged in Counts 1 (RICO) and 2 (money laundering), respectively. [*Id.*, p. 21-24]

At the conclusion of an eight-week trial, all defendants were convicted on all counts. [Record No. 818] Because no party requested a special verdict, the jury did not specify which two predicate acts it found supported each defendant's RICO conspiracy conviction. [*See id.*] In forfeiture proceedings held immediately following trial, the jury found $3,200,000.00 subject to forfeiture under Count 12 and $1,513,512.36 subject to forfeiture under Count 13. [Record No. 833]

Less than a week after the verdict was returned, Defendant Stivers filed a motion for judgment of acquittal as to Count 4 (attempted extortion) and Counts 12 and 13 (forfeiture). [Record No. 867]  Stivers' motion was granted with respect to the attempted-extortion count. [Record No. 947]  As a result of that ruling, a similar motion is pending on Jones' attempted-extortion conviction.  [Record No. 1045]

Also following the verdict, the Supreme Court issued its decision in *Skilling v. United States*, 130 S. Ct. 2896 (2010).  In *Skilling*, the Court held that the honest-services statute, 18 U.S.C. § 1346, encompasses "only bribery and kickback schemes."  130 S. Ct. at 2907.  Based on the *Skilling* decision, the defendants filed the current motions seeking leave to move for a judgment of acquittal or a new trial outside the fourteen-day period contemplated by the Federal Rules of Criminal Procedure.  [Record Nos. 973, 984, 1023, 1024, 1031, 1046, 1047]  The defendants wish to argue that some or all of their convictions are no longer valid in light of the *Skilling* decision.[1]  In response, the United States concedes that the convictions of Defendants Jones and Thompson on the substantive honest-services counts (Counts 3, 5, 6, and 7) should be set aside.  [Record No. 1029]  However, the government asserts that the remaining convictions need not be disturbed.  [*Id.*]

## II.

Ordinarily, a motion for judgment of acquittal made after the jury has returned a guilty verdict must be filed within fourteen days of the verdict.  Fed. R. Crim. P. 29(c)(1).  Likewise,

---

[1]Defendant Bowling also seeks to challenge his convictions on a number of other grounds. [*See* Record Nos. 1023, 1053]  However, as discussed below, Bowling fails to demonstrate that he should be permitted to pursue any additional arguments at this late date.

under Rule 33 of the Federal Rules of Criminal Procedure, a party seeking a new trial for "any reason other than newly discovered evidence" must file a motion within fourteen days of a guilty verdict. Fed. R. Crim. P. 33(b)(2). However, Rule 45 provides that "[w]hen an act must or may be done within a specified period, the court on its own may extend the time, or for good cause may do so on a party's motion made: . . . (B) after the time expires if the party failed to act because of excusable neglect." Fed. R. Crim. P. 45(b)(1).

Citing *Carlisle v. United States*, 517 U.S. 416 (1996), the United States initially argued that the Court lacked jurisdiction to allow late motions for judgment of acquittal. [*See* Record Nos. 979, 1026] However, as several defendants have noted, reliance on *Carlisle* is misplaced. Although the *Carlisle* Court found that there was "simply no room in the text of Rules 29 and 45(b) for the granting of an untimely postverdict motion for judgment of acquittal," *id.* at 420, that conclusion was based on a prior version of Rule 45 that expressly excluded motions for judgment of acquittal from the excusable-neglect standard. *See id.* Rule 45 has since been amended and no longer contains an exception for Rule 29 motions. *See* Fed. R. Crim. P. 45(b)(2). Nor are motions for a new trial excluded. *See id.*; *United States v. Munoz*, 605 F.3d 359, 367 (6th Cir. 2010) (noting that the excusable-neglect standard applies to Rule 33 motions). Thus, the Court may for good cause grant a defendant's request to file a late Rule 29 or Rule 33 motion if the failure to timely file the motion was the result of excusable neglect. *See* Fed. R. Crim. P. 45(b).

A.    **Excusable Neglect**

The Supreme Court explored the meaning of the term "excusable neglect" in *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380 (1993).  Noting that "the determination is at bottom an equitable one," *id.* at 395, the Court listed several factors to be considered in deciding whether a party's failure to meet a filing deadline is excusable: "the danger of prejudice to the [nonmoving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."  *Id.*  The Sixth Circuit recently acknowledged the applicability of the *Pioneer* factors in the criminal context and, therefore, the Court will apply them here.  *See United States v. Munoz*, 605 F.3d 359, 369 (6th Cir. 2010).  Because the reason for the  delay is the most important consideration, *id.* at 372, the Court's analysis begins with that factor.  For present purposes, discussion will be limited to the defendants' arguments based on *Skilling*.

> **1.     Reason for Delay and Whether Delay Was Within Defendant's Control**

The defendants argue that because *Skilling* was not decided until three months after the verdict, their basis for seeking acquittal or a new trial on the honest-services issue did not exist during the time period set forth in the Rules.  The United States counters that the defendants were aware that the case was pending before the Supreme Court and, therefore, they could have filed timely motions for acquittal or a new trial based on "the *Skilling* argument."  [Record No. 979]  Without the benefit of the Supreme Court's opinion, however, any argument based on *Skilling* would have been purely speculative.  The defendants had no way of knowing the outcome in advance.  To the extent they had a "*Skilling* argument" prior to the Supreme Court's

decision, it was that the honest-services statute was unconstitutionally vague — an argument the *Skilling* Court rejected.  *See* 130 S. Ct. at 2933.

In short, the significant intervening change in the law is a valid reason for delay in filing the postverdict motions.  Moreover, the timing of the Supreme Court's decision was clearly beyond the defendants' control.  Thus, this factor weighs strongly in favor of the defendants.

### 2.    Prejudice to the United States

With respect to the prejudice factor, the Sixth Circuit has noted that "the proper inquiry is the potential prejudice from having to *retry* the case after a delay, rather than merely from having to respond to a belated motion."  *Munoz*, 605 F.3d at 371 n.6.  The United States does not argue that it would be prejudiced if a new trial were granted as to one or more defendants.  The Court recognizes that the sheer number of defendants and witnesses involved in this case could make a retrial burdensome for the government.  However, because this "would be equally true had the motion[s] been filed timely," *id.* at 371, it is not a proper consideration in the present analysis.  *See id.* ("Because these consequences cannot be attributed to Munoz's filing delay, they have no place in the *Pioneer* analysis.").  Furthermore, although it could be argued that "the passage of time compromises witnesses' memories," *id.*, a retrial less than a year later is unlikely to result in significant prejudice to the government, particularly since many witnesses testified regarding events that occurred several years ago.  Thus, this factor does not clearly weigh in the government's favor.

### 3.    Length of Delay and Its Potential Impact on Judicial Proceedings

Likewise, the length of the defendants' delay in seeking leave to file Rule 29 and Rule 33 motions does not clearly favor the United States. Although some of the defendants waited up to three months after the *Skilling* decision to seek an extension of time to move for acquittal or a new trial on that basis [*see* Record Nos. 1046, 1047], the first motion by Defendant Thompson was filed promptly after *Skilling* was decided.[2] Moreover, because the defendants' sentencings were postponed to allow the Court to address *Skilling*'s effect on the case, the delay has not resulted in a waste of judicial resources. *Cf. Munoz*, 605 F.3d at 372 n.7 (noting that there had been "no waste of judicial resources as a result of [the defendant's] delay" in seeking a new trial where the new-trial motion was filed before the defendant had been sentenced or had appealed his conviction).

### 4.    Good Faith

The government does not suggest that the defendants' *Skilling* arguments are made in bad faith, nor does the Court believe that to be the case. Additionally, there is good cause to extend the time for filing the proposed motions: the United States concedes that the Supreme Court's ruling invalidates the substantive honest-services convictions, and other convictions arguably will also be affected. In sum, the Court finds that an extension of time would be appropriate under Rule 45(b) to allow the defendants to file motions for acquittal or a new trial based on the *Skilling* decision.

### B.    Other Arguments by Defendant Bowling

---

[2]The *Skilling* decision was announced on June 24, 2010. *See* 130 S. Ct. 2896. Thompson filed his Motion for Extension of Time to File Motion for a Judgment of Acquittal and Motion for New Trial [Record No. 973], with the proposed motion attached, eight days later.

In addition to his argument based on *Skilling*, Defendant Bowling seeks leave to file a postverdict motion for judgment of acquittal or a new trial on several other grounds. First, Bowling wishes to argue that he was convicted using immunized grand jury testimony in violation of his Fifth Amendment right against self-incrimination. [Record No. 1053-2, p. 12-14] The Court has addressed this issue on at least two previous occasions and, in each instance, found that there was no merit to Bowling's contention. [*See* Record Nos. 500, 663] Bowling offers no reason why this argument should be considered yet again. Therefore, his motion for an extension of time will be denied insofar as he seeks acquittal or a new trial on this ground.

Bowling likewise fails to explain why he should now be allowed to argue that his money-laundering conviction is invalid pursuant to *United States v. Santos*, 553 U.S. 507 (2008), which was decided long before the trial of this matter. [*See* Record No. 1053-2, p. 17-19] Certainly any argument based on *Santos* could have been made within the fourteen-day period allowed under the Rules. The same can be said for Bowling's contention that his RICO and money-laundering convictions should be vacated on the grounds that Kentucky Revised Statute ("KRS") § 119.205 is not a valid predicate offense [*id.*, p. 7-10], and that the evidence presented at trial was insufficient to establish the necessary effect on interstate commerce [*id.*, p. 10-12].[3] Bowling indicates that the delay in making these arguments was due to his new attorney's need for time "to get up to speed." [Record No. 1023-1, p. 7] However, the mere fact that Bowling retained new counsel for post-trial proceedings does not entitle him to present all challenges to

---

[3]Bowling does briefly contend that the elimination of honest-services mail fraud as a predicate act under Count 1 affects the interstate-commerce element of that charge. However, this is not his primary argument. [*See* Record No. 1053-2, p. 11]

his convictions, new and recycled, afresh.  He does not assert that his trial counsel (who also

continues to represent him) was ineffective, *cf. Munoz*, 605 F.3d at 369-71, nor does he identify

any reason that trial counsel could not have timely filed the proposed motion.  Accordingly, his

failure to make these arguments within the time allowed under the Rules is not excusable.

Finally, Bowling contends that a recent Sixth Circuit decision, *United States v.

Faulkenberry*, Nos. 08-4233/4404, 2010 U.S. App. LEXIS 15486 (July 28, 2010), renders

erroneous the Court's instructions to the jury on Count 2 and requires that his money-laundering

conspiracy conviction be vacated.[4]  According to Bowling, in *Faulkenberry*, the Sixth Circuit

"for the first time defined the word 'design' in 18 U.S.C. § 1956(a)(1)(B)(i) to mean 'purpose

or plan; *i.e.*, the *intended aim* of the [transaction].'"[5]  [Record No. 1053-2, p. 15 (quoting

*Faulkenberry*, 2010 U.S. App. LEXIS 15486, at *27 (alteration by Bowling; emphasis by

---

[4]Jones also mentions *Faulkenberry* in a footnote to his proposed motion.  However, he does not seek a new trial on Count 2 based on that case. [*See* Record No. 1054-1, p. 7 n.6]

[5]Section 1956(a)(1) provides:

Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity--
    (A)(i)  with the intent to promote the carrying on of specified unlawful activity; or
. . . .
    (B)    knowing that the transaction is designed in whole or in part--
        (i)      to conceal or disguise the nature, the location, the sources, the ownership, or the control of the proceeds of specified unlawful activity . . .
. . . .
shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

*Faulkenberry* court))]  Bowling asserts that the evidence presented at trial was insufficient to convict him on a "concealment" theory of money laundering under (a)(1)(B)(i) because the United States did not show "that the primary purpose of the transaction was to conceal," as required by *Faulkenberry*. [Record No. 1053-2, p. 16]  He further contends that because the jury was instructed that it could convict on Count 2 if it found that a defendant had conspired to violate either § 1956(a)(1)(A) or (a)(1)(B), and because the Court's instructions did not include the definition of "design" set forth in *Faulkenberry*, the jury could have convicted him on a theory that was not supported by the evidence.  [*Id.*, p. 16]

This argument bears some superficial similarity to the one based on *Skilling* — *i.e.*, that an intervening change in controlling law creates the possibility that the jury's verdict was based on an invalid theory.  However, the *Faulkenberry* court merely interpreted an earlier Supreme Court case, *Cuellar v. United States*, 553 U.S. 550 (2008), which — like *Santos* — was decided well before trial of this matter.  In *Cuellar*, "the Court held, as used in § 1956(a)(2)(B)(i), [that] '"design" means purpose or plan, *i.e.*, the *intended aim* of the transportation'" of money. *Faulkenberry*, 2010 U.S. App. LEXIS 15486, at *27 (quoting *Cuellar*, 553 U.S. at 563 (emphasis added by *Faulkenberry* court)).  Although the *Cuellar* Court considered the term in the context of a different subsection of the money-laundering statute, the wording of the two subsections is virtually identical, and courts "presume that Congress does not employ the same word to convey different meanings within the same statute." *United States v. Ossa-Gallegos*, 491 F.3d 537, 541 (6th Cir. 2007); *see also IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005) (noting "the normal rule of statutory interpretation that identical words used in different parts of the

same statute are generally presumed to have the same meaning"). Thus, the basis for Bowling's argument existed prior to the *Faulkenberry* decision and at the time of the guilty verdict, yet he did not make the argument then and does not offer sufficient justification for allowing him to make it now.

In any event, the *Cuellar* Court's explanation of the term "design" was not groundbreaking. On the contrary, the Court noted that "when an act is 'designed to' do something, *the most natural reading* is that it has that something as its purpose." 553 U.S. at 563-64 (emphasis added). If this is the most natural reading of the term, there is no reason to assume that the jury interpreted it to mean something else. Notably, Bowling does not argue that the Court erred by providing the jury with the *wrong* definition, but rather by not defining the term. The omission of the "purpose or plan" definition from the instructions thus did not "violate" *Faulkenberry*, as Bowling asserts. [Record No. 1053-2, p. 3] Nor does it call into question the jury's verdict on Count 2.

## III.

In summary, the Court finds that an extension of time to file motions for judgment of acquittal or a new trial based on the *Skilling* decision is appropriate under Rule 45(b) of the Federal Rules of Criminal Procedure. Accordingly, it is hereby

**ORDERED** as follows:

(1)     Defendant Maricle's Motion for Permission to File Motion for New Trial After the Statutory Deadline [Record No. 1024] is **GRANTED**. Maricle's tendered Motion for New Trial and Memorandum in Support [Record No. 1024-1] shall be **FILED** in the record.

(2)    Defendant Adams' Motion for Leave to File Post-Verdict Pleadings [Record No. 1046] is **GRANTED**.  Adams' tendered Motion for New Trial Based on *Skilling v. United States* [Record No. 1049-1] and the accompanying Memorandum in Support [Record No. 1049-2] shall be **FILED** in the record.

(3)    Defendant Jones' motion for an extension of time to file a motion for judgment of acquittal and a motion for a new trial [Record No. 984] is **GRANTED**.  Jones' tendered Motion and Memorandum for Judgment of Acquittal on Counts 3, 5, 6, and 7 and Motion for New Trial on Counts 1, 2, and 12 [Record No. 1054-1] shall be **FILED** in the record.

(4)    Defendant Stivers' Motion for Leave to File Post-Verdict Motion [Record No. 1031] is **GRANTED**.  Stivers' tendered Motion for a New Trial [Record No. 1048-1] and the accompanying Memorandum of Law Supporting Motion for a New Trial [Record No. 1048-2] shall be **FILED** in the record.

(5)    Defendant Thompson's Motion for Extension of Time to File Motion for a Judgment of Acquittal and Motion for New Trial [Record No. 973] is **GRANTED**.  Thompson's Motion for Judgment of Acquittal on Counts 3, 5, 6, and 7 and Motion for New Trial on Count 1 [Record No. 973-2] and the accompanying Memorandum of Law in Support [Record No. 973-3] shall be **FILED** in the record.

(6)    The Motion by Defendants William B. Morris and Debra L. Morris for Leave to File Motion for New Trial [Record No. 1047] is **GRANTED**.  The Morrises' tendered Motion for New Trial and Supporting Memorandum [Record No. 1047-2] shall be **FILED** in the record.

(7)    Defendant Bowling's Motion for Leave to File Post-Verdict Pleadings [Record No. 1023] is **GRANTED** to the extent Bowling seeks acquittal or a new trial on the basis of the *Skilling* decision.  Insofar as Bowling requests leave to file a postverdict motion for a new trial or judgment of acquittal on any other ground, his motion is **DENIED**, and the Court will not entertain such arguments.  Bowling's tendered Motion for Judgment of Acquittal, or in the Alternative, for a New Trial [Record No. 1053-1] and the accompanying Memorandum in Support [Record No. 1053-2] shall be **FILED** in the record.  However, arguments II-V of the Memorandum in Support shall be **STRICKEN**.

(8)    The United States shall have fourteen (14) days to respond to the motions pursuant to Local Criminal Rule 12.1(d).  Thereafter, the defendants may reply as permitted by the Local Rules.

This 4th day of October, 2010.



Signed By:

*Danny C. Reeves*  DCR

United States District Judge