```
 1                 IN THE UNITED STATES DISTRICT COURT
 2               FOR THE EASTERN DISTRICT OF KENTUCKY
                     SOUTHERN DIVISION AT LONDON
 3

 4   UNITED STATES OF AMERICA,

 5            Plaintiff,              6:09-CR-16
                                     Lexington, Kentucky
 6       vs.                         August 22, 2013
                                     1:01 p.m.
 7   RUSSELL CLETUS MARICLE,
     DOUGLAS C. ADAMS,
 8   CHARLES WAYNE JONES,
     WILLIAM E. STIVERS,             STATUS CONFERENCE
 9   FREDDY W. THOMPSON
     WILLIAM B. MORRIS,
10   DEBRA L. MORRIS, and
     STANLEY BOWLING,
11

12            Defendants.

13

14                    TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE KAREN K. CALDWELL,
15               UNITED STATES CHIEF DISTRICT JUDGE

16   TRANSCRIPT ORDERED BY 28 U.S.C. Section 753(b)

17

     APPEARANCES:
18

19   FOR THE GOVERNMENT:       ANDREW T. BOONE, ESQ.
                               Assistant United States Attorney
20                             Eastern District of Kentucky
                               260 West Vine Street, Suite 300
21                             Lexington, KY  40507-1612

22   FOR THE DEFENDANT         DAVID S. HOSKINS, ESQ.
     MARICLE:                  David S. Hoskins, Attorney at Law
23                             107 East First Street
                               P.O. Box 1185
24                             Corbin, KY  40702

25
```

2

```
 1   APPEARANCES:   (Continued)

 2   FOR THE DEFENDANT          R. KENT WESTBERRY, ESQ.
     ADAMS:                     Landrum & Shouse LLP - Louisville
 3                              220 West Main Street, Suite 1900
                                Louisville, KY  40202
 4
                                BENNETT E. BAYER, ESQ.
 5                              Landrum & Shouse LLP - Lexington
                                106 West Vine Street, Suite 800
 6                              P.O. Box 951
                                Lexington, KY  40588-0951
 7
     FOR THE DEFENDANT          T. SCOTT WHITE, ESQ.
 8   JONES:                     Morgan & Pottinger, PSC - Lexington
                                133 West Short Street
 9                              Lexington, KY  40507

10   FOR THE DEFENDANT          ROBERT L. ABELL, ESQ.
     STIVERS:                   120 North Upper Street
11                              P.O. Box 983
                                Lexington, KY  40588-0983
12
     FOR THE DEFENDANT          RUSSELL J. BALDANI, ESQ.
13   THOMPSON:                  Baldani, Rowland & Richardson
                                300 West Short Street
14                              Lexington, KY  40507

15   FOR THE DEFENDANTS         JERRY GILBERT, ESQ.
     W. MORRIS and              Coy, Gilbert & Gilbert
16   D. MORRIS:                 212 North Second Street
                                P.O. Box 1178
17                              Richmond, KY  40475-1178

18   FOR THE DEFENDANT          DANIEL A. SIMONS, ESQ.
     BOWLING:                   Simons, Dunlap & Fore, PSC
19                              116 West Main Street
                                Chase Bank Building, Suite 2A
20                              P.O. Box 726
                                Richmond, KY  40476-0726
21
     COURT REPORTER:            Rhonda S. Sansom, RPR, CRR
22                              Federal Official Court Reporter
                                United States District Courthouse
23                              101 Barr Street, Room 413
                                Lexington, KY  40507
24                              (859) 619-3624

25   Proceedings recorded by mechanical stenography, transcript
     produced with computer.
```

USA v. Maricle et al., 6:09-CR-16

**Status Conference (8/22/2013)**

3

1        (At 1:01 p.m. on August, 2013, with counsel for the parties

2    and the defendants present, the following proceedings were had.)

3        THE HONORABLE KAREN K. CALDWELL:  Would the Clerk please

4    call the matter to come before the Court.

5        THE CLERK:  Yes, your Honor.  London Criminal Matter

6    09-16, United States of America versus Russell Cletus Maricle,

7    Douglas C. Adams, Charles Wayne Jones, William E. Stivers,

8    Freddy W. Thompson, William B. Morris, Debra L. Morris, and

9    Stanley Bowling, called for a status conference.

10       THE COURT:  Will the United States make its appearance

11   for the record.

12       MR. BOONE:  Good afternoon, your Honor.  Andy Boone for

13   the United States.

14       THE COURT:  Mr. Boone.

15       Counsel for Russell Cletus Maricle.

16       MR. HOSKINS:  Good afternoon, your Honor.  David Hoskins

17   for Mr. Maricle.

18       THE COURT:  Mr. Hoskins.

19       Counsel for Mr. Adams.

20       MR. WESTBERRY:  Good afternoon, Judge Caldwell.  Kent

21   Westberry for Doug Adams.  Thank you.

22       THE COURT:

23       Counsel for Charles Jones.

24       MR. WHITE:  Good morning -- or good afternoon, your

25   Honor.  Scott White on behalf of Mr. Jones.

USA v. Maricle, et al., 6:09-CR-16
Status Conference (8/22/2013)

4

1          THE COURT:  Mr. White.

2          Counsel for William Stivers.

3          MR. ABELL:  May it please the Court, Robert Abell on

4     behalf of William Stivers.

5          THE COURT:  Mr. Abell.

6          Counsel for Freddy Thompson.

7          MR. BALDANI:  Good afternoon, Judge.  Russ Baldani.  I'm

8     here for Freddy Thompson.  He's in the courtroom.

9          THE COURT:  Mr. Baldani.

10         Counsel for William Morris.

11         MR. GILBERT:  If your Honor please, Jerry Gilbert on

12    behalf of Gilbert Morris.

13         THE COURT:  Mr. Gilbert.

14         And counsel for Debra Morris.

15         MR. GILBERT:  If the Court please, I'm appearing, with

16    permission of Elizabeth Hughes, on behalf of Mrs. Morris.

17         THE COURT:  And Mrs. Morris has agreed?

18         MR. GILBERT:  Yes, your Honor.  She's here in court.

19         THE COURT:  Ms. Morris?

20         MS. MORRIS:  Yes?

21         THE COURT:  Is it agreeable to you for Mr. Gilbert to

22    stand in for Ms. Hughes this morning?

23         MS. MORRIS:  Yes, ma'am.

24         THE COURT:  We're going to be dealing with scheduling

25    matters and nothing substantive.

USA v. Maricle et al., 6:09-CR-16
Status Conference (8/22/2013)

5

1          And finally, counsel for Stanley Bowling.

2          MR. SIMONS:  Good afternoon.  Your Honor, Daniel Simons

3    for Stanley Bowling.

4          THE COURT:  Mr. Simons.

5          The Court has called this matter for a status conference

6    so we can plan going forward in this case.

7          First of all, I will note that Judge Wier has been

8    working on appointment of counsel for those that require

9    appointment of counsel.  I believe all the relationships have

10   been clarified now as to whether the attorneys will proceed as

11   privately retained or appointed counsel.

12         Is there anyone here whose relationship has not been

13   resolved at this time?  Very well.

14         I would like to talk for a moment about a clarification

15   of some of the deadlines that are set forth in two separate

16   orders, one issued by me and one issued by Judge Wier.

17         With respect to the substantive motions in this case --

18   and some have already been filed; but the motion to sever,

19   dismiss, to suppress evidence, those motions should be filed

20   according to Judge Wier's order I believe by August 30th.  I

21   would like responses to those motions filed on or before

22   September 13th.  Judge Wier's order was silent.

23         I will shorten the reply time out of necessity.  The

24   reply time will be September 20th.  Please, in filing your

25   replies, don't reiterate what was stated in the original motion.

6

 1   Make it a true reply.  I won't impose any page limits.

 2          Now, as to what I would call pretrial evidentiary

 3   matters like witnesses, objections to the witness lists,

 4   objections to any particular exhibits -- any motion in limine,

 5   essentially -- I think my pretrial order addresses that and also

 6   sets forth response and reply times.

 7          I'd like to bring up a couple of points that I think

 8   we're going to have to address and really seek your input and

 9   suggestions for proceeding.

10          The first will deal with the testimony of one of the

11   United States' witnesses at the last trial.  That was Agent

12   Briggs, who is now deceased.  I don't know if that's going to be

13   a problem or what type of contention there will be among the

14   parties, but I would like to at least get it scheduled to be

15   resolved.

16          Mr. Boone, can you give us some indication of how the

17   United States intends to proceed?

18          MR. BOONE:  Yes, your Honor.  We do intend to proffer

19   for submission at least part of Agent Briggs' testimony in the

20   prior trial.  I think that would be admissible as prior

21   testimony, or at least we seek the admission as prior testimony

22   of an unavailable witness.

23          I understand the various defendants have indicated that

24   they would like to litigate the issue, whether his -- any

25   opinions that he offered during the previous trial would be

USA v. Maricle et al., 6:09-CR-16
Status Conference (8/22/2013)

7

1   admissible as expert testimony.  I think that's an issue that

2   could be litigated as we get a little bit closer to trial.

3           THE COURT:  All right.  Well, that's something that I

4   would like to resolve as soon as possible, so that I would like

5   any objections to that testimony to be filed on or before

6   September 30th, with the briefing schedule that I previously set

7   forth in my order.

8           Will you be advising defense counsel of which portions

9   you intend to use, Mr. Boone?

10          MR. BOONE:  We could do that.

11          THE COURT:  All right.  Well, I would like for you to do

12   that.  Can you do that by the middle of September?

13          MR. BOONE:  That shouldn't be a problem, your Honor.

14          THE COURT:  All right.  So by September 15th, the United

15   States should disclose to defense counsel any portions of Agent

16   Tim Briggs' testimony that it intends to offer at trial.  I

17   think we can consider that as one of the pretrial evidentiary

18   motions that needs to be filed on or before September 30th.

19          Are there any other issues similar to Agent Briggs'

20   testimony that the parties might want to litigate that you could

21   anticipate for us now, Mr. Boone?

22          MR. BOONE:  Not that I anticipate, your Honor.  There is

23   the issue of the recordings of the transcripts, but I think we

24   might be addressing that separately.

25          THE COURT:  All right.  Mr. Westberry.

USA v. Maricle et al., 6:09-CR-16
**Status Conference (8/22/2013)**

8

1          MR. WESTBERRY:  Thank you, Mr. Boone.  Thank you, your

2     Honor.

3          On a related issue, in our status report for Douglas

4     Adams we have identified one, and I've also learned of a second

5     witness that has passed away, as well.  A William Q. Bishop

6     was a witness in the first trial.  Now I have heard that Roy

7     Allen --

8          THE COURT:  I'm sorry, I couldn't hear you.  Would you

9     mind?  We're having difficulty here in the courtroom hearing.

10    Everybody speak up as best you can and grab one of the

11    microphones.

12         MR. WESTBERRY:  Thank you, Judge.  William Q. Bishop

13    testified on behalf of Mr. Adams at the last trial.  He has

14    since passed.  I just learned within the last day -- two days

15    that Roy Allen, who also was a witness for Mr. Adams, has

16    passed, as well.

17         We would anticipate, as unavailable witnesses, reading

18    those transcripts into the record.  No final decision has been

19    made, but I wanted to bring that to the Court's attention.

20         THE COURT:  Would you be able to -- I don't know that we

21    have the same problem that we would have with Agent Briggs'

22    testimony.  I think you would be offering that in total or not

23    at all.

24         MR. WESTBERRY:  Precisely.

25         THE COURT:  Is that correct?

USA v. Maricco et al., 6:09-CR-16
Status Conference (8/22/2013)

9

 1    MR. WESTBERRY:  That's what we anticipated.

 2    THE COURT:  Do you anticipate any of the kinds of

 3  objections to that testimony, Mr. Boone, that the defense might

 4  have to Agent Briggs' testimony?

 5    MR. BOONE:  Your Honor, I'm not in a position to say

 6  right now.  I still have to familiarize myself with that

 7  testimony.

 8    THE COURT:  All right.  Before September 30th, if you

 9  can make that decision if you intend to offer it so that we

10  could brief that, if necessary.  But just keep it on the radar

11  screen.  I appreciate it, Mr. Westberry.

12    MR. WESTBERRY:  Yes.  Thank you, Judge.

13    THE COURT:  Anybody else for the defense?  Do you have

14  any other issues like that regarding the availability of a

15  witness?  Yes, Mr. Abell?

16    MR. ABELL:  Judge, Agent Sagrecy, I believe he is the

17  Treasury agent, I don't know if the government would intend to

18  present his testimony again, since I view his testimony as aimed

19  at the count of money laundering, which is gone from this case.

20    But the issue regarding the expert testimony, et cetera,

21  et cetera, I gather from the Sixth Circuit opinion is that they

22  viewed some of his testimony as being improper expert testimony.

23    THE COURT:  All right.  Mr. Boone?

24    MR. BOONE:  We may offer, your Honor, Agent Sagrecy as a

25  witness again.  My understanding is that he will be available to

USA v. Maricle et al., 6:09-CR-16
Status Conference (8/22/2013)

 1   testify, so I don't think that we will run in the same types of

 2   issues as offering previously reported testimony.

 3         THE COURT:  All right.  So he will be available.

 4         Mr. Abell, if you want to object to the content of his

 5   testimony in terms of his ability to testify as an expert, is

 6   that what you are referring to?

 7         MR. ABELL:  Sounds like it is, your Honor.

 8         THE COURT:  Okay.  Then I would want that motion filed

 9   on or before September 30th, as well.

10         MR. SIMONS:  Judge, if I could bring up a point?

11         THE COURT:  Yes, Mr. Simons?

12         MR. SIMONS:  We had prior to the last trial a Kastigar

13   hearing, an immunity issue involving Stanley Bowling.

14         THE COURT:  Yes.

15         MR. SIMONS:  The government's testimony on that issue

16   was provided solely by Agent Briggs and subsequently by

17   Mr. Sagrecy.  We would anticipate raising that again.

18         THE COURT:  I understand.

19         MR. SIMONS:  I'm assuming that the government would

20   intend on playing Mr. Briggs' prior testimony, but I'm wondering

21   how to do what.

22         THE COURT:  Mr. Boone?

23         MR. BOONE:  I'm sorry, your Honor, I didn't quite hear

24   everything that Mr. Simons said.

25         MR. SIMONS:  My intention would be to refile the motion

USA v. Maricle, et al., 6:09-CR-16

**Status Conference (8/22/2013)**

 1    to dismiss on behalf of Mr. Bowling.

 2          THE COURT:  All right.

 3          MR. SIMONS:  And Agent Briggs, who is the only witness

 4    who the government offered initially to that, is no longer

 5    around.

 6          MR. BOONE:  Right.

 7          MR. SIMONS:  And I was just wanting some clarification

 8    on the government's position.  Are they going to call different

 9    witnesses?  I don't know that I need to know that, but I would

10    be interested in it.

11          MR. BOONE:  That's something -- the government may be

12    relying partly on Agent Briggs' testimony there.  Those are

13    matters that other witnesses may be able to handle, as well, at

14    a Kastigar hearing.  So I don't know if that helps, but we may

15    use Agent Briggs' testimony.

16          THE COURT:  Well, your request for the Kastigar hearing

17    has to be filed by the end of this month.

18          MR. SIMONS:  That's correct.

19          THE COURT:  And in scheduling that hearing, we will

20    address some of these issues.

21          MR. SIMONS:  Thank you.

22          THE COURT:  Mr. Simons, may I have your client's

23    permission -- is your client here?

24          MR. SIMONS:  Yes, ma'am; he is.

25          THE COURT:  Mr. Bowling?

USA v. Maricle et al., 6:09-CR-16

**Status Conference (8/22/2013)**

12

1          MR. BOWLING:  Yes, ma'am.

2          THE COURT:  I may need to speak to some of the lawyers

3   in order to schedule a hearing regarding the motion Mr. Simons

4   is about to file.  You have, with all the other defendants, a

5   right to be here at all meetings.

6          However, may I have your permission to contact your

7   lawyer and schedule conferences with them for the purpose of

8   scheduling hearings without having to get you on the phone?

9          THE DEFENDANT:  Yes, ma'am.

10         THE COURT:  Very well.  Will you explain that again to

11  your client again, Mr. Simons?

12         MR. SIMONS:  I will, your Honor.  Thank you.

13         THE COURT:  And we will not address any substantive

14  matters without your client being present.

15         Do you understand, Mr. Bowling?

16         MR. BOWLING:  Yes, ma'am.

17         THE COURT:  So we will schedule that separately.  Is

18  that okay with you, Mr. Simons?

19         MR. SIMONS:  That's fine.  Thank you, your Honor.

20         THE COURT:  Very well.  That brings us to another issue,

21  and that's how we're going to proceed regarding use of

22  recordings and transcripts of recordings that were presented

23  into evidence in the earlier trial.

24         I haven't listened to any of these tapes, so I don't

25  know if there's really a disagreement regarding potentially

USA v. Maricle et al., 6:09-CR-16

**Status Conference (8/22/2013)**

13

1  audible content or if the disagreement is about whether it is

2  audible or inaudible.

3       So I'll hear from all of you about that.  I'm sure

4  there's the full spectrum of opinions regarding that subject,

5  but I'm interested in your suggestions in developing a method

6  for going forward regarding this matter.

7       Something that I would throw out for your consideration

8  is that I would ask the parties to agree on which portions of

9  the transcripts are accurate and then to identify any portions

10  of those transcripts that the parties cannot agree upon so that

11  I can make a determination as to whether they are inaudible.

12       I don't know if that's reasonable, and I don't know what

13  timeline is reasonable for accomplishing that.  So I'm going to

14  start with you, Mr. Boone, and then I will hear from everyone

15  else.

16       MR. BOONE:  Thank you, your Honor.  First of all, I

17  think that the government can -- or will substantially cut down

18  the number of transcripts that were put at issue in the last

19  trial.  We're still evaluating it right now.  I think it's going

20  to be in the neighborhood of five transcripts.  I think the

21  longest of those transcripts is somewhere around an hour, 45

22  minutes to an hour.  So we're talking about probably no more

23  than five hours of recorded time.

24       It may end up being a little bit more, the number of

25  tapes, the amount of recorded time, maybe a little bit less.

1    I'm new to this, too, and I'm still assessing those matters, but

2    I think it will be substantially different from the last trial.

3         What I'd propose is, given the lower volume, perhaps we

4    can designate transcripts around the same timeframe as the prior

5    testimony, the middle of September, and any objections to those

6    transcripts can be litigated along the track with motions in

7    limine and other pretrial items.

8         THE COURT:  Thank you, Mr. Boone.  That sounds fairly

9    reasonable.

10        Do you concur, Mr. Hoskins?

11        MR. HOSKINS:  Your Honor, I would say as far as the

12   recordings go that we started with well over 20 hours, and

13   without knowing which fraction of that part the government

14   thinks they want to use I can contemplate that we have a whole

15   lot more we might want to use.

16        We spent many, many, many hours working on those

17   transcripts and dealing with those pretrial last time, and I'm

18   really concerned that we would have time.  If we don't file it

19   until the middle of September, then we would -- what they want

20   to use, we would have a hard time then having time to go back to

21   them and saying we want to use this part.

22        THE COURT:  But you do have the history of this case, so

23   you're already familiar with what they say.

24        MR. HOSKINS:  I vaguely remember it, Judge.

25        THE COURT:  Well, let's try to do what Mr. Boone

USA v. Maricle et al., 6:09-CR-16
Status Conference (8/22/2013)

15

1    suggests, and that is that he's going to get you about six hours

2    of tapes or more.

3         And then why don't we do the same thing with the

4    defense.  Could you be prepared to present -- and I recognize we

5    can't hold the defense to it.  You may or may not want to use

6    some of the tapes in your defense.  But be prepared to present

7    those transcripts that you reasonably believe you'd be using at

8    trial.  That way, you could have a cross-exchange.

9         MR. HOSKINS:  I certainly could do that.  I question

10   whether I'm capable of getting that done by the middle of

11   September.  I have a trial in London next week with Judge Van

12   Tatenhove.  We have a deadline for substantive motions, and I

13   anticipate filing a very rather complicated, at least for me,

14   motion.

15        THE COURT:  Have you asked for any paralegal help in

16   this case?  You're appointed CJA, aren't you?

17        MR. HOSKINS:  I understand that appointment is imminent.

18        THE COURT:  If you would like to request some paralegal

19   help, for any CJA-appointed counsel, we can make that available

20   to you to assist you in meeting the deadlines.

21        Let's shoot for September 15th.  Let's give it your best

22   try.  If you need additional time, then you will be in a

23   position to a better predict how much time you would need.

24        MR. HOSKINS:  Yes, your Honor.

25        THE COURT:  Thank you.  Mr. Westberry?

USA v. Maricle et al., 6:09-CR-16

**Status Conference (8/22/2013)**

16

1    MR. WESTBERRY:  Your Honor, Mr. Adams was not on the

2    tapes or the recordings that we spent quite a bit of time

3    listening to.  So mercifully, I don't have any.

4    THE COURT:  You don't have a dog in that fight.

5    MR. WESTBERRY:  The only issue I would inform the Court

6    regarding Doug Adams and the tapes, there is another witness,

7    another Doug that was talked about.  It was Doug White, as I

8    recall.

9    Can we just have an agreement with the United States

10    through the Court that we let the jury know it's not Doug Adams

11    that's referred to on that tape, it was Doug or Daugh White?

12    Other than that, I don't have a dog in that fight.

13    THE COURT:  Very well.  Thank you.

14    Mr. White?

15    MR. WHITE:  I would echo what my colleague, Mr. Hoskins,

16    said, essentially.  If I could add a slight twist, recognizing

17    that everybody wants me to not be as lengthy as I usually am.

18    I appreciate the government's offer of reducing it

19    substantially, and giving it to us by the 15th is quite welcome,

20    but I suspect those five to six hours could lead to quite a bit

21    of litigation.

22    I'm also concerned that until I see what their five to

23    six hours are, I don't really know exactly what I may want to

24    proffer at all.  I have got an idea as to maybe one transcript,

25    but there are many, many -- I mean, hundreds of hours that we

USA v. Maricle, et al., 6:09-CR-16

Status Conference (8/22/2013)

1   have been dealing with.

2           The other thing that I would just add, to me I have a

3   hard time separating the two, so I don't mean to jump ahead of

4   you.  But given what my calendar was like this summer, and given

5   what I've already had scheduled between now and the end of next

6   week, I'm having a hard time completing my substantive motions

7   by the Court's deadline of the 30th.

8           And I'm just -- and a paralegal is not going to really

9   help me much because, quite frankly, all the paralegal work that

10  I used -- and I had to pay for that myself.  We were able to use

11  some of my client's resources to do that in the first trial.  I

12  was denied the use of that by the Court previously.

13          THE COURT:  Well, I'm telling you it won't be --

14          MR. WHITE:  I understand.  But the work has potentially

15  already been done, the paralegal work.  What I need is legal

16  help.  If I were being paid in a normal case, I would probably

17  have two associates helping me with some of these chores.  I

18  don't have that, and I understand that under the CJA guidelines

19  the defendant is not entitled to more than one, one attorney.

20          So given that, just the reality of time demands, I was

21  hoping that the Court would consider pushing back the

22  substantive deadline or the substantive motions deadline, and

23  that perhaps will give me the time I need to deal with

24  everything.

25          THE COURT:  Very well.  I will consider it.

USA v. Maricle, et al., 6:09-CR-16

**Status Conference (8/22/2013)**

1        Mr. Abell?

2        MR. ABELL:  Judge, the recordings are of vital

3    importance to Mr. Stivers.  I think it's correct that in terms

4    of volume he's recorded more than anybody else.  I spent a

5    staggering and maddening amount of time listening to those and

6    trying to come up with an accurate transcript.

7        It is, respectfully, your Honor, practically impossible

8    to reach agreement on what is said on the majority of the

9    transcripts.  There are portions where you can clearly hear what

10   somebody says.  There are other portions in which you can form a

11   reasonable theory about what somebody says.  There are other

12   portions in which you can say, "Stivers is talking, it sounds

13   like he's referring to Billy the dog or whatever, but I can't

14   hear what he's saying."  And there are other portions where you

15   can hear somebody talking and you can't even figure out who it

16   is.

17       I think it's practically impossible to be able to reach

18   an agreement.  And the amount of time to do that, it is an

19   extremely tedious process.

20       THE COURT:  Would you propose --

21       MR. ABELL:  I would propose we not use transcripts.

22       THE COURT:  All right.

23       MR. ABELL:  I think it's, in all honesty, not

24   practically possible to reach an agreement as to the content of

25   a significant -- of a majority of the transcript.  I think it's

1   a rabbit hole that will cause both parties to spend a lot of

2   time unnecessarily.  I honestly believe you will conclude at the

3   end of it, "I don't think we've really gotten anywhere with

4   this.  We are not going to have transcripts."

5          THE COURT:  All right.

6          MR. ABELL:  But I will do what I can.

7          THE COURT:  All right.  I appreciate that, Mr. Abell.

8   That's an excellent thought.

9          Mr. Baldani?

10          MR. BALDANI:  Judge, I will echo what Mr. Abell said.  I

11   guess I was a little confused.  The government is saying about

12   five hours of recordings is what they're intending.  And then,

13   of course, that leaves the issue of can we agree on transcripts

14   as to these five hours.

15          We weren't able to come up with an agreement, and it

16   turned into obviously a major issue on appeal.  And I thought

17   that your -- I think your order said you were inclined not to

18   use transcripts unless we can agree, and I think it's pretty

19   unlikely that we're going to agree.

20          So that would be my two cents.

21          THE COURT:  All right.  Mr. Gilbert?

22          MR. GILBERT:  I would concur, your Honor.  Going through

23   the transcripts last time was just a mad -- maddening process,

24   and I would doubt there would be a prospect of agreeing to what

25   the words are that are being said.

Case: 6:09-cr-00016-KKC   Doc #: 1446   Filed: 09/23/13   Page: 20 of 41 - Page
ID#: 10681
USA v. Maricle et al., 6:09-CR-16
Status Conference (8/22/2013)
20

1        THE COURT:  Thank you, Mr. Gilbert.

2        Mr. Simons.

3        MR. SIMONS:  I agree with my colleagues on this side.

4   I would say that Mr. Bowling does not appear on any of the tape

5   recordings.  There would be probably five minutes' worth that I

6   would like to have played, and I can identify that for the

7   government.

8        THE COURT:  Mr. Boone, how do you respond?

9        MR. BOONE:  Your Honor, I understand that Mr. Abell and

10  everyone else that has spoken on this issue have more experience

11  with these recordings than I do, certainly, so I appreciate that

12  perspective.

13       I do think it's worth making a run and finding an agreed

14  transcript on the limited portions that we will designate and,

15  at a minimum, narrowing the portions of the disagreement so that

16  your Honor can rule on any objections to those written

17  transcripts.

18       As an aside, I think the understanding that I've come to

19  this hearing with is that we're really only talking about the

20  written transcripts.  And if the parties cannot reach agreement,

21  your Honor is not inclined to admit the transcripts on -- on

22  your own rulings, my understanding is that the government can

23  play the recordings at trial without the transcripts.  There are

24  witnesses that were parties to the transcripts, and they can

25  testify about them and interpret them.

USA v. Maricle et al., 6:09-CR-16
Status Conference (8/22/2013)

1    So the one thing that I would want to be clear about on

2    the government's position here is even though we're going to be

3    designating parts of transcripts in the middle of September, I

4    don't want to in any way suggest that we're limiting ourselves

5    to what we designated in terms of what we will play at trial.

6    And I do stand by my previous statement that we will

7    substantially limit what was played at the last trial, but I

8    wanted that clear for the record, too.

9    THE COURT:  Well, let's do this.  We will have a run at

10   it and see if this is going to work.  I'm going to direct the

11   United States to identify as of September 15th those transcripts

12   and tapes that it intends to admit at trial -- not that you

13   can't attempt to use others, but that you know that you are

14   going to designate.  Get those to the defense counsel.  They can

15   look at them.  If we're talking about six hours, that's not an

16   onerous burden.

17   Now, as far as the defense, the defense really may or

18   may not offer portions of transcripts, depending on how the

19   government's case comes in.  In fact, the defense wouldn't have

20   to designate any tapes that it wants to play until the trial

21   begins many weeks from now, so we could be working on that as an

22   ongoing process.

23   I have to tell you that I'm inclined to not allow the

24   use of transcripts unless substantial agreement can be reached.

25   So, as a courtesy, I'm going to direct the United States to

 1    supply these transcripts, to make a reasonable effort to see if

 2    the parties can agree on them.

 3         Bring your disagreements to me.  I will see if the

 4    disagreements are too numerous so that I will exclude the

 5    transcripts.  Or if there's substantial agreement, I might be

 6    able to allow their use by designating those portions upon which

 7    agreement cannot be reached as an inaudible.

 8         So let's view this as a work in progress.  We will make

 9    this attempt.  The defense need not designate anything, because,

10    as you say, Mr. Hoskins, you point out it's really hard for you

11    at this point to sit down and know everything that you are going

12    to want to use eight, ten, 12 weeks from now.

13         But I think, then, that we can check, and if the defense

14    wants to use transcripts we can go through the same exercise at

15    a later time.  That will remove a lot of burden and a lot of

16    work from defense counsel at this time.

17         So turn them over, if you will, and we will see where we

18    go and we will kind of keep talking about this.

19         Now, let's talk for a moment about the challenges that

20    Mr. White brings out, and they are obvious to the Court, and I'm

21    aware of them.  There is nothing more important on any of our

22    calendars than a remand for a new trial from the United States

23    Court of Appeals from the Sixth Circuit.  As a matter of fact,

24    this Court, before the mandate was received, began scheduling

25    these matters.

USA v. Manuel, et al., 6:09-CR-16
Status Conference (8/22/2013)

23

1          This case isn't going to get any easier in four weeks,

2     it's not going to get easier in six weeks or six months.  Every

3     day, we lose familiarity with the facts.  We run the risk of

4     losing even more witnesses for both the defense and the

5     prosecution.

6          While I'm will willing to discuss the schedule within a

7     matter of days, this is a firm trial date.  I am willing to

8     assist those of you with conflicts in trying to get those

9     conflicts resolved, but to set aside this type of time on the

10    Court's calendar within the time allotted by the Speedy Trial

11    Act and to accommodate all of you is, indeed, a challenge.

12         So I'm going to work with you as much as I can, and I'm

13    willing to talk a little bit about this August 30th deadline,

14    because I recognize these are the substantive issues.

15         But I've got to have time to rule on these motions that

16    I think are very important in which you are going to be raising

17    very serious issues.  I want the time that I need to give you

18    timely rulings.  If counts go away or if parties are severed, we

19    have got to address those issues.

20         So I'm willing to give you another seven days.  I will

21    give you another week on those substantive motions.  Then we

22    will push the deadlines back in a corresponding manner.  We will

23    have 14 days for reply, seven -- I mean, responses, and seven

24    days for a reply.

25         So that puts us at September 20th for replies -- or

USA v. Maricle et al., 6:09-CR-16

**Status Conference (8/22/2013)**

24

1   excuse, me -- responses and September 27th for replies.  If

2   that's not correct, somebody figure it out.  Mr. Zegafuse,

3   you've got a calendar down there.  Do you all have your

4   calendars?  Can anybody point out if I'm wrong?

5           MR. WESTBERRY:  September 20th?

6           MR. ABELL:  It's 6, 20, and 27 is correct, your Honor.

7           THE COURT:  Okay.  Thank you very much.  So we will

8   adjust that deadline accordingly.

9           Will that give you a little help, Mr. White?

10          MR. WHITE:  Your Honor, that solves the problem for me,

11  quite frankly.  Thank you.

12          THE COURT:  Okay.  Very well.

13          MR. BALDANI:  Judge, I have a question in that regard.

14  Are these motions going to be going to Magistrate Weir?

15          THE COURT:  The substantive motions will be going

16  directly to me.  We don't have time.

17          MR. BALDANI:  I thought in your previous order you

18  indicated to the contrary.

19          THE COURT:  No, the motions to sever, the motions to

20  dismiss, the motions to suppress will come to me.  I won't be

21  sending it to the magistrate judge.  We simply don't have time

22  to interpose that intermediary.

23          MR. BALDANI:  Right.  That's what I thought.

24          THE COURT:  The United States has filed a notice in the

25  record, and I understand that it will be proceeding to trial

USA v. Maricle et al., 6:09-CR-16

Status Conference (8/22/2013)

25

1   only on counts 1, 8, 9, 10, 11, and 12; is that correct,

2   Mr. Boone?

3          MR. BOONE:  That is correct, your Honor.

4          THE COURT:  Therefore, are you asking the Court to

5   dismiss counts 2 through 7 and 13?

6          MR. BOONE:  I have no objection to that, your Honor.

7          THE COURT:  Counts 2 through 7 and 13 are hereby

8   dismissed as to all defendants.

9          Now, I know, Mr. Westberry, I know you were the only

10  person who cited -- let's talk about the trial itself.  You have

11  a trial in Oldham County on October 28th; is that correct?

12         MR. WESTBERRY:  I do, your Honor.  And I will be candid,

13  it's a civil case.  It may or may not go, but it currently is

14  scheduled.

15         My cocounsel, Mr. Cline, who wants to be with me here at

16  trial, has a trial in federal court in Chicago, Northern

17  District of Illinois, on the same day.  Even a few days would be

18  of help.  I'm not asking for an extension.

19         THE COURT:  I understand.

20         MR. WESTBERRY:  But a couple, three days, something like

21  that, would probably be an enormous help.

22         THE COURT:  We all know, with our experience, how cases

23  come and go.  I am going to leave it for October 28th.  We are

24  aware that Mr. Westberry and Mr. Cline have a conflict, so I

25  will be flexible about starting the case a little bit later in

USA v. Maricle et al., 6:09-CR-16

**Status Conference (8/22/2013)**

26

 1    that week.

 2         In fact, one of the suggestions that I would have had is

 3    that maybe we reserve the 28th for a last-minute pretrial

 4    conference, that we convene here outside of the presence of the

 5    jury and discuss our jury selection process, handle any

 6    last-minute motions.  That way, we will all be ready for the

 7    jury.  I thought we might not start until 1:00 on that Monday.

 8         MR. WESTBERRY:  Thank you, Judge.

 9         THE COURT:  Let's leave the trial date October 28th,

10    recognizing that we may be starting a couple days late if

11    Mr. Westberry can't get that matter resolved.  I hope you settle

12    your case.

13         MR. WESTBERRY:  Thank you.

14         THE COURT:  It occurred to me, as well, that we might

15    want another status conference.  I believe we have a pretrial

16    scheduled for October 15th.  Possibly maybe October the 1st, a

17    couple weeks in advance.  I have the 1st or the 2nd, and I have

18    those days that I could schedule at any time.

19         Is there anybody that couldn't be here on one of those

20    two afternoons?

21         MR. WESTBERRY:  What was the other date, please, Judge?

22         THE COURT:  October 1st or 2nd.

23         MR. WESTBERRY:  The 2nd is preferable.  I have a

24    sentencing with Judge Hayes on the 1st.

25         THE COURT:  Anybody who can't be here on the 2nd?  Let's

USA v. Maricle, et al., 6:09-CR-16

**Status Conference (8/22/2013)**

27

 1    say 1:00.  I just think, with this many defendants and the kinds

 2    of issues that are involved in the case, if we get together more

 3    frequently we can address some matters and issues that come up.

 4          If it looks like a week before that there really isn't

 5    going to be anything for us to discuss, I will entertain a

 6    motion from you to cancel the hearing if we want to just

 7    postpone it.  But let's get that date on our calendars.  That's

 8    October 2nd at 1:00.

 9          MR. WHITE:  Your Honor?

10          THE COURT:  Yes, sir?

11          MR. WHITE:  The only thing I was going to mention, and I

12    probably should have put it in my status filing, just in terms

13    of future scheduling I just wanted to alert you, I'm going to be

14    in California the following week -- not the week of October 2nd,

15    but the week after that.  I will be gone that entire week.

16    Obviously, if you need me I can be here, but I'm just saying

17    that for your edification.

18          THE COURT:  Thank you.  I don't expect anything.  That's

19    one reason I'm going ahead to try to set a date the second week.

20    There are a couple of dates in October now that we're scheduled

21    to be together, and I will try to reserve any issues that I have

22    during those times.

23          Mr. Hoskins, let me just pose this to all counsel and to

24    their clients.  A few minutes ago you heard me ask Mr. Simons,

25    for Mr. Bowling, as to whether I may confer with counsel outside

USA v. Maricle, et al., 6:09-CR-16

Status Conference (8/22/2013)

28

1    of the presence of their lawyers regarding scheduling matters;

2    that being trying -- as you see, we have a lot of people here we

3    have got to try to get together.  We have to try to schedule

4    times.

5              Sometimes when we get together we talk about nothing

6    substantive, only scheduling matters.  It's difficult for me to

7    get all the lawyers and all their clients together, and

8    sometimes it might make sense for us to talk on the telephone

9    instead of dragging everybody up here.  All the lawyers are busy

10   and have busy practices.

11             So do I have the clients' permission to speak with the

12   lawyers on the telephone without the client being present?

13   Mr. Maricle?  I see Mr. Maricle here.

14             MR. HOSKINS:  Yes, your Honor.

15             MR. MARICLE:  No problem, your Honor.

16             THE COURT:  My sister-in-law is a Miracle, so if I keep

17   calling you that you are just going to have to get used to it.

18             Mr. Adams?  Is Mr. Adams here?

19             MR. ADAMS:  That's fine, your Honor.

20             THE COURT:  Okay.  And Mr. Jones?

21             MR. JONES:  Yes, ma'am.

22             THE COURT:  Is that all right?

23             MR. JONES:  That's fine.

24             THE COURT:  Thank you, Mr. Jones.

25             Mr. Stivers?

USA v. Maricle et al., 6:09-CR-16
Status Conference (8/22/2013)

29

1           MR. STIVERS:  Yes, ma'am.

2           THE COURT:  Is that all right?

3           MR. STIVERS:  That's fine.

4           THE COURT:  All right.  Is Mr. Thompson here?

5           MR. THOMPSON:  Yes, that's fine.

6           THE COURT:  Thank you, Mr. Thompson.

7           Mr. Morris?

8           MR. MORRIS:  Yes, that will be fine.

9           THE COURT:  Mrs. Morris?

10          MS. MORRIS:  Yes, ma'am.

11          THE COURT:  And I already talked to Mr. Bowling.

12          Once  again, we wouldn't deal with anything substantive

13   without all the defendants being present, but that might take

14   some burden off of us in getting together.

15          All right.  One of the things that occurred to me that

16   might be helpful for us in a trial of this duration is to do a

17   very brief, very simple jury questionnaire, largely just to

18   determine jurors' availabilities and familiarity with the people

19   or subject matters.

20          Mr. Boone, do you know if there was a questionnaire?

21   Does anybody know if there was a questionnaire used in this last

22   case?

23      (Counsel talking simultaneously.)

24          MR. WESTBERRY:  Forgive us.

25          MR. BAYER:  You don't want to go there, Judge.

USA v. Maricle et al., 6:09-CR-16

Status Conference (8/22/2013)

1          THE COURT:  I don't want to go there?  Okay.

2          MR. WESTBERRY:  Mr. Hoskins is prepared to discuss that.

3          THE COURT:  All right.  Mr. Hoskins?

4          MR. HOSKINS:  Your Honor, last time we worked on one and

5    the Court decided not to use one.  I agree, though, it would be

6    helpful to use one.

7          THE COURT:  I'm not talking about a mini voir dire.  I'm

8    talking about real basic questions.  Mr. Abell must have just

9    had a nightmare over the last one.

10          MR. ABELL:  Judge, this I have circulated to the other

11   defense counsel and to Mr. Parman and Mr. Boone.  I will pass it

12   up to your Honor.

13          THE COURT:  All right.  Mr. Court Security Officer.

14          MR. ABELL:  I don't know if you will necessarily agree

15   that it's brief.  You probably won't.  But it's a working

16   document to start with.

17          THE COURT:  I will tell you what, if anybody has

18   anything else you want to add to what Mr. Abell has proposed, do

19   that on or about the time that substantive motions are due,

20   which is now September 6th.

21          And I will see if I can't put something together.  It's

22   probably going to be a little bit briefer.  It seems like some

23   of this has the information on it that's already occurred on the

24   juror information sheets.

25          But I'll see what I can do with it.  I think it would

USA v. Maricle et al., 6:09-CR-16
Status Conference (8/22/2013)

1    help us to do something, however brief, to just find out if

2    folks are available.

3         All right.  Now, Judge Wier is addressing any issues.

4    I know that there are some custodial issues that the magistrate

5    judge is addressing.  He will continue to address those and

6    continues to work on those.

7         Let me ask you --

8         MR. ABELL:  Your Honor?

9         THE COURT:  Yes?

10        MR. ABELL:  In that regard, I don't know what the

11   Judge's ruling is going to be on that.  But Mr. Stivers being in

12   Grayson County Detention Center, this just isn't a case -- I

13   mean, I need to sit across the table from him.

14        THE COURT:  I understand.

15        MR. ABELL:  He needs to be closer.  That's one thing.

16        The other thing is I don't know if the Court is aware of

17   his medical situation.  That's part of my submission to Judge

18   Wier.  I'm concerned about the medical care out there, as well.

19        While we are working through this, I don't know how long

20   it's going to take, but if he was moved at Fayette County that

21   would be a big help.

22        THE COURT:  I just got a thumbs up from the marshal back

23   here.  I think we can accomplish that.

24        MR. ABELL:  Good.  Thank you.

25        THE COURT:  Mr. Westberry?

USA v. Manchester et al., 6:09-CR-16

**Status Conference (8/22/2013)**

32

1          MR. WESTBERRY:  I'm similarly situated with Mr. Abell.

2    Thank you, Mr. Marshal.

3          We had the detention hearing August 8, roughly two weeks

4    ago.  I know it was submitted on the docket entry.  I would like

5    an opportunity -- well, I will wait for Judge Wier.

6          THE COURT:  We will wait for Judge Wier.  But in the

7    interim, we will bring him to Fayette County.  Would it help for

8    him to be in Jefferson County in the interim?  I don't know if

9    we can take him to Jefferson County.

10          MR. WESTBERRY:  Grayson is preferred.

11          THE COURT:  Over Jefferson County?  Will Fayette County

12    work?

13          MR. WESTBERRY:  Fayette would be better for Mr. Bayer.

14          MR. BAYER:  That will work.  That's fine with me, Judge.

15          THE COURT:  All right.  Very well.  We will accommodate

16    you and await the magistrate judge's ruling with respect to

17    other conditions.

18          Mr. Hoskins, is there anything you can think of today

19    that we ought to be considering and preparing for so that we can

20    keep this case moving?

21          MR. HOSKINS:  Your Honor, the only thing I can think

22    about is something the Court has already addressed.  I was

23    getting confused when we were talking earlier about transcripts

24    versus recordings.  I think there are different issues that

25    apply to each.

USA v. Maricle, et al., 6:09-CR-16

**Status Conference (8/22/2013)**

1    And insofar as the recordings are concerned, I submit

2    that there may be some that are inaudible or that have inaudible

3    portions that should not be played at all.  And I don't know if

4    it's the same timeframe as that as we are with transcripts, but

5    I would suggest that we --

6        THE COURT:  I will make those run simultaneously and I

7    will take them up at the same time.

8        So, Mr. Boone, you are going to give them to the defense

9    on or around the 15th of September, and then you can file your

10   motions objecting either to the admissibility of the tape in its

11   entirety or the use of any transcripts associated with that.

12       Is that acceptable?

13       MR. HOSKINS:  Yes, your Honor.

14       THE COURT:  Mr. Boone?

15       MR. BOONE:  If that's what your Honor wants us to do, we

16   will do that.

17       THE COURT:  All right.  Thank you.

18       Yes, Mr. Hoskins?

19       MR. HOSKINS:  I have one other request.  I would like

20   permission to bring an iPad into the courtroom every day.  I

21   have been denied that in some courts.

22       THE COURT:  I will set aside, for purposes of this

23   trial, the rule regarding telephones, iPads, and computers.  I

24   use them, I know all of you do.

25       I'm going to demand a few things in exchange for that

USA v. Maricle, et al., 6:09-CR-16

**Status Conference (8/22/2013)**

34

1   concession.  If a phone rings in this courtroom, it and its SIM

2   cards are mine forever, not to be returned.  So I better not

3   hear a phone ring.

4        Lawyers only.  Lawyers only.  And I ask that no

5   photographs or recordings be made.  There are no recordings of

6   this proceeding and no photographs.

7        I understand that -- and the United States, this applies

8   to the United States.  It helps you get your witnesses here on

9   time.  If you need some research, if you need to keep up with

10  what's happening here in trial.  But no photographs and

11  absolutely no recordings of any part of the proceedings.

12       MR. HOSKINS:  Thank you, your Honor.

13       THE COURT:  Very well.  Anything further, Mr. Hoskins?

14       MR. HOSKINS:  No, your Honor.  Thank you.

15       THE COURT:  Mr. Westberry?

16       MR. WESTBERRY:  Nothing further.  And thank you for that

17  accommodation of the electronics, your Honor.

18       THE COURT:  Mr. Bayer?

19       MR. BAYER:  Yes, your Honor.  And I apologize for being

20  late.  I was in state court, and I want to be sure that the

21  appearance was entered.  Bennett Bayer appearing on behalf of

22  Mr. Adams.

23       THE COURT:  It will be so noted.

24       MR. BAYER:  Thank you, Judge.  And if I could just ask a

25  question.  Some of the motions we filed in relation to the first

Case: 6:09-cr-00016-KKC   Doc #: 1446   Filed: 09/23/13   Page: 35 of 41 - Page
ID#: 16696
USA v. Maricle, et al., 6:09-CR-16
Status Conference (8/22/2013)
35

1  trial, can we just make reference to those motions?  Would you

2  prefer us to do it that way or to completely redo them?

3        THE COURT:  This is an excellent point.  I don't think

4  anybody needs to spend any time reinventing the wheel.  If you

5  want to reassert the prior motion and you are satisfied with

6  your grounds, you may file a motion reasserting it,

7  rereferencing your prior memorandum in support of that motion.

8  Point it out to me in the record.

9        If you have additional grounds -- and only additional

10  grounds -- with respect to that same motion, then you need only

11  write on the additional grounds, once again referencing all of

12  the other grounds previously stated.  Nobody needs to write the

13  same thing twice.

14        MR. BAYER:  Because I thought that would help the Court,

15  because I thought some of the motions to dismiss and motions for

16  severance have already been made.  We could just redo them that

17  way.

18        THE COURT:  That's very helpful.

19        And in fact, if among you you want to adopt one

20  anothers' motions and the same grounds, say so.  If you would

21  like to cite an additional ground as to your client, say so.

22        I encourage clarity and brevity.  I know you want to

23  preserve your record.  There's no reason, though, for us to

24  reconsider -- to rewrite the same thing just to print more

25  paper.

USA v. Manuel, et al., 6:09-CR-16

**Status Conference (8/22/2013)**

36

1    Same thing with the United States, all parties and

2    counsel.

3    MR. BAYER:  And one additional point concerning the path

4    you just laid.  Previously, we were required that we had to do a

5    "me too" for it to apply for all the defendants.

6    Is this Court going to assert that if it makes a

7    dispositive ruling that is in favor of one defendant it will not

8    apply to all the other defendants, such that if we do a "me too"

9    we have waived it?

10   THE COURT:  Let me ask you all for your opinion on this;

11   and the United States, I certainly want you to weigh in.

12   I generally go the opposite way; is "Not me, this

13   doesn't apply to me."  I generally assume that a motion as to

14   one is adopted by all, unless they take exception.

15   Is there any objection to that from the United States,

16   Mr. Boone?

17   MR. BOONE:  We have no objection.

18   THE COURT:  Therefore, if you want to rely on what one

19   of you writes --

20   MR. BAYER:  I think we would prefer that.

21   THE COURT:  -- if it's well stated, then I would assume

22   that a motion filed by one applies to all.

23   There may be instances, though, in which one of you may

24   take Mr. Hoskins' well-written motion and adopt it but that you

25   may want to add additional grounds that apply only to your

Case: 6:09-cr-00016-KKC   Doc #: 1446   Filed: 09/23/13   Page: 37 of 41 - Page
USA v. Maricle et al., 6:09-CR-16
ID#: 16698
Status Conference (8/22/2013)

37

1   client, then you need only write on that issue.

2       Is there any objection to proceeding along those lines,

3   Mr. Boone?

4       MR. BOONE:  No, your Honor.

5       THE COURT:  Any defense counsel?  Mr. Hoskins?

6       MR. HOSKINS:  No, your Honor.

7       MR. BAYER:  Thank you, Judge.  That's all I have.  And I

8   appreciate the opportunity to speak to you.

9       THE COURT:  Very well.

10      Mr. White?

11      MR. WHITE:  Your Honor, only one other thing, and I

12  didn't put it in my status because I wanted to raise it in front

13  of everybody.  And that is, one of the issues that was strongly

14  litigated before was the transfer of the case from the London

15  location to the Frankfort location.  And that was done sua

16  sponte, and I don't know that -- that was not disposed of by the

17  Sixth Circuit.

18      I have not yet had a chance, other than a very cursory

19  manner, to discuss that with my client.  I think there's

20  certainly a possibility that I'm going to ask the Court to try

21  the case in the London area, using that voir dire pool.

22      THE COURT:  That's a substantive motion.  I would want

23  that filed.

24      MR. WHITE:  Right.  That's what I was going to ask.  Do

25  you want me to file that even before the substantive motion

USA v. Manchester et al., 6:09-CR-16

**Status Conference (8/22/2013)**

38

```
 1    deadline?

 2            THE COURT:  No.

 3            MR. WHITE:  Okay.  Thank you, your Honor.

 4            THE COURT:  Again, most lawyers are from this area, so

 5    one of the reasons that the Court went ahead and just set it for

 6    Lexington was in the interest of saving your time and your

 7    money.  This is great expense to the defendants who are paying;

 8    it's great expense to the government, who is paying for the ones

 9    who can't.  So that was really my only reason for going ahead

10    and scheduling it, but I will certainly entertain a motion to

11    move it.  I'm not saying I will or I won't.

12            MR. WHITE:  Right.  And just to be clear, I'm not

13    complaining about being in Lexington versus Frankfort.  It's

14    just I think the decision whether to keep it here to go to

15    London is more Mr. Jones' to ask the Court, and I just need to

16    talk to him about that.

17            THE COURT:  Very well.

18            MR. WHITE:  Thank you, Judge.  That's all I have.

19            THE COURT:  Mr. Abell.

20            MR. ABELL:  Your Honor, the only thing in terms of the

21    trial going is you are contemplating five days a week, I take

22    it?

23            THE COURT:  Yes.  I'm willing to consider, however,

24    going four.  And thank you for bringing that up.

25            I know that many of you are solo practitioners and small
```

USA v. Maricle et al., 6:09-CR-16

**Status Conference (8/22/2013)**

1    firm practitioners, and I remember what it was like to be out of

2    my law firm for five days a week for about six weeks.  I really

3    have high hopes that we will finish this case in four weeks.  I

4    really have high hopes.

5          As I look at it and in hearing what I've heard today

6    from Mr. Boone, we have some counts that are gone and some

7    others that could go.  I don't know, I haven't reviewed those

8    motions yet.

9          But I have very high hopes we could finish in four weeks

10   if we go five days a week; I think if we go four days a week,

11   it's going to take us another week.

12         That's always a tough call.  Some folks would rather

13   just check out for a month and get back to work.  Others would

14   prefer to have just a little bit of time in between.

15         So if that's something that you all would like to

16   discuss among yourselves with the United States and among

17   counsel, I think we can make that decision a little bit later.

18         And if you reach agreement on it, you can just file a

19   notice to me.  I have the time set aside, either way.  So we

20   will make it happen from the Court's standpoint if you all can

21   be accommodated in some small way.

22         Generally, if we were going to go four days a week, I

23   would prefer that we have four continuous days.  So we would go

24   Monday-Thursday, Tuesday-Friday.  That would be the only

25   limitation that I would put on it.  I think that helps the jury.

USA v. Maricle et al., 6:09-CR-16
**Status Conference (8/22/2013)**

40

1          Any other suggestions, Mr. Abell?

2          MR. ABELL:  Nothing further, your Honor.  Thank you.

3          THE COURT:  Mr. Baldani?

4          MR. BALDANI:  I don't have any issues to raise.  Thank

5   you.

6          THE COURT:  Mr. Gilbert?

7          MR. GILBERT:  No issues, your Honor.

8          THE COURT:  Mr. Simons?

9          MR. SIMONS:  One thing during the last trial, you will

10  appreciate I was taking depositions every Saturday and Sunday in

11  other matters.  So the four days, if you please, sounds awfully

12  nice.

13         THE COURT:  All right.  I understand it's a tough call

14  for everybody to make, and five days a week is a long time for

15  the lawyers and for the jurors.

16         So see if you can reach agreement among yourself

17  regarding that issue.  I really don't have strong feelings about

18  it either way.

19         Mr. Boone, anything for the United States?

20         MR. BOONE:  I have nothing further, your Honor.  Thank

21  you.

22         THE COURT:  All right.  Well, thank you all for being

23  here today.  I appreciate your cooperation with the Court, and I

24  will look forward to seeing you again in early October and to

25  receiving your filings soon.

USA v. Maricle et al., 6:09-CR-16
Status Conference (8/22/2013)

41

1        Thank you all very much.  We will be in recess.

2        (Proceedings adjourned at 1:50 p.m.)

3        I certify that the foregoing is a correct transcript from
the record of proceedings in the above-entitled matter.

4

5        Rhonda S. Sansom

6    _____        _____
     Rhonda S. Sansom, RPR, CRR                      Date

7            ORIGINAL TRANSCRIPT FILED ELECTRONICALLY