UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | CRIMINAL NO. 6:09-16-KKC |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **OPINION AND ORDER** |
| FREDDY THOMPSON and | ) | |
| DOUGLAS C. ADAMS, | ) | |
| | ) | |
| Defendants. | ) | |

\*\* \*\* \*\* \*\* \*\*

This matter is before the Court on the motions for separate trials filed by Defendants Freddy Thompson (DE 1367) and Douglas C. Adams (DE 1411). For the following reasons, the motions will be denied.

The Defendants are charged with various violations of federal law, all of which are related to their alleged participation in a vote-buying and vote-stealing scheme in Clay County, Kentucky that lasted from 2002 to 2007 and encompassed three election cycles – 2002, 2004, and 2006. There are six other Defendants in this matter in addition to Adams and Thompson. Three of those Defendants – William B. Morris, Debra L. Morris, and Stanley Bowling – have pleaded guilty. The other three Defendants – Russell Cletus Maricle, William E. Stivers, and Charles Wayne Jones – are scheduled to be tried along with Adams and Thompson.

Trial of this matter is scheduled for November 4, 2013. This will be the second trial of these Defendants. Their first trial occurred before U.S. District Judge Danny Reeves. After seven weeks, the jury found all of the Defendants guilty of all counts. The Sixth Circuit vacated the Defendants' convictions finding that that the cumulative effect

of various errors during the trial warranted a new trial. *United States v. Adams, et al.*, 722 F.3d 788 (6th Cir. 2013). Judge Reeves recused from the matter and reassigned it to the undersigned. (DE 1311.) On retrial, the United States has represented that it will not proceed against the Defendants on certain charges in the indictment (Counts 2, 3, 4, 5, 6, 7, and 13) and those charges have been dismissed. (DE 1375).

Thus, the remaining counts and Defendants to be tried are:

| Count Number | Defendants Charged | Charge |
| --- | --- | --- |
| Count 1 | Maricle, Adams, Jones, Stivers, Thompson | Conspiracy to violate RICO under 18 U.S.C. § 1962(d) |
| Count 8 | Maricle and Stivers | Instructing a grand jury witness to testify falsely in violation of 18 U.S.C. § 1503 |
| Count 9 | Thompson | Giving false grand jury testimony in violation of 18 U.S.C. § 1503 |
| Count 10 | Maricle, Jones, Stivers, and Thompson | Conspiracy to oppress voting rights of citizens under 18 U.S.C. § 241 |
| Count 11 | Maricle, Jones, Stivers, and Thompson | Conspiracy to buy votes in violation of 18 U.S.C. § 371 and 42 U.S.C. § 1973i |
| Count 12 | Maricle, Adams, Jones, Stivers, Thompson | Forfeiture on RICO charge |

Thompson and Adams are the only two Defendants who have asked for separate trials. Defendant Thompson served as Clay County Clerk throughout the relevant time period. He was also a member of the Board of Elections during the 2004 and 2006 elections. The indictment alleges that Thompson provided money to be distributed by election officers to buy votes and instructed election officers on how to steal votes by changing the votes cast by voters at the voting machines. As Clay County Clerk and election board member, Thompson was also responsible for certifying the accuracy of election results which he allegedly knew to be false. As the above chart demonstrates, Thompson is charged with four counts: conspiracy to violate RICO under 18 U.S.C.

§ 1962(d); obstruction of justice under 18 U.S.C. § 1503; conspiracy against voting rights under 18 U.S.C. § 241; and conspiracy to buy votes under 18 U.S.C. § 371 and 42 U.S.C. § 1973i.

Adams was the Clay County Superintendent of Schools during the relevant time period. The indictment alleges that Adams was a director of the criminal RICO enterprise, the Clay County Board of Elections, and was considered a political boss in Clay County. As a leader of the conspiracy, Adams is alleged to have exerted influence over the selection of precinct workers and the appointment of corrupt members of the board. The indictment also alleges that he recruited individuals to run for county offices on a slate that would benefit the conspiracy. Adams is charged with conspiracy to violate RICO under 18 U.S.C. § 1962(d).

Neither Defendant argues that the Defendants and charges were improperly joined in the indictment under Federal Rule of Criminal Procedure 8. Instead, they argue that the Court should exercise its discretion to order separate trials under Federal Rule of Criminal Procedure 14(a). That rule provides that "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed.R.Crim.P. 14(a). The Supreme Court has explained that:

> [W]hen defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.

*Zafiro v. United States*, 506 U.S. 534, 539 (1993).

Neither Thompson nor Adams has shown a serious risk that a joint trial will compromise any specific trial right or prevent the jury from making a reliable judgment about his guilt or innocence.

Thompson argues that he will be prejudiced by the evidence presented against what he deems to be his more culpable codefendants. Adams, who is charged only with the RICO violation, argues he will be prejudiced by evidence of obstruction of justice and vote stealing by his codefendants. He asks that the Court either sever his trial or order that the vote-stealing and obstruction-of-justice charges in counts 8, 9, and 10 of the indictment be tried separately. Thompson and Adams both argue that they will be prejudiced by the admission of audio recordings of conversations between their codefendants and cooperating individuals that they allege are relevant only to their codefendants. Both Defendants also argue that, at the first trial, the government presented a large amount of other-crimes evidence, none of which involved them.

As an initial matter, the indictment does not indicate that Thompson is one of the least culpable defendants. In fact, according to the indictment, Thompson was at the center of the alleged criminal enterprise, serving as Clay County Clerk during the entire relevant time period and as a member of the Board of Elections during two of the three election cycles at issue. In that position, the government alleges that he certified election results that he allegedly knew were fraudulent. The indictment alleges that he provided large sums of money to be distributed by election officers to buy votes and instructed election officers on how to change votes on election machines after the voters thought they had cast their votes.

As to other-crimes evidence, or 404(b) evidence, the amount of any such evidence presented at the second trial will be considerably reduced as set forth in the Sixth Circuit's opinion. In addition, the second trial will involve fewer defendants and fewer charges which will necessarily decrease the amount of evidence presented as a whole. Furthermore, "juries are presumed capable of sorting evidence and considering separately each count and each defendant." *United States v. Caver*, 470 F.3d 220, 238 (6th Cir. 2006) (quoting *United States v. Welch*, 97 F.3d 142, 147 (6th Cir.1996)).

Any risk of prejudice from "spillover" evidence in this case can be addressed through careful instructions to the jury. In accordance with the Sixth Circuit Pattern Criminal Jury Instructions, when evidence is presented at trial that implicates certain defendants but not others, the Court will instruct the jury that they should only consider the evidence against the relevant defendants and that they cannot consider it any way against any of the other defendants. Sixth Circuit Pattern Jury Instructions, § 7.18.

The Court will also instruct the jury that they must separately consider the evidence as to each defendant and separately decide for each defendant whether the government has proved that particular defendant guilty. Sixth Circuit Pattern Jury Instructions, § 2.01D. Such instructions "often will suffice to cure any risk of prejudice" from joint trials. *Zafiro*, 506 U.S. at 539. The Defendants have provided no reason that such instructions will not be adequate in this case.

Thompson argues that it is clear that the jury in the first trial was unable to consider the evidence separately against Thompson because they returned a guilty verdict as to all Defendants on all charges and because Judge Reeves later granted the Rule 29 motions of two of Thompson's codefendants on charges of attempted extortion. The

Court cannot find from either of these facts that the jury was unable to separately consider the evidence against each defendant.

Thompson and Adams also argue that the admission of the recordings of conversations between their codefendants and cooperating individuals violates *Bruton v. United* States, 391 U.S. 123 (1968). Thompson argues that the admission of the recordings also violates *Crawford v. Washington*, 541 U.S 36 (2004).

In *Crawford*, the Supreme Court held that the Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Id*. at 53–54. "Where testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id*. at 68.

*Bruton* holds that "[a]n accused is deprived of his rights under the Confrontation Clause when the confession of a nontestifying codefendant that implicates the accused is introduced into evidence at their joint trial . . . even if the jury is instructed to consider the confession only as evidence against the codefendant." *United States v. Cope*, 312 F.3d 757, 780–81 (6th Cir. 2002). "Because it is premised on the Confrontation Clause, the *Bruton* rule, like the Confrontation Clause itself, does not apply to nontestimonial statements." *United States v. Johnson*, 581 F.3d 320, 326 (6th Cir. 2009).

Neither *Bruton* nor *Crawford* is implicated with the admission of the recordings in this case because the statements of the codefendants on the recordings are not *testimonial*. "In determining whether statements are testimonial, we ask whether the declarant 'intend[ed] to bear testimony against the accused.'" *Johnson*, 581 F.3d at 325 (quoting

*United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004)). This depends on "whether a reasonable person in the declarant's position would anticipate his statements being used against the accused in investigating and prosecuting the crime." *Id*.

The codefendants in this case did not know they were being recorded and did not anticipate that their statements would be used in a criminal proceeding against Thompson or Adams. Their statements on the recordings are therefore not testimonial. *Id*. "[A] statement unwittingly made to a confidential informant and recorded by the government is not 'testimonial' for Confrontation Clause purposes." *Id*. (quoting *United States v. Watson*, 525 F.3d 583, 589 (7th Cir.2008)).

Of course, before being admitted, the recordings must satisfy the Federal Rules of Evidence, including the rules regarding hearsay statements. The Court makes no finding with this opinion regarding the admissibility of the recordings. Instead, the Court finds that, assuming the recordings are admitted into evidence, their admission does not require a separate trial for Thompson or Adams.

For all these reasons, the Court hereby ORDERS that the motions for separate trials filed by Defendants Adams (DE 1411) and Defendant Thompson (DE 1367) are DENIED.

Dated this 4th day of October, 2013.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge