**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**LONDON**

**CRIMINAL NO. 6:09-CR-16-KKC**                    *ELECTRONICALLY FILED*

**UNITED STATES OF AMERICA**                                    **PLAINTIFF**

**UNITED STATES' RESPONSE**
**V.**          **TO DEFENDANTS' MOTIONS IN LIMINE**

**RUSSELL CLETUS MARICLE, ET AL.**                              **DEFENDANTS**

* * * * * *

The United States hereby responds to the motions in limine and evidentiary objections filed by the defendants in this matter.  Because the defendants' various motions raise a number of overlapping arguments, and since the Court has denied the defendants' motions for severance, the United States hereby responds to each motion in this consolidated response.[1]

A.  <u>Coconspirator Statements, Recordings, and Transcripts</u>

The indictment charges that each of the defendants and others conspired to participate in the affairs of the Clay County Board of Elections (hereinafter "the Board") through a pattern of racketeering activity that included voter bribery and obstruction of justice.   The indictment alleges that this conspiracy spanned from a date in March 2002 through July 17, 2007.  During this timeframe, two cooperating witnesses—Kennon and Wanda White—surreptitiously recorded a number of conversations with various members of this conspiracy, including Maricle, Stivers, Jones, and Thompson.  Furthermore, the indictment charges Maricle, Stivers, and

---

[1] In addition to raising new and modified arguments, Thompson has incorporated arguments made in his previous motions DE 575 and 590.  Thus, the United States hereby incorporates its responsive arguments in DE 589 and DE 659.

1

Thompson with obstruction of justice. The obstruction charges against Maricle and Stivers are based primarily on their attempts to influence Wanda White's grand jury testimony.

The United States seeks to introduce excerpts from ten of these recordings, which contain statements made by Defendants Maricle, Stivers, Jones, and Thompson, the cooperating witnesses, and other individuals affiliated with the defendants (such as Defendant Maricle's wife, Judy Maricle, and Defendant Stivers' wife, Mary Betty Stivers).[2] In response, the defendants have covered the waterfront with a litany of objections to the recordings and transcripts. Except as noted below, the defendants' objections do not challenge the admissibility of particular statements; instead, the defendants argue that the statements of their coconspirators are inadmissible as hearsay, that the recordings are unreliable, that the evidence is irrelevant and unduly prejudicial, and that the jury should not be shown transcripts of the excerpts.

The excerpts that the government intends to use at trial consist of statements that are admissible either under Fed. R. Evid. 801(d)(2)(E) or for non-hearsay purposes. Under Rule 801(d)(2)(E), a statement is not subject to the hearsay rule where: (1) a conspiracy existed; (2) the defendant against whom the statement is offered was a member of the conspiracy; and (3) the statement was made during the course of and in furtherance of the conspiracy. *See United States v. Conrad*, 507 F.3d 424, 429 (6th Cir. 2007).

### 1.    Conditional Admission of Coconspirator Statements

As an initial matter, Adams has asked the Court to make a pretrial determination of the admissibility of the recordings under Rule 801(d)(2)(E). [*See* DE 1470]. To the extent that

---

[2] Prior to the initial trial, Judge Reeves determined that the cooperating witness statements were admissible because they were offered for reasons other than to prove the truth of the matter asserted. [*See* DE 691.] For example, some statements were admissible because they were offered to provide context, [*see id.* at 12 (citing *United States v. Rogers*, 118 F.3d 466, 477 (6th Cir. 1997))], and others were admissible because they could be characterized as questions, [*see id.* at 13 (citing *United States v. Wright*, 343 F.3d 849, 865 (6th Cir. 2003))]. It appears that the defendants have now limited their objections to the applicability of the coconspirator exception and do not seek to relitigate these other issues at this time.

2

Adams seeks an *Enright* hearing, the United States opposes his request and respectfully asks the Court to exercise its discretion to conditionally admit these recordings subject to proof of their admissibility. *See United States v. Vinson*, 606 F.2d 149, 152 (6th Cir. 1979). At trial, the government will show that each of the defendants and others conspired together to misuse the power of the Clay County Board of Elections in order to obtain, solidify, preserve, and expand political power and personal enrichment for themselves and their associates. The government's evidence will also show that: (1) the members of the conspiracy included, among others, the speakers on the audio excerpts that the government seeks to introduce (excepting the cooperating witnesses); (2) the members of the conspiracy achieved their purposes through a pattern of racketeering activity that included voter bribery and obstruction of justice; and (3) the conspiracy spanned the March 2002 to July 2007 timeframe.

Conditional admission of these recordings, subject to the government's proof of the existence, members, temporal scope, and purposes of the conspiracy, is appropriate in this case. Despite Adams' characterization of this practice as "risky and speculative" [DE 1470-1, at 3], conditional admission is an established practice and is consistent with the Supreme Court's decision in *Bourjaily v. United States*, 483 U.S. 171 (1987), which held that a district court may examine the hearsay statements themselves in assessing their admissibility. *See id.* at 181. Conditional admission will also be an efficient use of judicial resources. For these reasons—and the myriad decisions in which the Sixth Circuit has affirmed district courts employing this procedure—this Court previously determined that there is an implied preference in the Sixth Circuit for conditional admission of statements offered under Rule 801(d)(2)(E). *See United States v. Coffman*, No. 09-CR-181-KKC, 2010 WL 3924671, at *3 (E.D. Ky. Sept. 29, 2010).

### 2.      Scope and Purposes of the Conspiracy

Adams and Stivers each attempt to misconstrue the scope of the conspiracy charged in the indictment, presumably to secure undue restrictions on the types of statements that could be admitted under Rule 801(d)(2)(E).  Stivers seeks an order precluding the government from introducing statements in furtherance of "a generalized, county-wide conspiracy to achieve the lawful purpose of obtaining and maintaining political power."  [DE 1481.]  The government has not alleged and will not seek to introduce evidence of this straw-man "conspiracy" to acquire legitimate political support.  Instead, consistent with the indictment, the government's proof will show that the defendants and their confederates sought to obtain and maintain political power through the *un*lawful use of the Board of Elections and through various illegal acts of racketeering.   Stivers' motion should thus be denied.

Adams seeks an order precluding the admission of all the recordings against him, arguing that the recordings pertained to a 2007 conspiracy to obstruct justice, of which he disclaims membership.  [*See* DE 1470-1, at 3-4.]  Again, the indictment charges and the government's proof will show a conspiracy that spanned from 2002 until 2007, in which the members (including Adams) achieved their purposes through a variety of activities that included vote buying throughout the conspiracy and attempts by specific coconspirators to obstruct a federal investigation into these activities.  The 2007 recordings occurred during the course of this conspiracy and (as discussed in the following section) contain numerous statements made in furtherance of it.  Adams' motion assumes a fictitious limitation on the scope of the conspiracy and, thus, should be denied.

### 3.    Statements in Furtherance of the Conspiracy

Adams and Thompson both seek exclusion of the recordings on hearsay grounds.  [*See* DE 1470-1, at 2-5; DE 1473-1, at 5-6].  These motions should be denied, because the recordings contain statements made by co-conspirators in furtherance of a conspiracy.

The Sixth Circuit has deemed a broad range of statements to be "in furtherance of" conspiracies for purposes of Rule 801(d)(2)(E).  These include statements that are designed to: (1) identify participants and their roles in the conspiracy; (2) gain the trust and assurance of a coconspirator; (3) apprise a coconspirator of the progress of the conspiracy; (4) keep a coconspirator abreast of another coconspirator's activities; (5) induce a coconspirator's continued participation; (6) allay a coconspirator's fears; and (7) facilitate concealment of the conspiracy's criminal accomplishments.  *See, e.g., United States v. Martinez*, 430 F.3d 317, 327 (6th Cir. 2005); *United States v. Franklin*, 415 F.3d 537, 552 (6th Cir. 2005); *United States v. Brown*, No. 97-1618, 2000 WL 876382, *8 (6th Cir. June 20, 2000).  A statement may be in furtherance of a conspiracy even if it is not exclusively—or even primarily—made in furtherance of the conspiracy.  *See United States v. Tocco*, 200 F.3d 401, 419 (6th Cir. 2000).  A statement need not actually advance the conspiracy to be admissible.  *See United States v. Hitow*, 889 F.2d 1573, 1581 (6th Cir. 1989).

In this case, the United States intends to introduce coconspirator statements that fall generally into two categories.[3]  First, the recordings contain statements in which coconspirators discuss members of the conspiracy who pooled money to elect preferred candidates, secured the appointment of preferred election officers, bought votes, and otherwise abused official positions

---

[3] With few exceptions, the defendants have failed to lodge objections to specific statements contained within the recordings.  Without more specific notice of the statements to which the defendants object, the government has little choice but to explain, at this level of generality, how the statements were intended to further the conspiracy.

for personal gain.  Although Adams characterizes these recordings as inadmissible "'idle chatter' about past events," [DE 1470-1, at 4], statements about past events fall under Rule 801(d)(2)(E) if they were made with the intent to further an ongoing conspiracy.  *See United States v. Salgado*, 250 F.3d 438, 449-50 (6th Cir. 2001) (statement about past activity of a conspirator was intended to apprise coconspirator about progress of conspiracy and thus was not "idle chatter").  Here, the coconspirators' statements about past events were made for that purpose.  Importantly, the statements were recorded while the conspiracy was ongoing, and at the time, the defendants and their cohorts believed that the cooperating witnesses remained members of the conspiracy. Given this timing and context, the United States will prove at trial that the coconspirators' statements—which are replete with descriptions of the roles of various members of the conspiracy and reports of their activities in furtherance of the conspiracy—were made to induce the continued participation and allay the fears of the cooperating witnesses.

Second, the recordings contain statements from April and May 2007, in which coconspirators urged Wanda White to testify falsely or refuse to testify in front of a federal grand jury.  Adams argues that these statements occurred after the conclusion of the conspiracy and, thus, cannot be in furtherance of it.  [DE 1470-1, at 4.]  The indictment alleges and the government will prove, however, that the conspiracy ended in July 2007.  Within this timeframe, statements made with the intent to induce another to conceal the conspiracy's criminal accomplishments are in furtherance of the conspiracy.   *See Franklin*, 415 F.3d at 552.  This includes statements that were intended to impede the investigation of the conspiracy's activities. *See United States v. Martinez*, 430 F.3d 317, 327 (6th Cir. 2005).

### 4.    Confrontation Clause

Adams also objects to several recordings that specifically refer to him, arguing that the admission of these statements would violate his rights under the Confrontation Clause, *Bruton v. United States*, 391 U.S. 185 (1998), and its progeny.  [DE 1470-1, at 4-5.]  The Court considered and rejected this argument when it denied Adams' and Thompson's motions to sever.  [*See* DE 1498, at 6-7.]  Statements recorded without the declarants' knowledge do not implicate the Confrontation Clause or the *Bruton* rule because they are not testimonial statements.  *See United States v. Johnson*, 581 F.3d 320, 325-26 (6th Cir. 2009).  For this reason, the Sixth Circuit has held that statements admitted under Rule 801(d)(2)(E) do not raise a Confrontation Clause issue.  *See United States v. Warman*, 578 F.3d 320, 337 n.2 (6th Cir. 2009).

### 5.    Relevance and Rule 403 Analysis

Adams, Thompson, and Jones each seek the exclusion of several specific statements, arguing that the statements lack probative value and are unduly prejudicial.  Evidence cannot be excluded under Rule 403 merely because it is damaging or prejudicial to a case; the evidence must be unfairly prejudicial to merit exclusion.  *See United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993).  Evidence is not unfairly prejudicial merely because it portrays the defendant in a negative light.  *See United States v. Chambers*, 441 F.3d 438, 456 (6th Cir. 2006).  Further, Rule 403 is not concerned with "the damage to the defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis."  *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986).  Even where the danger of unfair prejudice is present, it must substantially outweigh the probative value of the evidence to warrant exclusion.  *See* Fed. R. Evid. 403.

Adams seeks the exclusion of virtually every statement that refers specifically to him, arguing that the statements unfairly taint him by association with his codefendants' efforts to obstruct justice. [DE 1470-1, at 4-5.] Evidence of Adams' association with these individuals and their knowledge of Adams' activities is probative inasmuch as it tends to show Adams' involvement and role in the conspiracy. Moreover, his concerns about undue prejudice are generally meritless, with the exceptions of two racial epithets asserted in the recordings that the United States will remove. Any remaining prejudice resulting from the introduction of this evidence results from its legitimate probative force.

- March 31, 2007 transcript at 3 (audio at 00:21:38-00:22:30):  Mary Betty Stivers' statements characterizing Adams as "Commissioner" tend to establish Adams' power and, thus, his role in conspiracy. The reference is not particularly derogatory and, to the extent it portrays Adams in a negative light at all, is not unfairly prejudicial. *See Chambers*, 441 F.3d at 456.[4] Wanda White's statements are admissible to provide context, which can be made clear with appropriate jury instructions. Adams' objection concerning the use of a racial epithet in this recording is well-taken, and the government will remove this epithet from the final version of the recording and transcript.

- April 10, 2007 transcript at 2 (audio at 00:19:36-00:19:58):  Defendants Stivers' and Jones' statements tend to prove Adams' role in the conspiracy.  Adams' objection concerning the use of a racial epithet in this recording is well-taken, and the government will remove this epithet from the final version of the recording and transcript.

- May 1, 2007 Thompson transcript at 1 (audio at 00:15:45-00:19:50):  During a discussion about the federal investigation, Thompson identified Adams as a coconspirator and discussed his activities in the conspiracy. This tends to prove Adams' involvement and role in the conspiracy, and Adams has cited no undue prejudice that would outweigh this probative value.

- May 1, 2007 Stivers and Jones transcript at 2 (audio at 01:02:02-01:02:57):  Kennon White's statements about Adams are admissible not for the truth of the

---

[4] Adams also claims that Mary Betty Stivers' statements should be excluded as hearsay because she was not alleged to be a coconspirator. [DE 1470-1, at 5 n.3.] Ms. Stivers was not indicted in this case, but that does not preclude her status as a coconspirator. The indictment charges that Adams and his codefendants conspired with other persons known and unknown. At trial, the government will present evidence that Ms. Stivers was a coconspirator.

8

matters asserted, but to provide context. The jury can be instructed to give appropriate weight to these statements, which will cure any undue prejudice.

- May 2, 2007 transcript at 7-8 (audio at 02:01:30-02:07:56): During a discussion about the federal investigation, Maricle identified Adams as a coconspirator and discussed his activities in the conspiracy. This tends to prove Adams' involvement and role in the conspiracy, and Adams has cited no undue prejudice that would outweigh this probative value. Wanda White's assertions referencing Adams are not admissible for the truth of the matters asserted, and this can be made clear with appropriate jury instructions.

In addition to the two racial epithets discussed above, Thompson objects to four excerpts in which his coconspirators discuss his activities and the government's investigation into his activities. [DE 1473-1, at 6-7.] The challenged statements are probative because they tend to show Thompson's involvement and role in the conspiracy, and any prejudice to Thompson results from the legitimate probative value of the evidence.

- March 31, 2007 transcript at 4-5 (audio at 00:54:33-00:55:02): Defendant Stivers' statements referencing Thompson's destruction of papers tend to prove a specific action that Thompson performed in furtherance of the conspiracy. Thompson has cited no undue prejudice that would outweigh this probative value.

- April 30, 2007 transcript at 2 (audio at 00:11:21-00:11:47): Kennon White's reference to Thompson is not admissible for the truth of the matter asserted. The jury can be instructed to give appropriate weight to these statements, which will cure any undue prejudice.

- May 2, 2007 transcript at 1 (audio at 00:15:47-00:16:09): Kennon and Wanda White's references to Thompson are not admissible for the truth of the matter asserted. The jury can be instructed to give appropriate weight to these statements, which will cure any undue prejudice. Maricle's response about Thompson tends to show Maricle's affiliation with Thompson in the conspiracy, and Maricle's awareness of the status of the conspiracy. Thompson has cited no undue prejudice that would outweigh this probative value.

- May 4, 2007 transcript at 2 (audio at 01:02:01-01:03:37): As with the previous excerpt, Maricle's statement tends to show his affiliation with Thompson in the conspiracy, and Maricle's awareness of the status of the conspiracy. Thompson has cited no undue prejudice that would outweigh this probative value.

9

Finally, in addition to one of the racial epithets discussed above, Jones objects to two excerpts and a one group of excerpts. [DE 1485, at 2-3.] As discussed below, Jones cites no reason why any of the excerpts should be excluded under Rule 403.

- <u>April 6, 2007 transcript at 1-3 (audio at 00:57:33-00:59:07)</u>: In this excerpt, Defendant Stivers and Wanda White discuss the status of White's brother (referenced in the recording as "Corky" or "Cork") in a criminal case. Kennon White provided the context during his testimony in the first trial: Maricle had promised Wanda White that he would ensure her brother's release in exchange for her performance as an election officer during the 2006 election. [*See generally* DE 126 at transcript pp. 80-83.] In the recording, Defendant Stivers explains the reason for a delay in the release. His statements are in furtherance of the conspiracy—of which Jones was a part—and are probative to establish the activities of the conspiracy. Jones' professed lack of involvement does not amount to undue prejudice from the admission of this evidence.

- <u>April 6, 2007 transcript at 3 (audio at 01:31:37-01:32:33)</u>: In this excerpt, Jones and Defendant Stivers recount their involvement in a jury selection process and a previous threat to destroy evidence in Maricle's chambers. Again, Kennon White provided context during his testimony at the first trial. [*See generally* DE 126 at transcript pp. 89-92.] The government's evidence will show that Jones and Stivers discussed these events to demonstrate their power and roles in the conspiracy and, thus, that the statements were in furtherance of the conspiracy. Aside from these matters, the statements are relevant to show Jones' and Stivers' affiliation with Maricle. Jones' concern about undue prejudice, which is based on lack of context, will be ameliorated when the other participants to the conversation testify at trial about the context of the discussion.

- <u>May 1, 2007 transcript at 1, 3, 5</u>: In these excerpts, Jones urges Wanda White to (in succession) refuse to testify in front of a grand jury, maintain consistency with her previous responses, and state that she does not recall the answers to questions. This evidence establishes specific acts, by Jones, in furtherance of the conspiracy—namely, the attempted concealment of the conspiracy's criminal accomplishments. Jones cites no undue prejudice that would outweigh this probative value. Nor are the statements cumulative of the May 17, 2007 excerpts that he cites (in which Stivers, not Jones, is the individual attempting to influence Wanda White's testimony).

**6.    Exclusion of the Defendants' Self-Serving Statements**

Thompson requests the Court to order the May 1, 2013 recording to be played in its entirety. [DE 1473-1, at 4-5.] The reason for this request is readily clear: the twenty-minute-

10

plus recording contains two points at which Thompson utters numerous statements intended to

exculpate himself. Among other things, Thompson exclaims: "I wasn't involved in no election

business this year whatsoever. . . . I run it fair; I stay neutral in everybody's races you know. . . .

I wasn't even mixed up in nothing."; and "So, actually everything they [meaning the

government] ask me was a lie, I swear to God it was." [May 1, 20013 Thompson recording at

00:09:18 and 00:14:25.] Thompson seeks to introduce statements like these for their truth;

namely, that Thompson did nothing wrong and that the government's allegations are predicated

on a lie. The statements are inadmissible hearsay, as is the remainder of the May 1, 2003

recording, to the extent Thompson is offering it. Fed. R. Evid. 802.

Presumably, Thompson intends to argue that these self-serving statements should be

admitted under Fed. R. Evid. 106. The law is, however, that Rule 106 "is not designed to make

something admissible that should be excluded." *United States v. Costner*, 684 F.2d 370, 373 (6th

Cir. 1982). Rule 106, therefore, is not a vehicle for the admission of hearsay.[5]

Regardless, Thompson's self-serving statements in the May 1, 2013 recording are not

necessary to complete the excerpts that have been offered by the government. "'Rule 106

encourages completeness. It restricts the requirement of completeness, however, by the

qualification that the portion sought to be admitted be relevant to the issue, and only those parts

which qualify or explain the subject matter of the portion offered by opposing counsel should be

admitted.'" *United States v. Gallagher*, 57 F. App'x 622, 628 (6th Cir. 2003) (quoting *United

States v. Marin*, 669 F.2d 73, 84 (2d Cir.1982)) (emphasis added). Here, the government has

---

[5] Thompson emphasizes the appellate panel's discussion and concerns about the fairness of excluding hearsay under
the *Costner* rule. [DE 1473-1, at 4.] In explaining this concern, the panel highlighted three examples from the first
trial. In all of these examples, the government introduced statements by Kennon and Wanda White that prompted
responses by Maricle. Each of Maricle's self-serving responses was excluded as hearsay. *See United States v.
Adams*, 722 F.3d 788, at 826-27 (6th Cir. 2013). This scenario will not recur at the upcoming trial. The government
is not moving to exclude any self-serving statement while simultaneously seeking to introduce the assertion that
prompted it.

offered excerpts showing Thompson's:  (1) knowledge about which conspirators had received subpoenas; (2) understanding of the legal requirements to retain voter assistance forms (which Thompson destroyed); and (3) belief that the government had no evidence against him. Thompson seeks to introduce statements that relate to a separate subject matter.  His professions of innocence are not required for the jury's complete consideration of these subjects.

**7.    Trustworthiness of the Recordings**

Jones and Thompson both argue that the recordings are untrustworthy because portions of them are inaudible.  [DE 1473, at 1-5; DE 1485, at 1.]  When the defendants raised this issue on appeal, the Sixth Circuit squarely held that "the unintelligible portions do not 'render the recording as a whole untrustworthy.'"  *United States v. Adams*, 722 F.3d 788, 823 (6th Cir. 2013) (quoting *United States v. Robinson*, 707 F.2d 872, 876 (6th Cir. 1983)).  Thus, the recordings of otherwise admissible statements should be admitted at the retrial.

**8.    Witness Testimony About the Recordings**

Maricle seeks an order that would preclude government witnesses from testifying as to what they understood by statements made by other persons on the recordings.  [DE 1474.]  His motion should be denied.

Presumably, Maricle intends for his motion to apply to the participants to the recorded conversations.  These individuals were present for the conversations, can testify (subject to the hearsay rule) about what was said, and can testify about the meanings being conveyed by the participants.  In fact, when a nonverbal cue, coded language, or a history between the participants affects the meaning of the words being communicated, a participant's testimony is often essential to the jury's understanding of a recorded.  [*See, e.g.,* DE 845, Feb. 23, 2010

morning trial transcript, at 38-39.]  Maricle offers no authority—and there is none—that

precludes this type of testimony as speculative.

### 9.    Transcripts of the Recordings

Jones, Stivers, and Thompson have each filed motions seeking to preclude the use of any

transcripts of the recordings.  [DE 1470-1, at 5, DE 1483, DE 1485.]  The United States believes

that transcripts will substantially assist the jury in understanding the recordings.  Without

transcripts, it is often difficult to determine who is speaking at any given time.  Transcripts will

also help the jury understand the accents of some of the declarants.

Jones and Thompson have each declared that it is impossible for them to agree with the

United States about transcripts.[6]  [DE 1470-1, at 5; DE 1485.]  That being the case, the Sixth

Circuit has provided a roadmap for the use of transcripts in the upcoming trial:  "'If there is a

dispute concerning the contents of the [audio recordings], the second best method is for the trial

court to make a pretrial determination of accuracy by reading the transcript against the

[recordings].'"  *Adams*, 722 F.3d at 823-24 (quoting *United States v. Robinson*, 707 F.2d 872,

876 (6th Cir. 1982)) (alterations in original).  Under this procedure, the Court "has the discretion

to mark portions of the proposed transcript that it finds to be inaudible or unintelligible and order

that those portions be removed from the transcript and marked accordingly."  *Id.* at 824.  The

United States respectfully requests that the Court use this procedure to make a pretrial

determination of the accuracy of the transcripts offered by the government.

### B.  Prior Testimony of Special Agent Timothy Briggs

Pursuant to the Court's August 23, 2013 Scheduling Order, the United States designated

---

[6] Neither defendant has attempted to reach an agreement with the United States since this matter has been remanded.
Jones cites the experience of the first trial as the basis for his unwillingness to reach agreement.  Since the first trial,
however, the United States has substantially cut down the number of recordings that will be introduced.  Currently,
the United States seeks to introduce approximately 90 minutes of recordings.

portions of the prior trial testimony of FBI Special Agent Timothy Briggs that it anticipates using at the upcoming trial.  Defendants seek to preclude any use of this prior testimony on grounds that (1) it does not satisfy the requirements of Federal Rule of Evidence 804(b)(1); (2) its dual capacity as both fact and expert testimony is inappropriate; and (3) it is duplicative and repetitive of other testimony.  In addition to objecting to the use of Agent Briggs' testimony in full, Defendants have also lodged specific objections to most lines of the proposed testimony.  As addressed in turn below, none of these objections have merit, and all designated portions of Agent Briggs' testimony should be admitted.

### 1.    Agent Briggs' Testimony Is Admissible Under Rule 804(b)(1) As The Prior Trial Testimony Of An Unavailable Witness

Federal Rule of Evidence 804(b)(1) provides that testimony given by a currently unavailable witness at a prior trial is not excluded by the hearsay rule if that testimony "is now offered against a party who had . . . an opportunity and similar motive to develop it by direct, cross-, or redirect examination."  FED. R. EVID. 804(b)(1).

Defendants do not dispute that the requirement of unavailability is satisfied here, as Agent Briggs is now deceased.  But Defendants argue that Agent Briggs' prior testimony should be excluded because they did not have a meaningful opportunity to cross-examine Agent Briggs at the first trial.  Because Agent Briggs previously testified at a trial addressing the same issues as the upcoming trial, this argument fails.

"It is well-settled that testimony presented at a *trial* provides a defendant with an adequate occasion to fully examine the witness."  *United States v. Taplin*, 954 F.2d 1256, 1258 (6th Cir. 1992) (*citing Mattox v. United States*, 156 U.S. 237 (1895)) (emphasis added).  It is also consistently recognized that "[w]here the two proceedings in question under Rule 804(b)(1) 'are

trials and the same matter is seriously disputed at both trials, it will normally be the case that the side opposing the version of a witness at the first trial had a motive to develop that witness's testimony similar to the motive at the second trial.'" *United States v. Mejia*, 376 F. Supp. 2d 460, 468 (S.D.N.Y. 2005) (quoting *United States v. DiNapoli*, 8 F.3d 909, 912 (2d Cir. 1993)); *see also United States v. Omar*, 104 F.3d 519, 523 (1st Cir. 1997) ("If a new trial later becomes necessary and the witness proves unavailable, it may be a fair guess that each side has already done at the original trial all that the party would do if the declarant were now present for a new trial.").

Here, Agent Briggs previously testified at trial, and Defendants had the opportunity to and did, in fact, cross-examine and recross-examine him at length. *See* Trial Tr. 21-A at 4-116 and Trial Tr. 21-B at 11-20 [DE 855, DE 881]. The upcoming trial addresses the very same issues presented by the first trial – specifically, Defendants' guilt or innocence on counts for obstruction of justice, violation of RICO, and conspiracy to violate election law – and this "[i]dentity of issues ensures that [Defendants] had a meaningful opportunity to develop testimony when it was first offered." *Taplin*, 954 F.2d at 1259. In other words, because both the prior trial and the upcoming trial are based on the same conduct and same causes of action, thereby reflecting an "identity of issues," Defendants had sufficient opportunity and similar motive in cross-examining Agent Briggs. *See id.* (citing 8 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 804.04[3] (2d ed. 1989) and *United States v. Wingate*, 520 F.2d 309, 316 (2d Cir. 1975)).

Defendants nonetheless argue that their opportunity for cross-examination at the first trial was not "meaningful" due to the "the very hostile trial atmosphere for defense counsel" as reflected in the "numerous sustained objections" to cross-examination. Thompson's Motion *In*

*Limine* at 2 [DE 1473-1]; *see also* Jones' Motion *In Limine* at 4 [DE 1485] (noting that cross-examination strategy was "strongly colored by the tenor of the trial").  A similar argument about the district court judge's hostility towards Defendants and their counsel was already considered and rejected by the Court of Appeals, who found neither "deep-seated . . . antagonism" nor a violation of Defendants' due process rights.[7]  *United States v. Adams*, 722 F.3d 788, 838 & n.42 (6th Cir. 2013).  In any event, the Court acted within its discretion in imposing reasonable limits on the cross-examination of Agent Briggs – limiting, for example, questions asking Agent Briggs to characterize grand jury testimony that he was not present for – and did not violate Defendants' rights to confrontation in doing so.  *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) ("trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant").  That Defendants were dissatisfied with those reasonable limitations does not mean that they were denied a meaningful opportunity to cross-examine Agent Briggs.  "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curium) (emphasis in original).  Such an opportunity for effective cross-examination was provided in the first trial.

### 2.    Agent Briggs May Testify As Both a Fact and Expert Witness

The United States seeks to use Agent Briggs to testify in a dual capacity as a fact and expert witness.  The Court of Appeals did not disapprove of this kind of dual testimony, as Defendants suggest.  Rather, consistent with its prior decisions, the Court of Appeals instructed

---

[7] Notably, neither Thompson nor Jones contended on appeal that the Court's limitations on their cross-examination of Agent Briggs constituted a violation of their rights to confrontation.

that (1) dual capacity witnesses such as Agent Briggs should be qualified as experts before testifying, and (2) a jury instruction as to the dual nature of such testimony should be given. *Adams*, 722 F.3d at 835; *see also, e.g., United States v. Lopez-Medina*, 461 F.3d 724, 743 (6th Cir. 2006) ("we have permitted an officer's dual testimony as a fact and expert witness when an adequate cautionary jury instruction was provided"); *United States v. Tocco*, 200 F.3d 401, 419 (6th Cir. 2000) (finding no abuse of discretion in allowing agent to testify in dual capacity where jury instruction as to dual role provided).  Both directives will be followed here.

Contrary to Defendants' assertion otherwise, Agent Briggs can still be qualified as an expert because his proposed testimony is both relevant and reliable.  Regarding relevance, courts in this Circuit have repeatedly found testimony such as Agent Briggs' to be relevant.  As the Court of Appeals for the Sixth Circuit has noted, "[c]ourts have overwhelmingly found police officers' expert testimony admissible where it will aid the jury's understanding of an area . . . not within the experience of the average juror."  *Lopez-Medina*, 461 F.3d at 742 (citing *United States v. Thomas*, 74 F.3d 676, 682 (6th Cir. 1996) (abrogated on other grounds)); *cf. United States v. Smith*, 601 F.3d 530, 539 (6th Cir. 2010) (noting that "knowledge of [criminal] activity is generally beyond the understanding of the average layman").  Agent Briggs' testimony concerning, for example, the role of cooperators in public corruption investigations will serve as such an aid.

Agent Briggs' testimony is also reliable:  Agent Briggs testified to having served as a special agent investigator with the FBI for over 13 years, with special training in public corruption and election fraud cases.  Trial Tr. 21-A at 21-22 [DE 880].  Agent Briggs also testified to serving as the FBI's election crimes coordinator for the Commonwealth of Kentucky, a position that involved coordinating and assisting with election crime investigations throughout

the region.  *Id.* at 22-23.  Moreover, Agent Briggs testified to being involved in "[s]everal other" election crime investigations through which he learned methods and practices for effectively approaching election fraud cases.  *Id.* at 23.  Courts have found similar credentials to establish the reliability of law enforcement agents' expert testimony.  *See, e.g.*, *Lopez-Medina*, 461 F.3d at 743 (finding testimony of agent with six years of DEA employment and prior experience and training in investigating narcotics-related crime to be reliable); *United States v. Anderson*, 89 F.3d 1306, 1312 (6th Cir. 1996) (finding agent with nine years of law enforcement experience to be qualified to give expert testimony).

Finally, the United States will propose a cautionary instruction regarding Agent Briggs' dual witness role that can be used both before Agent Briggs' opinion testimony is read and again in the jury charge.  This instruction will direct the jury that it should consider Agent Briggs' dual roles in determining what weight, if any, to give his expert testimony.  *Accord Tocco*, 200 F.3d at 419 (cited with approval in *Lopez-Medina*, 461 F.3d at 743).

### 3.     Agent Briggs' Summary Testimony is Appropriate and Not Duplicative

Defendant Maricle objects to all of Agent Briggs' testimony as "duplicative."  Maricle's Objections To Agent Briggs Proposed Testimony at 1 [DE 1475].  This is a vague and unspecific objection in that Defendant does not identify the other testimony he anticipates Agent Briggs' testimony will duplicate.  In any event, to the extent that Defendant is challenging Agent Briggs' testimony because it may constitute summary testimony, such testimony is proper under *United States v. Smith*, 601 F.3d 530 (6th Cir. 2010) ("[S]ummary testimony is admissible where the judge charges the jury as to all the elements necessary for conviction, where the summary is intended to aid the jury in organizing proof, and where the summary is not inflammatory or prejudicially worded.") (internal citation and quotation marks omitted).  *Smith* held admissible an

18

agent's summary testimony describing the roles that the two defendants and others played in a "large drug conspiracy," the workings of which were "plausibly confusing to the jury." *Id*. at 539-40. Summary testimony presented at the end of the case is equally appropriate in this complex matter, in which the government anticipates establishing the existence and functioning of an enterprise engaged in election fraud through more than 35 fact witnesses and dozens of exhibits. *See also United States v. Ollison*, 555 F.3d 152, 162 (5th Cir. 2009) (summary witness appropriate in embezzlement case where "[t]he evidence presented was voluminous and presented an appreciable degree of complexity"); *United States v. Vasilakos*, 508 F.3d 401, 412 (6th Cir. 2007) ("Summary testimony is appropriate to aid the jury in the examination of testimony and documents in evidence.").

### 4. Agent Briggs' Testimony is Otherwise Admissible

In addition to objecting to Agent Briggs' testimony in full, Defendants have also objected to specific portions of his proposed testimony. As set forth below, all of these objections are baseless:

- Page 22, line 12 – Page 23, line 14: The United States will be designating Agent Briggs as an expert, and will use this testimony concerning his experience as a law enforcement officer with specialized training and experience in public corruption and election crime to establish his qualifications to serve as such. This testimony is, therefore, relevant and admissible.

- Page 23, lines 20-23: This testimony, concerning the FBI having received information about voter bribery in Clay County, is not inadmissible hearsay because it is not being offered for its truth. Instead, it is being offered to show how the FBI's investigation got started, as the question to which this testimony responds makes clear. *See* Trial Tr. 20-B at 23 ("tell the Court and the jury how this investigation began").

- Page 24, line 24 – Page 26, line 22: Defendant Maricle seeks to preclude Agent Briggs' testimony concerning election records from the 2002 election on the ground that the United States has failed to produce such records. The United States has agreed to search for any such records in its possession and produce any such records

that have not previously been provided to the defendants. The completion of this process will ripen or moot Maricle's objection.

- Page 24, line 24 – Page 25, line 14; Page 29, line 3 – Page 31, line 19; Page 103, lines 1-19: Defendants mischaracterize this testimony when they label it as improper "bolstering" and "vouching" of cooperating witnesses Kennon White and Wanda White. Jones' Motion *In Limine* at 4 [DE 1485]; Stivers' Objections To Agent Briggs' Proposed Testimony at 2 [DE 1482]. This testimony is clearly not offered in support of their credibility; rather, it simply describes the role of cooperators in public corruption investigations generally (page 24, line 24 – page 25, line 6), and provides background to explain how Mr. White and Mrs. White came to cooperate with the government and how the investigation proceeded with their cooperation (page 29, line 14 – page 31, line 19). The last challenged excerpt summarizes the evidence concerning favors promised by enterprise members to Mrs. White for her participation in the election fraud scheme (page 103, lines 1-19). All such testimony is appropriate and admissible.

- Page 25, line 1: Agent Briggs' reference to a "close-knit type of group" is proper lay opinion testimony. This observation is rationally based on Agent Briggs' perception, results from reasoning familiar in everyday life, and is helpful to the jury in understanding the character of the relationship between individuals engaged in election crimes. *See* FED. R. EVID. 701; *United States v. White*, 492 F.3d 380, 401 (6th Cir. 2007).

- Page 26, lines 16-22; Page 106, line 16 – Page 107, line 8; Page 107, line 24 – Page 108, line 9; Page 109, lines 3-19; Page 111, line 13 – Page 112, line 4: In a somewhat muddled objection, Defendants challenge this testimony on grounds that it suggests an "adverse inference" should be drawn. *See* Stivers' Objections To Agent Briggs' Proposed Testimony at 2 [DE 1482]. But, this testimony is appropriate summary testimony. It includes summaries of facts that other witnesses will present at trial regarding, for example, Defendant Maricle's use of his judicial office to grant favors to those who supported the enterprise, as well as his concern about being detected by law enforcement (page 106, line 16 – page 107, line 8; page 107, line 24 – page 108, line 9; page 109, lines 3-19). This summary testimony is admissible. *See Vasilakos*, 508 F.3d at 412 ("Summary testimony is appropriate to aid the jury in the examination of testimony and documents in evidence."). Moreover, Agent Briggs does not testify as to what inferences should be drawn; he simply summarizes the evidence and leaves the jury to draw its own inferences.

- Page 29, lines 3-13, Page 30, lines 1-20, Page 104, lines 4-19: This testimony is not offered as lay opinion testimony, as Defendants contend, but instead is offered as expert opinion testimony. As described above, Agent Briggs is qualified to offer such

testimony based on his extensive experience and training in election crime and public corruption cases.[8]

- Page 102, lines 6-25:  Defendant Thompson plucks this testimony regarding the hiring of family members from its context when he frames his challenge to its admission.  The testimony at the outset of this designated portion highlights that the hiring of family members was part of the enterprise's practice of exchanging favors for each other.  *See* Trial Tr. 21-A at 102, lines 6-10.  This testimony is not "base speculation," as Defendant charges, Thompson's Motion *In Limine* at 3 [DE 1473], but instead summarizes facts other witnesses will present at trial, and is further based on facts that Agent Briggs learned during the investigation in which he personally participated.

- Page 103, lines 1-10:  This testimony is not "argumentation by the prosecution." Thompson's Motion *In Limine* at 3 [DE 1473].  Rather, the questions by the government set the stage for Agent Briggs' longer narrative concerning the favors promised to Wanda White in exchange for her service as an election officer in order to steal votes during the 2006 election.  *See* Trial Tr. 21-A at 103, lines 1-19.

- Page 103, line 20 – Page 104, line 15:  Defendant Stivers challenges this testimony on the ground that "the Sixth Circuit ruled [it] was admitted improperly."  *See* Stivers' Objections to Agent Briggs' Proposed Testimony at 1 [DE 1482].  However, most of this passage (page 103, lines 23-25 – page 104, lines 1-3) was not designated for use at the upcoming trial, consistent with the Sixth Circuit's directive.  Those portions that were designated (page 103, lines 20-22 and page 104, lines 4-15) are admissible as summary testimony or as based on facts learned during the investigation in which Agent Briggs personally participated.

- Page 110, lines 3-5:  The testimony concerning support being shifted to Mr. Thompson is not speculative, as Defendants argue, because it is summarizes facts other witnesses will present at trial.  Further, Defendant Thompson misrepresents Agent Briggs' testimony when he highlights that Defendant had "support from the community that he serves."  Thompson's Motion *In Limine* at 3 [DE 1473].  The "support" to which Agent Briggs' testimony refers is the support of the enterprise and its associates, not the support of the electorate.  *See* Trial Tr. 21-A at 109, line 20 – 110, line 2 (referring to "factions" and "members" of the enterprise).  There is no unfair prejudice associated with testimony about members of the enterprise supporting Thompson – the support by the enterprise of certain candidates and office-holders is a key component of the enterprise's operation.

---

[8]  It is unclear why Defendants challenge the last cited excerpt (page 104, lines 4-19) as opinion testimony.  This excerpt summarizes facts other witnesses will present at trial, and is further based on facts that Agent Briggs learned during the investigation in which he personally participated.

- <u>Page 112, lines 9-22</u>:  Agent Briggs' testimony concerning incentives used to bribe voters is not hearsay.  This is appropriate summary testimony, summarizing facts other witnesses will present trial, and is further based on facts that Agent Briggs learned during the investigation in which he personally participated.  Moreover, Agent Briggs does not otherwise testify to out-of-court statements.

- <u>Page 113, lines 21-25; page 114, lines 1-10</u>:  In this segment, Agent Briggs describes the different methods by which the enterprise operated.  He notes a "changing methodology" due to law enforcement scrutiny.  Again, this is appropriate summary testimony, summarizing facts other witnesses will present at trial.

### C.  Testimony of Special Agent Jeff Sagrecy

As recognized by Defendants, the testimony provided by IRS Special Agent Jeff Sagrecy at the first trial focused on the money laundering conspiracy charge (Count 2 of the Superseding Indictment).  That charge has since been dismissed; therefore, the United States will not be using Agent Sagrecy to testify on issues relating to money laundering at the upcoming trial.  Accordingly, Defendants' arguments on this point are moot.[9]

### D.  Evidence of Vote Stealing and Obstruction of Justice

Adams argues that evidence of his coconspirators stealing votes and obstructing justice should be excluded.  [DE 1470-1, at 5-6.]  Adams' arguments are largely a retread of his motion for severance of Counts 8 and 9 (which together charged three of codefendants with obstruction of justice) and Count 10 (which charged four of his codefendants with conspiring to violate voters' civil rights by misleading voters and changing their votes without authorization).  The Court has denied Adams' motion for severance and should likewise deny his motion to exclude.

Count 8 (now Count 2 in the Second Superseding Indictment) charges two of Adams' co-defendants with obstructing justice during a federal grand jury investigation.  Count 9 (now

---

[9] Concurrently herewith, the United States is filing a notice that designates Agent Sagrecy as an expert to provide testimony relating to the RICO enterprises effects on interstate commerce.  Agent Sagrecy is qualified based on his experience and credentials to provide such testimony.

Count 3) charges another of Adams' co-defendants with obstructing justice during the grand jury investigation. Each of these acts of obstruction is a predicate act of the RICO charge in Count 1. The government's evidence of this conduct will prove not only that the codefendants engaged in the obstruction of justice, but also that Adams' cohorts participated in a pattern of racketeering activity to achieve the objectives of the overall RICO conspiracy. This evidence will be admissible against Adams, as evidence of the conspiracy's activities.

The conduct underlying Count 10 (now and hereinafter Count 4) is not a predicate act of the RICO conspiracy charge, but there is a substantial overlap between the Count 1 conspiracy and the Count 4 conspiracy. Count 4 alleges that Adams' codefendants violated voters' civil rights in order to secure the election of the candidates supported by the four co-defendants and their other co-conspirators. As alleged in Count 1, these co-conspirators included Adams. As the conspiracies were intertwined, the evidence that tends to prove Count 4 will have probative value against Adams. And, to the extent that any of the evidence offered to prove Count 4 (or, for that matter, Counts 2 or 3) is deemed outside the scope of Adams' conspiracy and inadmissible as to him, any prejudice can be cured through appropriate instructions to the jury. *See, e.g., United States v. Swift*, 809 F.2d 320, 322-23 (6th Cir. 1987) ("[A] jury is presumed capable of sorting out evidence and considering each count and each defendant separately.") Adams' motion should thus be denied.

### E.  Rule 404(b) and Background Evidence

Pursuant to Fed. R. Evid. 404(b), the government gave notice of its intent to introduce evidence of a video clip from an episode of Inside Edition, in which Maricle admits his knowledge that a specific percentage of Clay County voters could be bought on Election Day. [DE 1467.] Jones seeks an order precluding the use of "any aspect" of this video. [DE 1485, at

4.]  The Sixth Circuit specifically held that one part of the video clip was admissible under Rule 404(b).  *See Adams*, 722 F.3d at 821 n.23 ("We note that Maricle's statement that 'a substantial percentage of voters can be bought on election day, and by substantial, I mean thirty percent or more.").  The government seeks to introduce this excerpt alone.  Any spillover prejudice to Jones or any other defendant can be cured with appropriate instructions to the jury.

In its Rule 404(b) notice, the government also noted its intent to call Kenneth Day, Eugene Lewis, and J.C. Lawson regarding events that reflect the origins of the RICO conspiracy, Maricle's accumulation of political power and influence, and Maricle's associations with others in the conspiracy, including Adams and Jones.  [DE 1467.]  Adams argues for exclusion of this evidence as it relates to his co-defendants.  [DE 1470-1, at 6.][10]  This evidence was admitted at the first trial, and the Sixth Circuit held that:  (1) it was appropriate background evidence; and (2) the court's instructions to the jury cured any prejudice to the defendants not implicated directly by the background evidence.  *See Adams*, 722 F.3d at 812-13.  (Furthermore, much of the admissible background evidence does implicate Adams.  *See id.*)  The same outcome should apply at the new trial.

### F.  Miscellaneous Issues

#### 1.       Richard Todd Roberts

Maricle seeks an order limiting the testimony of Richard Todd Roberts.  [DE 1477.]  He cites several examples from the first trial in which Mr. Roberts gave testimony that appeared, based on the record, to be based on speculation.  The government agrees that Mr. Roberts (and any other government or defense witness) should not give speculative testimony, consistent with

---

[10] Jones, for his part, argues for the exclusion of Day's, Lewis's, and Lawson's testimony regarding drug crimes and the use of drug money in elections.  [DE 1485, at 5.]  The government does not intend to introduce such evidence at the upcoming trial.  Thus, Jones' motion should be denied as moot.

24

the Rules of Evidence.  If Mr. Roberts testifies at the retrial, his testimony will be based on his personal knowledge, and if his testimony includes the matters cited in Maricle's motion, the bases for his knowledge will be made clear on the record.

> **2.**     **Maricle's Attorney-Client Relationship With Adams; Opinion Testimony Regarding the Propriety of State Court Proceedings**

Maricle seeks the exclusion of testimony concerning a prior attorney-client relationship between he and Adams.  [DE 1479.]  The government does not intend to introduce such testimony.

In the same motion, Maricle also seeks an order precluding FBI Task Force Officer Edsel Vincent Blair from offering opinions relating to the propriety of state court proceedings.  The United States does not intend to offer any opinion testimony through TFO Blair relating to the propriety of state court proceedings, and it is not clear to what opinions Maricle refers.

For these reasons, the United States asks that Maricle's motion [DE 1479] be denied as moot.

> **3.**     **Vouching for Cooperating Witnesses and Use of Codefendants' Plea Agreements**

Stivers asks the Court to enter an order precluding the government from impermissibly vouching for any witnesses.  [DE 1481-1, at 2-6.]  Stivers also asks the Court precluding the government from making improper use of the plea agreements of his former codefendants.  [*Id.* at 6.]  The United States will present its arguments and evidence consistently with the Sixth Circuit caselaw upon which Stivers relies.  Stivers' motion is unnecessary and should be denied.

Respectfully submitted,

KERRY B. HARVEY
UNITED STATES ATTORNEY

BY:   /s/ Jason D. Parman     
Assistant United States Attorney
601 Meyers Baker Road, Suite 200
London, KY 40741
Tel: (606) 864-5523
Jason.Parman@usdoj.gov

/s/ Andrew T. Boone     
Assistant United States Attorney
260 W. Vine Street, Suite 300
Lexington, KY 40507
(859) 685-4800
Andrew.Boone2@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System, which will send notice of filing to counsel of record.

/s/Andrew Boone     
Assistant United States Attorney