UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CRIMINAL NO. 6:09-CR-16-KKC                              *ELECTRONICALLY FILED*

UNITED STATES OF AMERICA                                             PLAINTIFF

V.     RESPONSE TO DEFENDANTS'
       <u>MOTIONS DIRECTED AT THIRD SUPERSEDING INDICTMENT</u>

CLETUS MARICLE, ET AL.                                              DEFENDANTS

\* \* \* \* \* \*

The United States of America, by counsel, hereby responds to the Defendants' motions for a bill of particulars and to dismiss Count One of the Third Superseding Indictment. [DE 1538, 1539, 1540, 1541, 1544]. Because Defendants' various motions adopt and incorporate one another's arguments by reference, and since the Court has denied Defendants' motions for severance, the United States responds to each motion in this consolidated response.

<u>ARGUMENT</u>

I.  **THE THIRD SUPERSEDING INDICTMENT DOES NOT MATERIALLY BROADEN THE ORIGINAL INDICTMENT AND THUS IS NOT TIME-BARRED**

Defendant Jones argues that Count One of the Third Superseding Indictment should be dismissed as time-barred. [DE 1540]. The original Indictment and First Superseding Indictment were both filed well within the five-year limitations period, and thus had a tolling effect.[1] *See United States v. Salmonese*, 352 F.3d 608, 622 (2d Cir. 2003) ("It is black letter law that once an

---

[1] The original Indictment [DE 3] was filed on March 3, 2009, and the First Superseding Indictment [DE 272] was filed on July 9, 2009. Because the latter was the most recent indictment filed within the five-year limitations period, the discussion below will focus on the similarities between the First Superseding Indictment and the Third Superseding Indictment.

1

indictment is brought, the statute of limitations is tolled as to the charges contained in that indictment.") (internal quotation marks and alterations omitted).  The Third Superseding Indictment is timely because it relates back to these indictments.

It is well settled that "as long as the superseding indictment does not broaden the original indictment, the superseding indictment relates back to the filing of the original indictment even if the superseding indictment is filed outside the statute of limitations." *United States v. Smith*, 197 F.3d 225, 288 (6th Cir. 1999); *see also United States v. Garcia*, 268 F.3d 407, 411 (6th Cir. 2001) (restating same principle and collecting cases); *Salmonese*, 352 F.3d at 622 ("a superseding indictment that supplants a pending timely indictment relates back to the original pleading and inherits its timeliness as long as the later indictment does not materially broaden or substantially amend the original charges").

In making this determination, "the touchstone is whether the original indictment provided notice of the charges such that the defendant can adequately prepare his or her defense." *United States v. Watford*, 468 F.3d 891, 909 (6th Cir. 2006); *see also Smith*, 197 F.3d at 229 (same). "If the allegations and charges are substantially the same in the old and new indictments, the assumption is that the defendant has been placed on notice of the charges against him.  That is, he knows that he will be called to account for certain activities and should prepare a defense." *United States v. Italiano*, 894 F.2d 1280, 1282 (11th Cir. 1990); *see also United States v. Gigante*, 982 F. Supp. 140, 155 (E.D.N.Y. 1997), *aff'd* 166 F.3d 75 (2d Cir. 1999) ("The effect of notice is not reduced if the charges in both documents are substantially the same.").

In determining whether a defendant had notice of the charges against him, courts will consider "whether the additional pleadings allege violations of a different statute, contain different elements, rely on different evidence, or expose the defendant to a potentially greater

sentence." *Salmonese*, 352 F.3d at 622.  In each case, the question is "whether the original indictment fairly alerted the defendant to the subsequent charges again him and the time period at issue." *Id.*  This turns on "whether approximately the same facts were used as the basis of both indictments." *Italiano*, 894 F.2d at 1253; *cf. Mende v. United States*, 282 F.2d 881, 883-84 (9th Cir. 1960) (under 18 U.S.C. § 3288, which permits filing of time-barred indictment within six months of dismissal of original indictment, "approximately the same facts may be used for the basis of any new indictment within the next term, if the earlier indictment runs into legal pitfalls.").

In a conspiracy case, a superseding indictment may relate back even where it adds coconspirators, overt acts, and objects of the conspiracy, provided that notice is sufficient and the essence of the conspiracy remains the same.  *See United States v. Davis*, 953 F.2d 1482, 1491 (10th Cir. 1992); *United States v. Panebianco,* 543 F.2d 447, 454 (2d Cir. 1976).  In a RICO case, a superseding indictment that redefines the enterprise may relate back provided that the defendant had adequate notice.  *See Gigante*, 982 F. Supp. at 162 (superseding indictment that redefined enterprise from several La Cosa Nostra entities to the Genovese Crime Family related back; defendant had notice "that his ties to the family of which he was boss was the essential factual element of the charge").

In this case, the First Superseding Indictment adequately notified the defendants of the RICO charge alleged against them in the Third Superseding Indictment.  The First Superseding Indictment alleged that the defendants each participated in the operation and management of a racketeering enterprise.  [DE 272, Count One, ¶ 10.]  It alleged the defendants' common purpose:  in summary, to secure political control and personal enrichment through the misuse of the Clay County Board of Elections ("the Board") and other government offices.  [*Id.*, ¶ 11.]  It

3

alleged the types of racketeering activity in which the defendants engaged to further the enterprise, including voter bribery and obstruction of justice. [*Id.*, ¶ 12(a), (b), (c), and (d).] It specified the timeframe at issue: March 2002 through July 17, 2007. [*Id.*, ¶ 13.]

These material aspects of the RICO conspiracy are identical in Count One of the Third Superseding Indictment. [*See* DE 1529, Count One ¶¶ 7-10.] The indictment has been changed only to make clear that the enterprise at issue was an association in fact and not a legal entity.[2] This is not the "sea change" that Defendant Jones makes it out to be. The primary case upon which he relies, *United States v. Ratcliff*, 245 F.3d 1246 (11th Cir. 2002), involved a superseding indictment that expanded the scope of a conspiracy by some twelve years and at least seven additional drug smuggling ventures. *See id.* at 1253-54. In this case, by contrast, the temporal scope, the purposes, and the acts in furtherance of the charged conspiracy have remained the same. Additionally, the members of the enterprise are the same individuals who were alleged in the First Superseding Indictment. The First Superseding Indictment implicitly charged what the Third Superseding Indictment has simply made explicit: that this group of individuals associated in fact to functionally control the Clay County Board of Elections.[3] As in *Gigante*, Defendant Jones has long been on notice that his ties to these individuals are at issue in this case. *See Gigante*, 982 F. Supp. at 162.

---

[2] Paragraph 9(c) has also been amended in the Third Superseding Indictment, to remove a previous characterization of Defendant Stivers' activities as extortion. The defendants do not appear to take issue with this change and, thus, the discussion above is confined to the changes made to clarify the definition of the enterprise at issue.

[3] As the United States explained in its Notice Regarding the Definition of the Enterprise at Issue [DE 1532], this allegation was implicit in prior indictments because several of the defendants charged with operation and management of the enterprise were not actually employed by the Board. [*See* DE 272, Count One, ¶ 10 (Defendants Maricle, Adams, Morris, Morris, and Bowling "participated in the operation and management of the enterprise."]

4

Thus, the United States believes that the Court's assessment of the Third Superseding Indictment was correct when it concluded that the new indictment "made no material changes to the RICO charge." Opinion and Order Denying Adams Motion to Dismiss Count One at 2 [DE 1537]; *see also* Opinion and Order Denying Thompson and Jones Motions for Bills of Particulars at 2 [DE 1534]. Jones' invective should not change that analysis. When compared to previous indictments, the RICO charge contained in the Third Superseding Indictment alleges a violation of the same statute, requires proof of the same elements, involves the same enterprise members, involves the same conspiracy, will rely on the same evidence, and will expose the defendants to the same potential sentences. *Accord Salmonese*, 352 F.3d at 622. Because the Third Superseding Indictment relates back to previous, timely indictments, Jones' motion should be denied.

## II.   JUDICIAL ESTOPPEL IS INAPPOSITE

In his Motion to Dismiss, Defendant Stivers argues that the doctrine of judicial estoppel should be applied to bar the United States from superseding the indictment to clarify the definition of enterprise. [DE 1544]. This argument is without merit, and Stivers' motion should be denied.

"Judicial estoppel forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by that same party in an earlier proceeding." *Warda v. Comm'r*, 15 F.3d 533, 538 (6th Cir. 1994). Judicial estoppel must be "applied with caution," and "is therefore generally limited to circumstances where a party asserts a position in litigation that is adopted by the court, gains an advantage through that assertion, and then attempts to assert a clearly opposite position in a later proceeding." *United States v. Hammon*, 277 F. App'x 560, 566 (6th Cir. 2008).

5

Here, the United States is not taking "a clearly opposite position" with respect to the definition of the RICO enterprise. As explained above, previous indictments alleged that the enterprise was both the Clay County Board of Elections and implicitly alleged that the enterprise included a group of individuals who associated in fact and functionally controlled the Board. While the Third Superseding Indictment clearly elects one of those theories, both theories are consistent with one other. The Board itself can operate as a racketeering enterprise at the same time that a group of individuals can band together to achieve common purposes through the Board. Although Defendant Stivers suggests that the Sixth Circuit's rejection of the defendants' "multiple conspiracies" defense forecloses the latter definition of enterprise, courts have recognized that associations in fact can encompass competing factions. *See, e.g., United States v. Orena*, 32 F.3d 704, 710 (2d Cir. 1994) (internal conflict can exist within association in fact enterprise, "particularly if the objective of, and reason for, the dispute is control of the enterprise."). There is no inconsistency between the Third Superseding Indictment and the government's previous legal positions and, thus, the doctrine of judicial estoppel is inapposite.

### III. THE LAW OF THE CASE DOCTRINE DOES NOT PROHIBIT A SUPERSEDING INDICTMENT

Defendant Jones also contends that the law of the case doctrine prevents re-litigation of the identity of the RICO enterprise. [DE 1540]. However, the law of the case doctrine is inapplicable. That doctrine "expresses the routine practice of courts to refuse to reopen what has been decided." *United States v. Garcia*, 496 F.3d 495, 514 (6th Cir. 2007).

In the context of a remand, the law of the case doctrine operates to constrain a district court to adhere to the Court of Appeals' rulings. For example, it would prevent this Court from admitting evidence at the re-trial that the Court of Appeals found to be inadmissible. *See, e.g.*, *United States v. Gilbert*, 175 F. App'x 61, 64 (7th Cir. 2006) (law of case prevented lower court

from admitting at second trial unavailable witness's statements that appellate court found inadmissible). The doctrine would also operate to prevent parties from re-litigating legal issues decided by the Court of Appeals; for example, it would bar Defendants from re-litigating before this Court whether voter bribery is a RICO predicate act. *See, e.g.*, *Garcia*, 496 F.3d at 513 (law of case doctrine precluded defendant from attempting to re-litigate prior Sixth Circuit holding that Fourth Superseding Indictment related back for statute of limitations purposes). Both the admissibility of certain evidence and the predicate act issue were litigated and decided by the Court of Appeals in this case.

By contrast, the existence of the enterprise – an essential element of the crime charged in Count One – is not a decided issue. The Court of Appeals vacated the Defendants' convictions on Count One and remanded for a re-trial. As such, the existence of the enterprise (including its definition) remains an open issue for the jury to decide at the second trial. Thus, the law of the case doctrine does not bar the government from obtaining a superseding indictment on remand. *See Gilbert*, 175 F. App'x at 64 (law of the case doctrine did not preclude superseding indictment that changed alleged date of defendant's illicit possession of firearm). Defendant Jones' application of the law of the case doctrine should be rejected.

**IV.  COUNT ONE DOES NOT VIOLATE THE "DISTINCTNESS" REQUIREMENT**

Defendant Adams misunderstands the "distinctness" requirement of *Cedric Kushner* when he contends that Count One of the Third Superseding Indictment runs afoul of that principle. [DE 1538]. *Cedric Kushner* and its related cases stand for the proposition that a solitary person cannot constitute both the enterprise *and* the defendant under RICO, because such a single individual cannot, as a matter of law, associate with himself. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001); *see also, e.g.*, *Bennett v. United States Trust Co.*,

7

770 F.2d 308, 314-15 (2d Cir. 1985) (solitary corporation cannot be both enterprise and defendant under RICO); *Haroco, Inc. v. American Nat. Bank & Trust Co. of Chicago*, 747 F.2d 384, 399-402 (7th Cir. 1984) (same). Applying this proposition, courts have held that the requisite distinctness between the defendant and the enterprise is lacking only when there is a complete identity between the defendant and the enterprise. *See, e.g.*, *United States v. Goldin Indus., Inc.*, 219 F.3d 1271, 175-76 (11th Cir. 2000) ("The prohibition against the unity of person and enterprise applies only when the singular person or entity is defined as both the person and the only entity comprising the enterprise."). Put another way, a RICO indictment should be dismissed for violation of the "distinctness" principle only where it charges an individual as singularly constituting the enterprise. *Compare, e.g.*, *Haroco*, 747 F.2d at 399-402 *with United States v. Fairchild*, 189 F.3d 769, 776-77 (8th Cir. 1999).

The Third Superseding Indictment quite clearly does not do so. It does not allege that a single defendant associated solely with himself. Rather, it alleges that each Defendant joined with the other Defendants, as well as other individuals, in order to achieve certain common purposes. This is the very meaning of an association-in-fact enterprise under RICO. *See, e.g.*, *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 794 (6th Cir. 2012) (association-in-fact is "simply a continuing unit that functions with a common purpose") (quoting *Boyle v. United States*, 556 U.S. 938, 948 (2009).

The fact that the enterprise charged here includes Defendants as its members does not otherwise violate the distinctness requirement. Courts have consistently concluded that individual RICO defendants are distinct from the broader enterprise in which they are members, and that "a defendant may be both a [RICO] person and a part of an enterprise." *Fairchild*, 189 F.3d at 777; *accord United States v. Perholtz*, 842 F.2d 343, 353-54 (D.C. Cir. 1988) (finding

8

distinctness requirement satisfied where association-in-fact enterprise consisted of corporations, partnerships, and individual defendants who were also charged as defendants); *Cullen v. Margiotta*, 811 F.2d 698, 729-30 (2d Cir. 1987) (finding distinctness requirement satisfied where enterprise consisted of three entities, all of whom were also defendants, explaining "we see no reason why a single entity could not be both the RICO 'person' and one of a number of members of the RICO 'enterprise'"); *United States v. Nabors*, 45 F.2d 238, 240 (8th Cir. 1995) (finding distinctness requirement satisfied where enterprise consisted of two individuals, also charged as defendants, explaining that "individual defendants who are members of an enterprise may indeed be found guilty under [RICO] even if the enterprise is made up solely of those defendants"); *cf. Atlas Pile Driving Co. v. DiCon Fin. Co.*, 886 F.2d 986, 995 (8th Cir. 1989) ("A collective entity is something more than the members of which it is comprised.").

The interpretation pressed by Defendants would mean that an individual member of an association-in-fact enterprise could never be prosecuted for violating RICO because he or she would not be considered distinct from that enterprise. "Such a result would significantly undermine, if not thwart, the goals of RICO." *Fairchild,* 189 F.3d at 777. Defendants' motion to dismiss Count One on this ground [DE 1538] should therefore be denied.

## V.     DEFENDANTS' CHALLENGE TO THE GOVERNMENT'S EVIDENCE ON INTERSTATE COMMERCE ELEMENT IS PREMATURE

By his current Motion to Dismiss [DE 1541], Defendant Thompson reasserts and incorporates by reference his previous Motion to Dismiss Count One of the Superseding Indictment [DE 1372], which was dismissed as moot by the Court's recent Opinion and Order in light of the Third Superseding Indictment. *See* Opinion and Order [DE 1536]. In his Motion to Dismiss, Thompson challenges the sufficiency of the United States' evidence to prove that the alleged enterprise's activities affected interstate commerce. As set forth in detail in Section I of

9

the United States' Response to Thompson's first Motion [DE 1448], which is incorporated herein by reference, Thompson's challenge to the government's evidence is premature and procedurally improper. In short, whether the enterprise in which Defendants participated affected interstate commerce is an essential element of the RICO offense charged in Count One, and as such should be decided by the jury. Accordingly, resolution of this question must await trial of the general issue and is not cognizable as a Rule 12(b) motion to dismiss. *See* FED. R. CRIM. P. 12(b)(2); *see also, e.g.*, *United States v. Kelley*, No. 1:08-CR-51, 2008 WL 5517559, at *5 (E.D. Tenn. Oct. 24, 2008) (at pretrial stage, a court "may not . . .review the sufficiency of the proof that will be offered in support of the indictment's allegations"); *United States v. Jones*, 1:05-CR-132, 2006 WL 399234, at *1 (E.D. Tenn. Feb. 16, 2006) ("a motion to dismiss should be denied if it requires a pretrial test of the government's evidence").

Moreover, even if Defendant Thompson's Motion was considered on its merits, it should be denied because the United States' evidence demonstrates that the enterprise's activities affected interstate commerce.

RICO requires that the activities of the alleged enterprise affect interstate or foreign commerce. 18 U.S.C. § 1962(c). In the Sixth Circuit, the degree or magnitude of the effect on interstate commerce necessary to satisfy this requirement depends on whether the enterprise itself engaged in "economic activity." *Waucaush v. United States*, 380 F.3d 251, 256-57 (6th Cir. 2004). Where the enterprise engaged in such economic activity, the government need only show a *de minimis* effect on interstate commerce. *Id.* But, where the enterprise's activities are non-economic, a substantial effect must be shown. *Id.*

Here, the enterprise, as defined in the Third Superseding Indictment, clearly engaged in economic activity when it purchased votes in connection with multiple election cycles. Vote-

buying is unquestionably an economic activity: it involves the exchange of cash in return for something of value – the essence of an economic transaction. *See generally United States v. McHenry*, 97 F.3d 125, 136 n.12 (6th Cir. 1996) (Butchelder, dissenting) (discussing meaning of "commercial" and "economic" activity and noting that "commerce involves "the notion of 'exchange,' *i.e.*, 'the trading, bartering or swapping of one thing for something of roughly equivalent value'"); *see also, e.g.*, *Detroit Auto Auction, Inc. v. NLRB*, Nos. 97-6487, 98-5096, 1999 WL 435160, at *3 (6th Cir. June 17, 1999) (describing vote-buying as involving the exchange of "an immediate economic benefit" for a vote); *United States v. Hooks*, No. 05-20329, 2005 WL 3370549, at *4 (W.D. Tenn. Dec. 12, 2005) ("taking of money . . . in exchange for specific promises to do or refrain from doing specific things" is an "economic activity"). Moreover, enterprise members engaged in this vote-buying scheme in order to get themselves elected to positions so that they could draw salaries from the County. For example, Thompson was elected to County Clerk after the enterprise paid for votes in that election. Over the course of his tenure, Thompson earned over $500,000 in salary in other benefits. This highlights the economic nature of the enterprise.

Because the enterprise engaged in economic activity, the United States need only show a *de minimis* effect on interstate commerce. But even if the more stringent "substantial effect" standard was applied (which the United States submits is inappropriate), the United States' proof sufficiently establishes the requisite effect on interstate commerce. Put another way, regardless of which standard is applied, RICO's interstate commerce element is satisfied by the following:

The enterprise engaged in conduct that affected the outcome of federal and state elections. There is evidence to support that those officials elected as a result of the enterprise's illegal activities were responsible for deciding how funds – including federal funds – would be

distributed. Moreover, there is evidence that the scheme involved control over the award of certain public works contracts that were partially funded by federal grant money, including PRIDE grants and USDA Rural Development grants. For example, B and J Transfer, owned and operated by enterprise members William B. Morris and Debra L. Morris, and B and B Excavating, owned and operated by enterprise member Stanley Bowling, profited from work contracts with the local government and maintained control of these contracts by their participation in the enterprise. The distribution and use of federal funds by the enterprise had an effect on interstate commerce. *See United States v. Davis*, 707 F.2d 880, 883, 884 (6th Cir. 1983) (finding that sheriff's office was criminal enterprise and that federal funds diverted by several deputies who were enterprise members into sheriff's "flower fund" were in interstate commerce).

Further, the enterprise used the instrumentalities of interstate commerce in the conduct of its affairs. For example, the United States mail was used to send elections results to the State Board of Elections; Thompson, as County Clerk, certified those elections results as accurate even though he knew the results were tainted by the enterprise's illegal activities. There is also evidence that the enterprise used telephones and mobile phones to communicate, and used the Internet to conduct its affairs. *See United States v. Pipkins*, 378 F.3d 1281, 1295 (11th Cir. 2004) (judgment vacated on other grounds) (telephones and Internet are instrumentalities of interstate commerce).

### VI.   DEFENDANTS ARE NOT ENTITLED TO A BILL OF PARTICULARS

In his Motion for a Bill of Particulars [DE 1539], Defendant Adams asks the Court to order the government to provide particulars on two issues: (1) the identity of the "associates"

who, along with Defendants, comprised the charged enterprise;[4] and (2) the identity of the "other persons" who, along with Defendants, constituted "persons employed by and associated with" the charged enterprise.[5]  The United States is neither required to set forth this information in the indictment, nor is further reiteration of this information necessary for the defendants to prepare for the second trial.  A bill of particulars is, therefore, unwarranted.

"A bill of particulars is meant to be used as a tool to minimize surprise and assist defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes . . . .  It is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial."  *United States v. Salisbury*, 983 F.2d 1369, 1375 (6th Cir. 1993).

The United States is not required to disclose before trial the identities of co-conspirators or the other enterprise members.  *See, e.g.*, *United States v. Rey*, 923 F.2d 1217, 1222 (6th Cir. 1991) (explaining that "[t]he government was not required to furnish [] information" regarding "the name of the co-conspirator before trial"); *United States v. Nabors*, 45 F.3d 238 (8th Cir. 1995) ("the government does not have to name the other members of the alleged enterprise until trial").  "[A]s long as the indictment is valid, contains the elements of the offense, and gives notice to the defendant of the charges against him, it is not essential that a conspirator know all other conspirators."  *United States v. Woods*, 187 F. App'x 524, 528 (6th Cir. 2006).  Rather, "[i]t is the grand jury's statement of the existence of the conspiracy agreement rather than the

---

[4]  *See* Third Superseding Indictment ¶ 8 [DE 1529] (alleging that "the Defendants and their associates constituted a group of individuals associated in fact though not a legal entity").

[5]  *See id.* ¶ 10 [DE 1529] (alleging that the Defendants "together with persons known and unknown, being persons employed by and associated with an enterprise . . . knowingly, willfully, and unlawfully agreed and conspired to violate 18 U.S.C. § 1961(1) and 1961(5)").

13

identity of those who agree which places the defendant on notice of the charge he must be prepared to meet." *Rey*, 923 F.2d at 1222 (internal quotation marks omitted).

The Seventh Circuit Court of Appeals' holding in *United States v. Glecier*, 923 F.2d 496 (7th Cir. 1991), is consistent with these principles. In that case, the defendant, similar to Defendants here, requested a bill of particulars to specify, *inter alia*, his alleged co-conspirators in an extensive RICO conspiracy. The Court of Appeals affirmed the lower court's denial of defendant's request, reasoning that the defendant already had sufficient information concerning the charges against him from two key sources: First, the defendant had the indictment, which set forth the "time period, the enterprise, the locations, the names of the primary actors, and the methods, means and nature of the racketeering activity." Second, the defendant had the information the government made available through pre-trial discovery, which identified coconspirators not named in the indictment. *Id.* at 501-02.

In this case, the defendants have sufficient information from the same sources. As the Court noted in its recent Opinion and Order denying Defendants Thompson's and Jones' motions for a bill of particulars, Count One of the Third Superseding Indictment "identifies the RICO enterprise, sets forth the defendants' alleged purposes in conspiring to violate RICO, explains the actions that the defendants allegedly undertook to accomplish their purposes, and sets for the dates that the alleged conspiracy took place. Further, it sets forth the elements of the RICO conspiracy charges and cites the statute." Opinion & Order at 4 [DE 1534]. The Court further noted that because "this is the second trial on all of the charges in the indictment," and because "[t]here has been extensive discovery in this case," Defendants are "well aware of the government's evidence on each of the charges." *Id.*

14

The Court's previous analysis applies with equal force to Defendant Adams' new arguments. For example, while Defendant Adams professes confusion about the identities of his associates, he received ample notice of this information through the voluminous discovery that preceded the first trial and the evidence received at the trial itself. Through this process, Defendant Adams received greater pretrial notice of the identities of his associates than is required by law. Further, information relating to the identities of the other enterprise members is not necessary to resolve the "distinctness" issue, as Defendant Adams contends. As set forth above, because the indictment does not charge any defendant as singularly constituting the enterprise, the "distinctness" requirement is not violated. *Fairchild*, 189 F.3d at 776-77. Because Defendant Adams has received sufficient information to prepare his defenses and avoid prejudicial surprise, his motion for a bill of particulars should be denied.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that Defendants' motions to dismiss the Third Superseding Indictment [DE 1538, 1540, 1541, 1544] and Defendant Adams' motion for a bill of particulars [DE 1539] be denied.

Respectfully submitted,

KERRY B. HARVEY
UNITED STATES ATTORNEY

BY:   /s/ Jason D. Parman
Assistant United States Attorney
601 Meyers Baker Road, Suite 200
London, KY 40741
Tel: (606) 864-5523
Jason.Parman@usdoj.gov

/s/ Andrew T. Boone
Assistant United States Attorney
260 W. Vine Street, Suite 300
Lexington, KY 40507
(859) 685-4800
Andrew.Boone2@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System, which will send notice of filing to counsel of record.

/s/Andrew Boone
Assistant United States Attorney